**LAW OFFICE OF WAYNE A. SILVER**
Wayne A. Silver (108135)
643 Bair Island Road,
Suite 403
Redwood City, CA 94063
Phone: (650) 282-5970
Fax:    (650) 282-5980
Email: ws@waynesilverlaw.com

*Attorney for KENNETH Y. KAI and*
*TAE K. KAI, Trustees of the Kai Family 1998 Trust*

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| In re: | Case No.: 22-50314-SLJ |
|---|---|
| | Chapter 11 (Sub-Chapter V) |
| HAWAIIAN RIVERBEND, LLC, | |
| Debtor. | |

### <u>REQUEST FOR JUDICIAL NOTICE</u>

KENNETH Y. KAI and TAE K. KAI, Trustees of the Kai Family 1998 Trust ("<u>Kai</u>"),

creditors and interested parties in the above-captioned Case No.: 22-50314-SLJ ("<u>Bankruptcy</u>

<u>Case</u>"), request the Court take judicial notice under Federal Rule of Evidence 201 of the following:

| Documents filed in the Hawaiian Riverbend, LLC Chapter 11 Bankruptcy, Case No. 16-00348, filed in U. S. Bankruptcy Court for the District of Hawaii ||
|---|---|
| **Exhibit** | **Description** |
| 1 | Order Confirming Second Amended Plan of Reorganization Dated October 6, 2016, and attached Plan. [DKT # 135] |
| 2 | Order Dismissing Case Filed on February 2, 2018 [DKT # 195] |
| Documents filed in the Michael Haroutun Miroyan Chapter 13 Bankruptcy, Case No. 18-52601, filed in U. S. Bankruptcy Court for the Northern District of California ||
| 3 | Motion for Relief from Stay filed on December 29, 2018 [DKT # 18] |
| 4 | Supplemental Brief of the Kai Family Trust in Support of Motion for Relief from Stay filed on February 8, 2019 [DKT # 55] |
| 5 | Order Granting Motion for Relief from Stay and Awarding in Rem Relief Under 11 U.S.C. §362(D)(4) filed on March 15, 2019 [DKT # 70] |

Page - 1

| Documents filed in the Michael Haroutun Miroyan Chapter 13 Bankruptcy, Case No. 22-50339, filed in U. S. Bankruptcy Court for the Northern District of California | | |
|---|---|---|
| 6 | Trustee's Objection to Confirmation with Certificate of Service filed on June 2, 2022 [DKT # 23] | |

| Documents filed in Michael Miroyan v. Tae Kai, et al., Case No. 5:19-cv-03626-NC filed in the U.S. District Court for the Northern District of California | | |
|---|---|---|
| 7 | Complaint filed on June 21, 2019 [DKT # 1] | |
| 8 | Order Dismissing Case filed on November 5, 2019 [DKT # 30] | |

Under Fed. R. Evid. 201, the court can judicially notice "[o]fficial acts of the legislative, executive, and judicial departments of the United States," and "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." Because court filings are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," pleadings filed and orders issued in related litigation are proper subjects of judicial notice under Rule 201. See *Reyn's Pasta Bella, LLC v. Visa USA, Inc*., 442 F.3d 741, 746 n. 6 (9th Cir. 2006). See also *In re Zulueta*, 520 Fed. Appx. 558, 559 (9th Cir. May 22, 2013) (Unpub. Disp.) (taking judicial notice of the docket in an underlying bankruptcy proceedings); *Asdar Group v. Pillsbury, Madison & Sutro*, 99 F.3d 289, 290 n. 1 (9th Cir. 1996) (court may take judicial notice of the pleadings and court orders in earlier related proceedings); *Rosal v. First Fed. Bank of California*, 671 F.Supp.2d 1111, 1120-21 (N.D. Cal. 2009) (taking judicial notice of plaintiff's bankruptcy petition, an order granting a motion for relief from the automatic stay, and the bankruptcy court's order of dismissal); *Retired Employees Ass'n of Orange County, Inc. v. County of Orange*, 632 F.Supp.2d 983, 985 (C.D. Cal. 2009) (taking judicial notice of a bankruptcy court order under Rule 201).

Kai therefore requests the Court take judicial notice of Exhibits 1 – 8, which are all pleadings and court orders in other cases involving the above-captioned Debtor and/or its principal, Michael H. Miroyan.

Date: June 4, 2022

/s/ Wayne A. Silver
Wayne A. Silver, attorney for *KENNETH Y. KAI and TAE K. KAI, Trustees of the Kai Family 1998 Trust*

Case: 22-50514   Doc# 51-2   Filed: 06/06/22   Entered: 06/06/22 08:48:18   Page 2 of 136

# EXHIBIT ONE

**Date Signed:**
**December 23, 2016**



SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF HAWAII

In re:

HAWAIIAN RIVERBEND, LLC,
  Debtor and Debtor in Possession.

Case No. 16-00348
(Chapter 11)

Date:   November 28, 2016
Time:   9:30 a.m.
Judge:  Hon. Robert J. Faris

[Relates to Docket No. 110]

## ORDER CONFIRMING SECOND AMENDED
## PLAN OF REORGANIZATION DATED OCTOBER 6, 2016

The Debtor's Second Amended Plan of Reorganization Dated October 6, 2016, filed herein on October 7, 2016, as docket no. 110 (the "Plan") came on for approval before the Honorable Robert J. Faris on November 28, 2016 (the "Confirmation Hearing"). Chuck C. Choi, Esq. appeared on behalf of the Debtor. Curtis B. Ching, Esq. appeared on behalf of the Office of the United States Trustee. Matthew C. Shannon, Esq. appeared on behalf of the Kai Trust. David C. Farmer, Esq. appeared telephonically on behalf of Cory Tereick.

- 1 -

U.S. Bankruptcy Court - Hawaii #16-00348 Dkt # 133 Filed 12/23/16 Page 1 of 68

The Court having reviewed the Plan and the statements and arguments of counsel at the hearing, as well as the record in this case, and good cause appearing therefore,

The Court finds that: (a) it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

IT IS HEREBY ORDERED THAT:

1. The Plan[1], attached hereto as Exhibit A and incorporated herein by reference, is confirmed pursuant to Bankruptcy Code Section 1129, as amended by this Order.

2. The Plan is hereby amended as follows:

A. Proof of Claim no. 5 in the Claim Register filed by the Kai Family 1998 Trust (the "Kai Trust") on August 22, 2016, in the total amount of $1,248,739.72 (the "Kai Secured Claims"), shall be deemed an Allowed Claim for all purposes in this Chapter 11 Case, and the Counterclaims asserted by the Debtor against the Kai Trust in that certain lawsuit entitled *Kenneth Y. Kai, Trustee of the Kai Family 1998 Trust, et al. v. Hawaiian Riverbend, LLC*, In the Third Circuit Court of the Circuit Courts of the State of Hawaii, Civil No. 3CC 15-1-0164K, shall be deemed waived and extinguished for all purposes.

---

[1] Capitalized terms not herein defined shall have the meaning set forth in the Plan.

B.     This Order constitutes authorization for the Debtor to sell and convey Parcel 21, Parcel 52 and Parcel 53 (collectively, the "Parcels") without further Court order, provided, however, (a) any recorded Lien against any of the foregoing Parcels must be satisfied in full at closing absent further Court order; (b) the Court shall retain jurisdiction over the amounts necessary to satisfy any recorded Lien, as well as the allocation of net sale proceeds from any such sale(s); and

C.     The real estate agent and the Debtor and its principals are instructed to promptly send to counsel of record for the Kai Trust and Cory Tereick any written bona fide offer for the sale of any the Parcel 52 or Parcel 53.  Neither Kai Trust nor Cory Tereick (or their respective agents or representatives) shall contact either the offering parties or the real estate agent without either first obtaining the Debtor's express advance approval or a specific Court order allowing such contact.

### Plan is Binding

3.     The amounts, priorities, secured status, and classifications of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The amounts, priorities, secured status, and classification set forth on the Ballots tendered to or returned by the

creditors of the Debtor in connection with voting on the Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual amount, priority, secured status, or classification of such claims and Equity Interests under the Plan for distribution purposes, and (c) shall not be binding on, or used as evidence against, the Debtor for any purpose other than with respect to voting on the Plan.

4. The Plan and its provisions shall be binding upon the Debtor, any entity acquiring or receiving property or a distribution under the Plan, and any holder of an Administrative Claim or Claim against or interest in the Debtor, including all federal, state, and local governmental entities and fiscal intermediaries thereof, whether or not (i) the Administrative Claim, Claim, or Equity Interest of such holder is impaired under the Plan, (ii) such holder or entity has accepted the Plan, or (iii) such holder or entity has filed a proof of claim , demand for payment, or appeared in the Case.

### Authorizations

5. The Debtor and its directors, officers, partners, members, managers, agents, and attorneys are each hereby authorized and empowered, and where required by the Plan, ordered (a) to take such actions as may be necessary or appropriate to execute, implement and consummate the Plan, (b) to issue, execute,

- 4 -

deliver, file and record such contracts, instruments, releases, agreements, documents, and securities referred to in the Plan, or required to implement and consummate the Plan pursuant to its terms, (c) to perform under and comply with the terms of the Plan, and (d) to take any or all corporate, partnership or limited liability company actions authorized to be taken pursuant to the Plan, or pursuant to any contract, instrument, release, agreement, document or security in connection therewith, or other document, whether or not specifically referred to in the Plan. Upon execution, all such documents shall be valid and binding, as necessary or appropriate, be accepted by each of the respective state filing offices and recorded in accordance with applicable state law, and become effective in accordance with their terms.

6.     Pursuant to Bankruptcy Code section 1146(a) and this Confirmation Order: (a) the issuance, transfer, or exchange of notes or equity securities under the Plan; or (b) the creation of any mortgage or other security interest in furtherance of, or in connection with, the Plan shall not be subject to any stamp tax, recording tax, conveyance tax, personal property transfer tax, real estate transfer tax, sales or use tax, or other similar tax.  The Debtor is hereby authorized to serve upon all filing and recording officers a notice in connection with the filing and recording of any such documents in accordance with the Plan, to evidence and implement this paragraph.  The appropriate state or local government filing and recording officers

are hereby directed to accept for filing or recording all documents of transfer to be filed and recorded in accordance with this Plan and the exhibits thereto, without payment of any such tax or government assessment, and without the presentation of any affidavits, instruments, or returns otherwise required for recording, other than this Confirmation Order. The Bankruptcy Court retains jurisdiction to enforce the foregoing direction, by contempt proceedings or otherwise.

7.     Any Liens granted under the Plan shall be deemed perfected without recordation, the same as though recorded, without any further action required of the person to whom such Lien is granted under the Plan.

### Bar Dates

8.     Except as otherwise provided herein, unless previously filed or paid, requests for payment of Administrative Expense Claims (other than Ordinary Course Administrative Claims) must be filed and served on the Debtor no later than 60 days after the Effective Date ("General Administrative Claims Bar Date"); provided, however, that the General Administrative Claims Bar Date may be extended from time to time upon the mutual agreement of the Reorganized Debtor and the applicable holder of an Administrative Expense Claim, or pursuant to an order of the Bankruptcy Court after notice to the Notice Parties. Holders of Administrative Expense Claims that are required to file a request for payment of such Administrative Expense Claims and that do not file such a request by the

applicable Administrative Claims Bar Date will be forever barred from asserting such Administrative Expense Claims against the Debtor, and such Administrative Expense Claims will be deemed discharged as of the Effective Date. Unless extended by the Bankruptcy Court or by agreement of the Reorganized Debtor and the filing party, objections to such requests must be filed and served on the Notice Parties, and the requesting party by the earlier of (A) 120 days after the Effective Date or (B) 60 days after the filing of the applicable request for payment of Administrative Expense Claims.

9. Professionals or other Persons asserting a Professional Fee Claim for services rendered to the Estate before the Effective Date must file and serve on the Reorganized Debtor an application for final allowance of such Professional Fee Claim, as it relates to services provided to the Estate prior to the Effective Date, no later than 60 days after the Effective Date ("Professional Fee Claims Bar Date"); provided, however, that the Professional Fee Claims Bar Date may be extended from time to time upon the mutual agreement of the Reorganized Debtor and the applicable Professional Person or pursuant to an order of the Bankruptcy Court after notice to the Notice Parties. Unless extended by the Bankruptcy Court, objections to any Professional Fee Claim must be filed and served on the Notice Parties and the requesting party no later than 30 days after the filing of the applicable request for payment of the Professional Fee Claim. If a request for

- 7 -

payment of a Professional Fee Claim is not made by the applicable Professional Fee Claim Bar Date, such claim will be forever barred and such Professional Fee Claims will be deemed discharged as of the Effective Date. Professional Persons may obtain payment of reasonable fees and expenses incurred subsequent to the Effective Date for the preparation and prosecution of an application for final allowance of a Professional Fee Claim by submitting an invoice to the Reorganized Debtor on or after the date that the Bankruptcy Court enters an order granting such application; provided, however, that (a) the Reorganized Debtor shall have the right to object any such invoice, (b) to the extent that Reorganized Debtor and the applicable Professional Person are unable to resolve any such objection, the matter may be set for hearing before the Bankruptcy Court on not less than thirty (30) days notice, and (c) the Reorganized Debtor shall not be required to pay any particular fees and expenses that are the subject of an unresolved objection unless and until the Bankruptcy Court so orders.

10.    Any request for payment of an Administrative Expense Claim asserted by a governmental unit for a tax claim ("Administrative Tax Claim") must be filed and served on the Reorganized Debtor no later than 60 days after the Effective Date ("Administrative Tax Claims Bar Date"), provided, however, that the Administrative Tax Claim Bar Date may be extended from time to time upon the mutual agreement of the Reorganized Debtor and the applicable governmental

- 8 -

unit, or pursuant to an order of the Bankruptcy Court after notice to the Notice Parties. If a request for payment of an Administrative Tax Claim is not made by the applicable Administrative Tax Claim Bar Date, such claim will be forever barred against the Reorganized Debtor and such Administrative Tax Claims will be deemed discharged as of the Effective Date. Unless extended by the Bankruptcy Court, objections to any such Filed Administrative Tax Claims must be filed and served on the Notice Parties and the requesting party by the earlier of (A) 120 days after the Effective Date or (B) 60 days after the filing of the applicable request for payment of an Administrative Tax Expense Claim.

## Vesting of Assets

11.    All of the Debtor's assets shall revest in the Reorganized Debtor on the Effective Date.

## Estate Causes of Action

12.    On the Effective Date, the Reorganized Debtor shall have the full power and authority to prosecute compromise or otherwise resolve any and all claims and Rights of Action, including but not limited to, all claims and causes of action arising under or related to the Bankruptcy Code.

13.    As of the Effective Date, the Reorganized Debtor shall have authority to investigate, administer, monitor, implement, litigate and settle all disputed or unresolved Claims and Administrative Expense Claims. Nothing herein shall

- 9 -

preclude or limit the right or authority of any other party in interest with standing under the Bankruptcy Code to object to any Claim or Administrative Expense Claim.

## Effective Date and Discharge

14. The Effective Date shall occur on the second business day following the satisfaction of the conditions precedent to the occurrence of the Effective Date as set forth in Section VII of the Plan. The Debtor shall file a Notice of Effective Date as soon after the Effective Date as practical and shall serve a copy of the Notice of Effective Date on the Master Service List.

15. The Debtor's discharge under the Bankruptcy Code, the Plan, and this Order shall occur on the Effective Date. Except as provided in the Plan or this Confirmation Order, as of the Effective Date the rights afforded under the Plan and the treatment of Claims, Administrative Expense Claims and Equity Interests under the Plan will be in exchange for an in complete satisfaction, discharge and release of all Claims, Administrative Expense Claims and Equity Interests, including any interest accrued on claims from the commencement of the Chapter 11 Case. As of the Effective Date, except as provided in the Plan or this Confirmation Order, Confirmation will discharge the Debtor from all Claims, Administrative Expense Claims or other debts that arose before the Confirmation Date and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code,

whether or not (a) a proof of Claim based on such debt is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (b) a Claim based on such debt is allowed pursuant to section 502 of the Bankruptcy Code or (c) the holder of a Claim or Administrative Expense Claim based on such debt has accepted the Plan.

16.    As of the Effective Date, except as provided in the Plan or in this Confirmation Order, all persons shall be precluded from asserting against the Reorganized Debtor, any other or further Claims, Administrative Expense Claims, debts, rights, causes of action, liabilities, or equity interests of the Debtor, based on any act, omission, transaction or other activity of any kind or nature that occurred before the Effective Date.  In accordance with the foregoing, except as provided in the Plan or herein, this Confirmation Order shall be a judicial determination of discharge of all such Claims, Administrative Expense Claims and other debts and liabilities against the Reorganized Debtor, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtor at any time, to the extent that such judgment relates to a discharged liability, Claim, or Administrative Expense Claim.  Notwithstanding the foregoing, federal and state governmental agencies shall not be subject to the foregoing injunction with respect to the exercise and enforcement of any of their respective regulatory or police rights and powers.

**Executory Contracts**

17.     The assumption and assignment and, as appropriate, cure of assumed executory contracts, as provided for under the Plan, pursuant to Bankruptcy Court section 365, as of the Effective Date, is hereby approved.

18.     The rejection of executory contracts and unexpired leases as provided for under the Plan is hereby approved pursuant to Bankruptcy Code sections 365 and 1123(b)(2).  Each party to any rejected executory contract or unexpired lease shall file any claim for damages arising from that rejection not later than thirty (30) days after mailing of the Notice of Effective Date.

### Exculpations, Indemnities and Injunctions

19.     The scope of liability, release, exculpation, indemnification, and injunction provisions contained in the Plan (including but not limited to Sections 10.6.1 and 10.6.2) shall be effective and binding upon all persons and entities to the full extent provided in the Plan, except as otherwise provided for herein.

20.     Except as provided in the Plan or herein, as of the Effective Date, all Persons that have held, currently hold or may hold a Claim or other debt or liability against the Debtor, are hereby permanently enjoined from taking any of the following actions on account of any such discharged or satisfied Claims, debts or liabilities, or Equity Interests:  (a) commencing or continuing in any manner any action or other proceeding against the Debtor, the Reorganized Debtor, the Estate,

- 12 -

or their respective property, other than to enforce any right pursuant to the Plan to a distribution; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, the Estate, or their respective property, other than as permitted pursuant to (a) above; (c) creating, perfecting or enforcing any Lien or encumbrance against the Debtor, the Reorganized Debtor, the Estate, or their respective property; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (e) commencing or continuing any action, in any manner, in any place, that does not comply with or is inconsistent with the provisions of the Plan, provided however, that nothing herein shall affect or otherwise impair the existing right of setoff by the United States of mutual pre-petition obligations. Notwithstanding the foregoing, federal and state governmental agencies shall not be subject to the foregoing injunction with respect to the exercise and enforcement of any of their respective regulatory or police rights and powers.

21.     To the maximum extent permitted by law and as of the Effective Date, none of the Debtor, the Estate,  nor any of their employees, officers, directors, agents, members, managers, representatives, or the professionals employed or retained by any of them, whether or not by Bankruptcy Court order (each, an "Exculpated Person"), shall have or incur liability to any Person for an act taken or omission made, in good faith (which shall not include willful or reckless

misconduct) after the Petition Date, in connection with or related to the Chapter 11 Case, formulation of the Plan, the Disclosure Statement, or a contract, instrument, or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of the Plan, or the consummation and implementation of the Plan contemplated therein; provided, however, nothing herein shall limit or release any liability of any Person from direct liability arising from the operation of the Debtor in the ordinary course of business; provided, further, however, any such liability of the Debtor shall be limited to a claim which if an Allowed Claim shall be treated under the Plan. Each Exculpated Person shall in all respects be entitled to reasonably rely on the advice of counsel with respect to their duties and responsibilities under the Plan. This Confirmation Order constitutes a judicial determination that the exculpation provision contained in this Section is necessary to, inter alia, facilitate Confirmation and feasibility and to minimize potential claims arising after the Effective Date for indemnity, reimbursement or contribution from the Debtor or the Estate. This Confirmation Order constitutes a res judicata determination of the matters included in the exculpation provisions of the Plan.

## United States Trustee Fees

22.     All quarterly fees due and payable to the Office of the United States Trustee pursuant to section 1930(a)(6) of title 28 of the United States Code shall be

duly paid in full on or before the Effective Date, as required by section 1129(a)(12) of the Bankruptcy Code. The Reorganized Debtor shall be responsible for timely payment of such quarterly fees due and payable until the Bankruptcy Case is closed. Until the Chapter 11 Case is closed, the Reorganized Debtor shall file with the Office of the United States Trustee quarterly financial reports specifying all "disbursements" made and shall make all payments based upon such disbursements as required by applicable law.

### Enforceability

23. Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of this Confirmation Order, the Plan and the Plan Supplement shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

24. Each term and provision of the Plan is hereby deemed to be valid and enforceable pursuant to its terms, except as modified by this Order.

### Other Matters

25. To the extent of any inconsistency between the provisions of the Plan and this Confirmation Order, the terms contained in this Confirmation Order shall govern. The provisions of this Confirmation order are integrated with each other and are nonseverable and mutually dependent unless expressly stated otherwise by further order of this Bankruptcy Court.

- 15 -

**END OF ORDER**

Approved as to form:


/s/ Curtis B. Ching
CURTIS B. CHING
Attorney for the Office of the U.S. Trustee


/s/ Matthew C. Shannon
MATTHEW C. SHANNON
Attorney for Kai Family Trust


/s/ David C. Farmer
DAVID C. FARMER
Attorney for Cory Tereick


Submitted by:

WAGNER CHOI & VERBRUGGE
CHUCK C. CHOI
ALLISON A. ITO
745 Fort Street, Suite 1900
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Facsimile: (808) 566-6900
E-Mail: cchoi@hibklaw.com;
aito@hibklaw.com
Attorneys for Debtor

WAGNER CHOI & VERBRUGGE
Attorneys at Law

CHUCK C. CHOI
ALLISON A. ITO
745 Fort Street, Suite 1900
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Fax: (808) 566-6900
Email: cchoi@hibklaw.com
        aito@hibklaw.com

Attorneys for Debtor
and Debtor-in-Possession

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re | Case No. 16-00348 |
| HAWAIIAN RIVERBEND, LLC, | (Chapter 11) |
| Debtor and Debtor-in-possession. | |

## DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION DATED AS OF OCTOBER 6 2016

HAWAIIAN RIVERBEND, LLC, debtor and debtor-in-possession herein

("Debtor") proposes the following chapter 11 plan pursuant to section 1121(a) of

the Bankruptcy Code.

EXHIBIT A

# I.

## DEFINITIONS AND RULES OF CONSTRUCTION

### 1. Defined Terms.

As used herein, the following terms have the respective meanings specified below (such meanings to be equally applicable to both the singular and plural, and masculine and feminine, forms of the terms defined):

**1.1.** **"Administrative Claims Bar Date"** has the meaning set forth in Section I.2.3 below.

**1.2.** **"Administrative Expense Claim"** means a claim that is for payment of any cost or expense of administration of the Chapter 11 Case, allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary post-petition expense of preserving the Estate, any actual and necessary post-petition expense of operating the business of the Debtor in Possession, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the Estate of the Debtor under Section 1930 of chapter 123 of title 28 of the United States Code.

**1.3.** **"Allowed Administrative Expense Claim"** means an Administrative Expense Claim: (a) for which a request for payment is Filed on or before the Administrative Claims Bar Date and as to which no objection to such

Administrative Expense Claim is in the amount set forth in such request; (b) that is allowed pursuant to a Final Order, in the amount set forth therein; or (c) is an Ordinary Course Administrative Expense as to which no objection has been Filed. Unless otherwise specified herein or by Final Order of the Bankruptcy Court, the amount of any Allowed Administrative Expense Claim shall not include interest on such Administrative Expense Claim accruing from and after the Petition Date.

1.4. **"Allowed Claim"** means, except as otherwise provided herein or by Final Order of the Bankruptcy Court, a Claim, proof of which was timely and properly Filed or, if no proof of claim was Filed, which has been or hereafter is listed by the Debtor in his respective Schedules as liquidated in amount and not disputed or contingent, and, in either case, as to which no objection to the allowance thereof, or request for estimation, has been interposed, and that is not otherwise a Disputed Claim.

1.5. **"Allowed General Unsecured Claim"** means a General Unsecured Claim to the extent it is or has become an Allowed Claim.

1.6. **"Allowed Secured Claim"** means a Secured Claim to the extent it is or has become an Allowed Claim.

1.7. **"Amended First Kai Note"** means that alleged First Amendment of Promissory Note dated August 8, 2013 by the Debtor in favor of the Kai Trust in the principal amount of $840,000.00.

76612

3

Case: 22-50314 U.S. Bankruptcy Court Hawaii Doc# 51-2 Filed: 06/06/22 Dkt # 136 Entered: 06/06/22 08:48:18 Page 19 of 68 Page 22 of 136

**1.8.** "**Amended First Kai Mortgage**" means that certain mortgage recorded against Parcel 21 in the Bureau as Document No. 2010-062606 by the Debtor in favor of the Kai Trust, as amended by that certain instrument recorded in the Bureau on August 8, 2013 as Document No. A-50700518 for the principal amount of $809,504.00.

**1.9.** "**Bankruptcy Code**" means Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*, as now in effect or hereafter amended, and as applicable to the Chapter 11 Case.

**1.10.** "**Bankruptcy Court**" or "**Court**" means the United States Bankruptcy Court for the District of Hawaii or, in the event such court ceases to exercise jurisdiction over the Chapter 11 Case, such other court that exercises jurisdiction over the Chapter 11 Case.

**1.11.** "**Bankruptcy Rules**" means, collectively, (i) the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Case, and (ii) the Local Bankruptcy Rules applicable to cases pending before the Bankruptcy Court, as now in effect or hereafter amended.

**1.12.** "**Bureau**" means the Bureau of Conveyances for the State of Hawaii.

**1.13.** "**Business**" means the operation of the business by the Debtor.

**1.14. "Business Day"** means any day which is not a Saturday, a Sunday, or a "legal holiday" as defined in Bankruptcy Rule 9006(a).

**1.15. "Cash"** means legal tender of the United States of America and equivalents thereof.

**1.16. "Chapter 11 Case"** means the case under chapter 11 of the Bankruptcy Code that was commenced by the filing of a voluntary petition on April 4, 2016, before the Bankruptcy Court, and which case is styled, *In re Hawaiian Riverbend, LLC*, and assigned Bk. No. 16-00348 (Chapter 11).

**1.17. "Chen Secured Note"** means that certain promissory note dated on or about October 10, 2013 in the original principal amount of $175,000.00 by the Debtor in favor of Gang Chen.

**1.18. "Chen Mortgage"** means that certain mortgage executed by Debtor in favor of the Gang Chen recorded against Parcel 21 as security for the Chen Secured Note recorded on October 15, 2013 in the Bureau as Document No. A-50360170.

**1.19. "Claim"** means a "claim," as defined in section 101(5) of the Bankruptcy Code, against the Debtor.

**1.20. "Class"** means one of the Classes of Claims or Classes of Equity Interests designated in Article II of the Plan.

**1.21.** **"Confirmation"** means the entry of the Confirmation Order on the docket of the Chapter 11 Case.

**1.22.** **"Confirmation Date"** means the date on which the Confirmation Order is entered on the docket for the Chapter 11 Case within the meaning of Bankruptcy Rules 5003 and 9021.

**1.23.** **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court on Confirmation of the Plan as such hearing may be continued from time to time.

**1.24.** **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**1.25.** **"Counterclaims"** means the counterclaims asserted by the Debtor against the Kai Trust in that certain lawsuit entitled *Kenneth Y. Kai, Trustee of the Kai Family 1998 Trust, et al. v. Hawaiian Riverbend, LLC*, In the Third Circuit Court of the Circuit Courts of the State of Hawaii, Civil No. 3CC 15-1-0164K.

**1.26.** **"Debtor"** means Hawaiian Riverbend LLC.

**1.27.** **"Disclosure Statement"** means the written disclosure statement that relates to the Plan, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017 as such

76612

Case: 22-50314 Doc# 51-2 Filed 06/06/22 Dkt # Entered 06/06/22 08:48:18 Page 25
U.S. Bankruptcy Court - Hawaii #16-00020 Dkt # 135 Filed 12/28/16 Page 22 of 63 of 136

disclosure statement may be amended, modified or supplemented from time to time.

**1.28.** **"Disbursing Agent"** means any entity acting in its capacity as a disbursing agent or successor disbursing agent under Section V.1.1. of the Plan. The Disbursing Agent under the Plan shall be the Reorganized Debtor.

**1.29.** **"Disputed Claim"** means, respectively, any Claim: (a) as to which a Proof of Claim has been Filed and the dollar amount of such Claim, respectively, is not specified in a fixed amount; (b) prior to the deadline to object to such Claim, as to which a Proof of Claim has been Filed and the dollar amount of such Claim is specified in a fixed liquidated amount, the extent to which the stated amount of such Claim exceeds the amount of such Claim listed in the Schedules; and (c) with respect to either a Claim that is listed in the Schedules and/or as to which a Proof of Claim has been Filed, as to which the Debtor or any other party in interest has Filed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, and/or any order of the Bankruptcy Court, which objection or request for estimation has not been withdrawn or determined by a Final Order.

**1.30.** **"Effective Date"** means the first Business Day (a) on which no stay of the Confirmation Order is in effect and (b) that is at least one Business Day after the date on which the conditions specified in Article VII of the Plan have

been satisfied or waived. Notwithstanding anything to the contrary herein, the Effective Date shall occur on or before the six month anniversary of the Confirmation Date.

1.31. **"Estate"** means the estate created for Debtor pursuant to section 541 of the Bankruptcy Code, and includes all includes all the property, proceeds, profits and rents resulting or derived therefrom that are acquired by the Estate or by the Debtor from the Petition Date to the Effective Date, and by the Estate on or after the Effective Date.

1.32. **"File," "Filed," "Files," or "Filing"** means properly and timely filed with the Bankruptcy Court in the Chapter 11 Case, as reflected on the official docket of the Bankruptcy Court for the Chapter 11 Case, and served on Persons, as such filing and service are required pursuant to the Bankruptcy Code, Bankruptcy Rules and/or order of the Bankruptcy Court.

1.33. **"Final Order"** means an order or judgment of the Bankruptcy Court or other applicable court, as entered on the applicable docket, that has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and

substance satisfactory to the Debtor in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or other applicable court shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired.

**1.34. "First Tereick Note"** means that certain note executed by Debtor in favor of Cory Tereick dated on or about June 24, 2014 in the original principal amount of $65,000.00.

**1.35. "First Tereick Mortgage"** means that certain mortgage in favor of Cory Tereick securing the First Tereick Note and recorded against Parcel 52 in the Bureau on July 16, 2014 as Document No. A-53100336.

**1.36. "General Unsecured Claim"** means any Claim that is not a Secured Claim or an Administrative Expense Claim.

**1.37. "Kai Trust"** or **"Kai Family Trust"** means the Kai Family 1998 Trust dated October 5, 1998.

**1.38. "Lien"** means any mortgage, pledge, deed of trust, assessment, lien, security interest, lease, adverse claim, levy, constructive trust claim, equitable lien, charge or other encumbrance of any kind, or any other type of preferential

arrangement, easement, right of way, conditional sale contract, title retention

contract, limitation, or restriction of any kind on title and ownership of property.

**1.39. "Ordinary Course Administrative Expenses"** means costs or

expenses allowable under section 503(b)(1)(A) incurred for goods and services

provided to the Debtor in the ordinary course of its business during the Chapter 11

Case from the Petition Date through and including the Effective Date; provided,

however, that Ordinary Course Administrative Expenses shall not include

Professional Fee Claims

**1.40. "Person"** means any individual, corporation, limited liability

company, general partnership, limited partnership, association, joint stock

company,  joint venture, estate, trust, the United States Trustee, a government or

any political subdivision, governmental unit, official committee appointed by the

United States Trustee, unofficial committee of creditors, or the executors,

administrators or other legal representatives of any of the foregoing.

**1.41. "Petition Date"** means April 4, 2016.

**1.42. "Plan"** means this chapter 11 plan of reorganization for the

Debtor, including all exhibits hereto and all documents incorporated by reference

to the Plan Supplement, either in their present form or as they may amended, or

modified from time to time.

1.43.  **"Plan Supplement"** means the compilation of the forms of certain documents referred to herein as specified in the Plan, as amended, modified or supplemented from time to time, which shall be filed with the Court prior to the Confirmation Hearing.

1.44.  **"Parcel 21"** means that certain approximately 5.95 acre parcel of real property located in Waikoloa, Island of Hawaii, Hawaii and identified with Tax Map Key No. (3) 6-8-002-021.

1.45.  **"Parcel 52"** means certain approximately 10.75 acre parcel of real property located in Waikoloa, Island of Hawaii, Hawaii and identified with Tax Map Key No. (3) 6-8-002-052.

1.46.  **"Parcel 53"** means certain approximately 14.622 acre parcel of real property located in Waikoloa, Island of Hawaii, Hawaii and identified with Tax Map Key No. (3) 6-8-002-053.

1.47.  **"Pro Rata"** means proportionately so that the ratio of (a) cumulative amount of all funds distributed or to be distributed on account of a particular Allowed Claim to (b) the amount of such Allowed Claim is the same as the ration of (x) the cumulative amount of all funds distributed or to be distributed on account of all Allowed Claims in a particular Class to (y) the amount of all Allowed Claims of that Class.

Case: 22-90314  U.S. Bankruptcy Court - Hawaii  Doc# 51-2  Filed 06/06/22  Dkt # 136  Entered 06/06/22 08:48:18  Filed 12/28/16  Page 31  Page 30 of 136 of 63

**1.48. "Professional Person"** means for purposes of this Plan, any professional person employed by the Debtor, or the Committee pursuant to sections 327 or 1103 of the Bankruptcy Code, or otherwise pursuant to an order of the Bankruptcy Court, or any professional or other Person seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case under or pursuant to section 503(b)(4) of the Bankruptcy Code.

**1.49. "Professional Fee Claim"** means a Claim under sections 330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional Person or other Person for services rendered or expenses incurred from the Petition Date in the Chapter 11 Case, through and including the Effective Date.

**1.50. "Reorganized Debtor"** means the Debtor on or after the Effective Date.

**1.51. "Right Of Action"** means any and all actions, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law,

equity or otherwise, and whether commenced or arising before or after the Effective Date.

1.52.  **"Schedules"** means the schedules of assets and liabilities, list of equity security holders and statement of financial affairs filed by the Debtor as amended from time to time.

1.53.  **"Second Kai Note"** means that certain alleged promissory note by the Debtor in favor of the Kai Trust in the principal amount of $300,000.00 dated August 7, 2013.

1.54.  **"Second Kai Mortgage"** means that certain second mortgage executed by Debtor in favor of the Kai Trust against Parcel 53 as security for the Second Kai Note recorded on November 18, 2013 in the Bureau as Document No. A-50700519.

1.55.  **"Second Tereick Note"** means that certain promissory note by the Debtor in favor of Cory Tereick in the principal amount of $91,000.00 dated June 25, 2014.

1.56.  **"Second Tereick Mortgage"** means that certain second mortgage executed by Debtor in favor of Cory Tereick against Parcel 52 as security for the Second Tereick Note recorded on October 1, 2014 in the Bureau as Document No. A-53870691.

1.57. **"Secured Claim"** means a Claim against the Debtor to the extent of the value, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code, of any interest in property of the Estate securing such Claim.

2. **Interpretation; Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section, article, schedule or exhibit references in this Plan are to the respective section in, article of, or schedule or exhibit to, this Plan, as the same may be amended, waived or modified from time to time.

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. A term used herein that is not defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code or Bankruptcy Rules and shall be construed in accordance with the rules of construction applied thereto.

3. **Exhibits.**

All exhibits and schedules to the Plan, including, the Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full herein.

## II.

## CLASSIFICATION AND TREATMENT OF CLAIMS

### 1.      Summary of Classification and Treatment.

Administrative Expense Claims are not classified in accordance with Section 1123(a)(1) of the Bankruptcy Code and holders of such claims are not entitled to vote to accept or reject the Plan.

### 2.      Administrative Expense Claims.

**2.1.      <u>Administrative Expense Claims</u>.**  Subject to the provisions of sections 330(a), 331 and 503(b) of the Bankruptcy Code, each Allowed Administrative Expense Claim shall be paid by the Debtor or the Reorganized Debtor, as the case may be, in full, in Cash, 30 days after the later of (i) the Effective Date, (ii) the due date thereof in accordance with its terms, (iii) the date upon which such Administrative Claim becomes an Allowed Claim, (iv) for any liability incurred in the ordinary course of business, the date upon which such liability is payable in the ordinary course of such Debtor's business, consistent with past practices or (v) such other date as may be agreed by the parties.

The Administrative Expenses may include compensation claims by Mr. Miroyan and Mr. Smith, which will continue to accrue post-confirmation and be entitled to payment in full before payment to Class 4 General Unsecured Claims.

**2.2.    Compensation and Reimbursement Claims.**  On, or as soon as practicable after, the Effective Date, each holder of an Allowed Claim that is based upon awarded compensation or reimbursement of expenses by the Bankruptcy Court in accordance with section 330 or 331 of the Bankruptcy Code or entitled to the priority pursuant to section 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code, shall be paid in full, in Cash, the amounts allowed by the Bankruptcy Court: (a) on or as soon as reasonably practicable following the later to occur of (i) the Effective Date, and (ii) the date on which the Bankruptcy Court order allowing such Claim becomes a Final Order; or (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Administrative Claim and the Debtor.

**2.3.    Administrative Claim Bar Date.**  Except as otherwise provided herein, unless previously Filed or paid, requests for payment of Administrative Expense Claims (other than Ordinary Course Administrative Claims) must be Filed pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order, no later than 60 days after the Effective Date ("Administrative Claims Bar Date"); provided, however, that the Administrative Claims Bar Date may be extended from time to time upon the mutual agreement of the Debtor and the applicable holder of an Administrative Expense Claim, or pursuant to an order of the Court.  Holders of Administrative

Expense Claims that are required to File a request for payment of such Administrative Expense Claims and that do not File such a request by the applicable Administrative Claims Bar Date will be forever barred from asserting such Administrative Expense Claims against the Debtor, the Estate or their respective property, and such Administrative Expense Claims will be deemed discharged upon completion of the payments provided in the Plan. Unless extended by the Bankruptcy Court or by agreement of the Debtor and the Filing party, objections to such requests must be Filed and served on the requesting party by the later of (A) 120 days after the Effective Date or (B) 60 days after the Filing of the applicable request for payment of Administrative Expense Claims.

      2.4   **Priority Tax Claims**. Except to the extent that the holder of an Allowed Priority Tax Claim agrees to a different treatment, the Debtor shall pay to each holder of an Allowed Priority Tax Claim, on account of and in full satisfaction of such Allowed Priority Tax Claim, Cash in an amount equal to such Allowed Priority Tax Claim on the later of: (i) the Effective Date; and (ii) the date such Priority Tax Claim becomes an Allowed Priority Tax Claim (or as soon thereafter as is practicable).

    3.   **Treatment of Claims and Interests.**

      The categories listed below classify Allowed Claims and Interests for all purposes, including voting, confirmation, and distribution pursuant to the Plan:

| Class | Treatment |
|---|---|
| Class 1A: Kai Family Trust Amended First Note Claim (first mortgage Parcel 53) | Impaired - entitled to vote |
| Class 1B: Kai Family Trust Second Note Claim (second mortgage Parcel 53) | Impaired - entitled to vote |
| Class 2A: Cory Tereick First Note Claim (first mortgage Parcel 52) | Impaired - entitled to vote |
| Class 2B: Cory Tereick Second Note Claim (second Parcel 52) | Impaired - entitled to vote |
| Class 3: Chen Secured Claim (Parcel 21) | Impaired - entitled to vote |
| Class 4: County of Hawaii Real Property Tax Claim | Impaired - entitled to vote |
| Class 5: General Unsecured Claims | Impaired - entitled to vote |
| Class 6: Equity Interest | Unimpaired - not entitled to vote |

### 3.1. Class 1A: Kai Family Trust Amended First Note Claim (First Mortgage Parcel 53).

3.1.1 **Classification:** Class 1A consists of the Amended First Kai Note which is secured by the Amended First Kai Mortgage on Parcel 53. This Secured Claim is disputed. The asserted balance on the Amended First Kai Note as of July 2016 is approximately $948,739. The Debtor believes that the value of Parcel 53 is approximately $6.5 million. The Debtor intends to list Parcel 52 and 53 jointly for sale until an outside sale date of November 30, 2017. If these properties have not been sold by November 30, 2017, Parcels 52 and 53 the Debtor will auction Parcels 52 and 53 as set forth herein.

**3.1.2 Treatment:** The Debtor will pay the Kai Family Trust an amount equal to the value of its Allowed Secured Claim, provided however that the Kai Family Trust shall not be paid as part of its Allowed Secured Claim, any default interest, late charges or similar fees or expenses, except as may be allowed by the Court. The payment to the Kai Family Trust will be made promptly after the later of: (a) the date the Kai Family Trust Amended First Note Claim becomes an Allowed Secured Claim; and (b) the sale of Parcel 53 pursuant to the Plan. Within 30 days after the Effective Date, the Debtor will commence an adversary proceeding to liquidate (a) the Allowed amounts owed under the First Kai Mortgage and (b) the Counterclaims. The payment shall be made not later than the date that an order determining the Allowed amount of the First Kai Note Claim becomes a Final Order.

Class 1A is impaired, and is entitled to vote to accept or reject to the Plan.

### 3.2.   Class 1B:   Kai Family Trust Second Note Claim (Second Mortgage Parcel 53).

**3.2.1 Classification:** Class 1B consists of the Second Kai Note which is secured by the Second Kai Mortgage on Parcel 53. This Secured Claim is disputed. The asserted balance on the Second Kai Note as of July 2016 is approximately $300,000. The Debtor believes that the value of Parcel 53 is at least $6.5 million. The Debtor intends to list Parcel 52 and 53 jointly for sale until an

outside sale date of November 30, 2017. If these properties have not been sold by November 30, 2017, Parcels 52 and 53 the Debtor will auction Parcels 52 and 53 as set forth herein.

**3.2.2 Treatment:** The Debtor will pay the Kai Family Trust an amount equal to the value of its Allowed Secured Claim, provided however that the Kai Family Trust shall not be paid as part of its Allowed Second Kai Note Claim any default interest, late charges or similar fees or expenses, except as may be allowed by the Court. The payment to the Kai Family Trust will be made promptly after the later of: (a) the date the Second Kai Note Claim becomes an Allowed Secured Claim; and (b) the sale of Parcel 53 pursuant to the Plan. Within 30 days after the Effective Date, the Debtor will commence an adversary proceeding to liquidate (a) the Allowed amounts owed under the First Kai Mortgage and (b) the Counterclaims. The payment shall be made not later than the date that an order determining the Allowed amount of the Second Kai Mortgage becomes a Final Order.

Class 1B is impaired, and is entitled to vote to accept or reject to the Plan.

### 3.3.  Class 2A:  Cory Tereick First Note Claim (First Mortgage Parcel 52).

**3.3.1 Classification:** Class 2A consists of the First Tereick Note which is secured by the First Tereick Mortgage on Parcel 52. This Secured

Claim is disputed.  The asserted balance on the First Tereick Note balance was approximately $65,000 as of June 25, 2014.  The Debtor believes that the value of Parcel 52 is approximately $1,500,000.  The Debtor intends to list Parcel 52 and 53 jointly for sale until an outside sale date of November 30, 2017.  If these properties have not been sold by November 30, 2017, Parcels 52 and 53 the Debtor will auction Parcels 52 and 53 as set forth herein.

      **3.3.2  Treatment:**  The Debtor will pay Cory Tereick an amount equal to the value of its Allowed Secured Claim, provided however that Tereick shall not be paid as part of its Allowed Secured Claim, any default interest, late charges or similar fees or expenses, except as may be allowed by the Court.  The payment to Tereick will be made promptly after the later of: (a) the date the First Tereick Note Claim becomes an Allowed Secured Claim; and (b) the sale of Parcel 53 pursuant to the Plan. Within 30 days after the Effective Date, the Debtor will commence an adversary proceeding to liquidate the Allowed amounts owed under the First Tereick Note.  The payment shall be made not later than the date that an order determining the Allowed amount of the First Tereick Note becomes a Final Order.

Class 2A is impaired, and is entitled to vote to accept or reject to the Plan.

### 3.4. Class 2B: Cory Tereick Second Note Claim (Second Mortgage Parcel 52).

**3.4.1 Classification:** Class 2B consists of the Second Tereick Note which is secured by the Second Tereick Mortgage on Parcel 52. This Secured Claim is undisputed. The asserted balance on the Second Tereick Note balance was approximately $120,000 as of the Petition Date. The Debtor believes that the value of Parcel 52 is approximately $1,500,000. The Debtor intends to list Parcel 52 and 53 jointly for sale until an outside sale date of November 30, 2017. If these properties have not been sold by November 30, 2017, Parcels 52 and 53 the Debtor will auction Parcels 52 and 53 as set forth herein.

**3.4.2 Treatment:** The Debtor will pay Tereick an amount equal to the value of its Allowed Secured Claim, provided however that Tereick shall not be paid as part of its Allowed Secured Claim, any default interest, late charges or similar fees or expenses, except as may be allowed by the Court. The payment to Tereick will be made promptly from the sale of Parcel 53 pursuant to the Plan.

Class 2B is impaired, and is entitled to vote to accept or reject to the Plan.

3.5. **Class 3:** **Allowed Gang Chen Secured Claim (Parcel 21).**

**3.5.1 Classification:** Class 3 consists of the Chen Secured Note which is secured by the Chen Mortgage on Parcel 21. This Secured Claim is undisputed. The balance on the Chen Secured Note balance was approximately $175,000 as of October 10, 2013. The Debtor believes that the value of Parcel 21 is approximately $500,000. The Debtor intends to list Parcel 21 for sale until an outside sale date of November 30, 2017. If by that time these properties have not been sold, Parcels 21 (together with Parcels 52 and 53) will be auctioned as set forth herein.

**3.5.2 Treatment:** The Debtor will pay Chen an amount equal to the value of its Allowed Secured Claim, provided however that Chen shall not be paid as part of its Allowed Secured Claim, any default interest, late charges or similar fees or expenses, except as may be allowed by the Court. The payment to Chen will be made promptly from the sale of Parcel 21 pursuant to the Plan.

Class 3 is impaired, and is entitled to vote to accept or reject to the Plan.

3.6. **Class 4:** **Allowed Real Property Tax Claims.**

**3.6.1 Classification:** Class 4 consists of Allowed secured real property tax claims of the County of Hawaii. The County of Hawaii has filed a proof of claim no. 4 asserting a priority unsecured status in the amount of

76612
23

Case: 22-50314 Doc# 51-2 Filed 06/06/22 Entered 06/06/22 08:48:18 Page 42 of 136
U.S. Bankruptcy Court - Hawaii #16-00630 Dkt # 135 Filed 12/28/16 Page 39 of 83

$42,312.07 allocated as follows: $7,413.62 for Parcel 21, $15,097.74 for Parcel 52, and $19,800.71 for Parcel 53.

**3.6.2 Treatment:** Holders of Allowed secured real property tax Claims shall be paid from the respective sales proceeds of Parcels 21, 52 & 53.

Class 4 is impaired, and the holders of Allowed Claims in Class 4 are entitled to vote to accept or reject the Plan.

### 3.7. **Class 5:     Allowed Unsecured Claims.**

**3.7.1 Classification:** Class 5 consists of Allowed unsecured claims. The Debtor estimates that it has approximately $359,000 in General Unsecured Claims.

**3.7.2 Treatment:** Holders of Allowed General Unsecured Claims shall be paid from the sales proceeds of Parcels 52 & 53 only after Allowed secured claims held by the Kai Family Trust, Tereick, and the County of Hawaii are paid in full and shall be paid in full their Allowed Claims with interest at the rate of three percent (3%) per annum in a single lump-sum installment not later than March 31, 2018. Notwithstanding the foregoing, if the remaining sales proceeds of Parcels 52 and 53 are insufficient to pay Allowed General Unsecured Claims in full (after paying the Allowed secured claims of Kai Trust, Tereick, and the County of Hawaii), then Holders of Allowed General Unsecured Claims will be paid their pro rata share of the remaining sales proceeds of Parcels 52 and 53.

76612
24

Case: 22-50314  Doc# 51-2  Filed: 06/06/22  Entered: 06/06/22 08:48:18  Page 43
U.S. Bankruptcy Court - Hawaii #16-00922 Dkt # 135 Filed 12/28/16 Page 46 of 63
of 136

Class 5 is impaired, and the holders of Allowed Claims in Class 5 are entitled to vote to accept or reject the Plan.

### 3.8. **Class 6:** **Equity Interest**

Class 6 consists of Debtor's legal, equitable, contractual and other rights in the Estate. The Debtor shall retain its equity interest.

Class 6 is unimpaired and is not entitled to vote or reject the Plan.

## III.

## ACCEPTANCE OR REJECTION OF THE PLAN

### 1. **Voting Classes.**

Each holder of an Allowed Claim in Classes 1A, 1B, 2A, 2B, 3, 4 and 5 shall be entitled to vote to accept or reject the Plan.

### 2. **Voting Rights Of Holders Of Disputed Claims.**

Except as otherwise provided in the Plan, pursuant to Bankruptcy Rule 3018(a), a Disputed Claim that falls within the provisions of Section 1.23(a) and (c) hereof will not be counted for purposes of voting on the Plan to the extent it is disputed, unless an order of the Bankruptcy Court is entered after notice and a hearing temporarily allowing the Disputed Claim for voting purposes under Bankruptcy Rule 3018(a). A Disputed Claim that falls within the provisions of Section 1.23(b) hereof will be counted for purposes of voting on the Plan unless and until such Claim becomes a Disputed Claim that falls within the provisions of

76612

Case: 22-50314 Doc# 51-2 Filed 06/06/22 Entered 06/06/22 08:48:48 Page 44
U.S. Bankruptcy Court - Hawaii #16-00966 Dkt # 135 Filed 12/28/16 Page 42 of 63
of 136

Section 1.23(c) hereof. Disallowance of a Disputed Claim for voting purposes is without prejudice to the claimant's right to seek to have its Disputed Claim allowed for purposes of distribution under the Plan.

### 3. Presumed Acceptance And Rejection Of Plan.

Class 6 is unimpaired under the Plan and, therefore, are conclusively presumed by the Bankruptcy Code to accept the Plan.

### 4. Nonconsensual Confirmation.

In the event that any impaired class of Claims or class of Equity Interests shall fail to accept the Plan in accordance with section 1129(a)(8) of the Bankruptcy Code, the Debtor reserves the right to (i) request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, and/or (ii) modify the Plan in accordance with section 1127(a) of the Bankruptcy Code.

## IV.

## IMPLEMENTATION OF THE PLAN

### 1. GENERAL MEANS OF IMPLEMENTATION

The Plan will be implemented and consummated through various means contemplated by the Bankruptcy Code, including, without limitation, through the actions and transactions summarized as follows:

76612
26

Case: 22-50314  Doc# 51-2  Filed: 06/06/23  Dkt # 135  Entered: 06/06/22 08:48:48  Page 45
U.S. Bankruptcy Court Hawaii #16-00826 Dkt # 135 Filed 12/28/16 Page 42 of 68 of 136

## 1.1.    Sale of Property

The Debtor intends to employ Rick Robinson of Sofos Realty to market Parcel 21 at $550,000.00.  To the extent funds are available after the sale of Parcel 21, Debtor intends to use such funds to pay (1) the architect to complete construction drawings of the improvements for Parcel 53 required by the County of Hawaii which would greatly enhance the value of Parcel 53; (2) administrative expenses, and (3) post-petition management fees for Mr. Miroyan and Mr. Smith.

The Debtor will also engage Clark Realty Corporation dba Sperry Van Ness/Clark Commercial Group and Faris Lee Investments, a real estate investment firm (subject to Court approval), to jointly list Parcels 52 and 53 for sale at $7 million.[1]

The sale of Parcels 21, 52, and 53 will be subject to Bankruptcy Court approval. If Parcels 21, 52, and/or 53 remain unsold or not under contract to be sold on November 30, 2017, then the Debtor will auction the unsold parcel(s).  Mr. Robinson has also agreed to serve as auctioneer for Parcels 21, 52 and 53 if they are not sold by November 30, 2017 on terms to be negotiated.  The Debtor reserves the right to employ another auctioneer but anticipates naming an auctioneer in the Plan Supplement.

The Debtor will follow the timeline below for the auction process:

---

[1] In 2014, the Faris Lee firm marketed and sold the Waikoloa Highlands Shopping Center, located across the street from the Parcels, for approximately $24 million.

26612
Case: 22-50314  Doc# 51-2  Filed: 06/06/22  Entered: 06/06/22 08:48:48  Page 46
U.S. Bankruptcy Court - Hawaii #16-00928  Dkt # 135  Filed: 12/23/16  Page 43 of 63
of 136

| PROPOSED DATE (on or before) | EVENT |
|---|---|
| December 1, 2017 | Due diligence period begins |
| January 8, 2018 (or shortly thereafter) | Auctioneer publishes notice in the Honolulu Star-Advertiser (the "Published Notice") of the auction date, time and place for three consecutive weeks. The Published Notice would include all material information, including: (a) property address; (b) TMK numbers; (c) acreage and description; (d) encumbrances and amounts (based on proofs of claim or Schedules); (e) "bid qualifying requirements" (as set forth below); and (f) time and place for the auction. Furthermore, the Published Notice would specifically provide that the sale is subject to Bankruptcy Court approval, that the sale is "AS IS" and that 10% of the highest bid is payable in cash or cashier's check at close of Auction, with the balance paid in cash within 30 days of entry of an order confirming the sale |
| January 29, 2018 | Expiration of period to conduct due diligence |
| January 31, 2018 | Deadline to submit Qualified Bidder Packet. To participate in the Auction, all interested persons must: (i) submit a written bid; (ii) deliver proof of financial ability and corporate authority (if applicable), and (iii) identify of the bidder (collectively, the "Qualified Bidder Packet"). The Qualified Bidder Packet must be submitted to the Auctioneer. |
| February 2, 2018 | Notification of Qualified Bids - the Auctioneer will notify such potential bidder as to whether such potential bidder shall be considered a Qualified Bidder |
| February 7, 2018 | Auction, if Overbids. If the Auctioneer does not receive at least two Qualified Bids, no Auction will occur. If the Debtor receives only one Qualified Bid, then no Auction will be conducted and the sole Qualified Bid will be the Successful Bid.

If the Auctioneer receives at least two Qualified Bid by the Initial Bid Deadline, the Auctioneer will conduct the Auction at the place and time set forth in the Published |

76612

28

Case: 22-50314   Doc# 51-2   Filed 06/06/22   Entered 06/06/22 08:48:18   Page 47
U.S. Bankruptcy Court - Hawaii #16 06/06/22 Dkt # 136 Filed 12/28/16 Page 48 of 88
of 136

| | Notice. Bidding at the Auction will be in accordance with the procedures announced at the inception of the auction and will commence with the highest Qualified Bid and continue in all cash increments of not less than $5,000.00 until all parties have made their final offers; provided however that holders of undisputed secured liens against Parcel(s) may credit bid its secured claims in lieu of providing cash consideration. At the conclusion of the Auction, the Auctioneer shall review and consider each of the Qualified Bids and any increased Qualified Bids and shall determine, which of the Qualified Bid(s) or increased Qualified Bid(s) constitutes the highest and best offer for the Parcel(s) and which of the Qualified Bids or increased Qualified Bids constitutes the second highest and best bid for the Parcel(s). The bidder making the bid that is selected as the highest and best bid by the Auctioneer, or any bid that is ultimately selected by the Auctioneer in accordance with the Bidding Procedures shall be considered the "Successful Bidder," and the bidder that is selected as the second highest and best bid by the Auctioneer shall be considered the "Second Highest Bidder." The Auctioneer shall inform each of the bidders of the decision regarding who are the Successful Bidder and the Second Highest Bidder. The Qualified Bidder Deposit of the Successful Bidder shall be considered the "Successful Bidder Deposit."<br>Notification of Successful Bidder |
|---|---|
| February 28, 2018 | Closing |

## 1.2. **Provisions for Treatment of Disputed Claims**

Notwithstanding all references in the Plan to Claims that are Allowed, in undertaking the calculations concerning Allowed Claims or Allowed Administrative Expense Claims under the Plan, including the determination of the amount or number of distributions due to the holders of Allowed Claims and

Case: 22-90314 Doc# 51-2 Filed: 06/06/22 Dkt # Entered: 06/06/22 08:48:18 Page 48
U.S. Bankruptcy Court - Hawaii #16-00630 Dkt # 135 Filed 12/28/16 Page 48 of 136
of 136

Allowed Administrative Expense Claims, each Disputed Claim shall be treated as if it were an Allowed Claim or Allowed Administrative Expense Claim for purposes of voting on the Plan, except that if the Bankruptcy Court estimates the likely portion of a Disputed Claim to be Allowed or authorized or otherwise determines the amount or number which would constitute a sufficient reserve for a Disputed Claim (which estimates and determinations may be requested by the Reorganized Debtor), such amount or number as determined by the Bankruptcy Court shall be used as to such Claim. Objections to Claims must be filed and served within 180 days of the Effective Date.

### 1.3. Revesting of Assets.

Except as otherwise provided in the Plan, on and after the Effective Date, all property of the Estate of the Debtor, including all rights of action, and any property acquired by the Debtor under or in connection with the Plan will vest in the Reorganized Debtor free and clear of all Claims, Liens, charges, other encumbrances and interests, except as otherwise provided for herein. On and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire and dispose of property and compromise or settle any claims or interests without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than restrictions expressly imposed by the Plan or the Confirmation Order.

### 1.4.    Exemption from Transfer Taxes.

Pursuant to section 1146 of the Bankruptcy Code, any transfers from the Debtor to the Reorganized Debtor or any other Person pursuant to the Plan including (a) the creation of any mortgage deed or trust, or other security interest, and (b) the making of any agreement or instrument in furtherance of, or in connection with, this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment.

### 1.5.    Issuance and Execution of Plan Related Documents.

On and after the Confirmation Date, all actions contemplated by the Plan shall be taken by the Debtor and such actions shall be deemed authorized and approved in all respects (subject to the provisions of the Plan), including, without limitation, the execution and the delivery of, and the performance under, all other documents and agreements contemplated by or relating to the Plan.

### 1.6.    Occurrence of the Effective Date.

The Effective Date shall occur on the first Business Day following the satisfaction (or waiver) of the conditions precedent to the occurrence of the Effective Date as set forth in Article VII hereof.

Case: 22-50314 Doc# 51-2 Filed: 06/06/22 Dkt # Entered: 06/06/22 08:48:18 Page 50
U.S. Bankruptcy Court - Hawaii #126 Filed 11/28/16 Page 48 of 68 of 136

### 1.7. Occurrence of the Debtor's Discharge.

The Debtor's discharge under the Bankruptcy Code, the Plan, and the Confirmation Order shall occur on the Effective Date.

### 1.8. Certain Fees and Expenses.

From and after the Effective Date, the expenses incurred in the ordinary course of the Business, fees and expenses of Professional Persons, amounts payable to the U.S. Trustee under 28 U.S.C. § 1930(a)(6), and adequate protection payments, shall be paid by the Debtor, in the ordinary course of business, or pursuant to a Final Order of the Bankruptcy Court.

### 1.9. Post Confirmation Reports.

The Reorganized Debtor shall file quarterly post-confirmation reports regarding distributions and implementation of the Plan until the case is closed.

### 1.10. Post-Confirmation Management

From and after the Effective Date, Michael Miroyan shall be the manager and Ryan Smith shall be the CFO of the Reorganized Debtor. Mr. Miroyan's salary shall be $1,000.00 per month. Mr. Smith's salary shall be $2,000.00 per month.

# V.

## DISTRIBUTIONS

### 1.  Reorganized Debtor to Serve as Disbursing Agent.

The Reorganized Debtor shall be the disbursing agent to hold and distribute Cash and such other property as may be distributed pursuant to the Plan.

### 2.  Disputed Claims That Do Not Become Allowed Claims.

To the extent that a Disputed Claim is disallowed, subordinated, voided, voided for the benefit of the Debtor's Estate, or recharacterized, the Debtor shall not make any distribution on account of such Disputed Claim.

Notwithstanding all references in the Plan to Claims that are Allowed, in undertaking the calculations concerning Allowed Claims or Allowed Administrative Expense Claims under the Plan, including the determination of the amount or number of distributions due to the Holders of Allowed Claims and Allowed Administrative Expense Claims, each Disputed Claim shall be treated as if it were an Allowed Claim, except that if the Bankruptcy Court estimates the likely portion of a Disputed Claim to be Allowed or authorized or otherwise determines the amount or number which would constitute a sufficient reserve for a Disputed Claim (which estimates and determinations may be requested by the Reorganized Debtor), such amount or number as determined by the Bankruptcy Court shall be used as to such Claim.

Case: 22-50314  Doc# 51-2  Filed: 06/06/22  Entered: 06/06/22 08:48:48  Page 52
U.S. Bankruptcy Court Hawaii #16-00981 Dkt # 135  Filed 12/28/16  Page 49 of 63
of 136

**3.      No Distributions To Non-Filing Parties.**

Pursuant to Bankruptcy Rule 3003(c)(2), (a) no distribution under the Plan shall be made to any party whose claim is listed by the Debtor as disputed, contingent, or unliquidated if such party fails to file a Claim, and (b) any and all Claims of such non-filing parties (described in subsection (a)) shall be disallowed.

**4.      De Minimis Distributions.**

No Cash payment of less than ten dollars ($10.00) shall be made by the Reorganized Debtor to any holder of a Claim.

**5.      Record Date For Distributions.**

On the Confirmation Date, there shall be no further changes in the holders of record of Claims.  The Debtor shall not recognize any transfer of Claims occurring after the Confirmation Date, but shall instead be entitled to recognize and deal for all purposes with only those holders of record stated on the applicable transfer ledgers on the docket of Claims for the Chapter 11 Case as of the Confirmation Date.

**6.      Saturday, Sunday, or Legal Holiday.**

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 7. Delivery Of Distributions, Address Of Holder.

For purposes of all notices and Distributions under this Plan, the Debtor shall be entitled to rely on the name and address of the holder of each Claim as specified by, and Distributions to holders of Claims shall be made by regular U.S. first class mail to, the following addresses: (1) the address set forth on the respective Filed proof of Claim of such holder; (2) the address set forth in any written notice of address change delivered by the holder to the Debtor after the date of any related Filed proof of Claim, or (3) the address reflected on the Schedules if no proof of Claim is Filed and the Debtor has not received a written notice of a change of address.

## VI.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 1. Rejection Generally

On the Effective Date, all executory contracts or unexpired leases to which the Debtor is a party shall be deemed automatically rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such executory contracts or unexpired leases (i) shall have been previously assumed by the Debtor by Final Order of the Bankruptcy Court, (ii) shall be the subject of a motion to assume pending on or before the Effective Date, (iii) are listed on the schedule of assumed executory contracts or unexpired leases to be

76612
35

Case: 22-50314  Doc# 51-2  Filed: 06/06/22  Entered: 06/06/22 08:48:18  Page 54
U.S. Bankruptcy Court - Hawaii  #16  Dkt # 135  Filed: 12/28/16  Page 31 of 63  of 136

filed with the Plan Supplement, or (iv) are otherwise assumed pursuant to the terms of this Plan. The Debtor reserves the right to amend the Plan Supplement at any time prior to the Confirmation Date.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejections and assumptions contemplated hereby pursuant to sections 365(a) and 1123 of the Bankruptcy Code as of the Effective Date, including assumption of those executory contracts listed in Section IV.1.1. above. Each executory contract and unexpired lease assumed pursuant to this Article VI shall revest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as modified by the provisions of this Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption or applicable federal law.

## 2. Objections to Assumption

Any party in interest wishing to object to the assumption or assignment of an executory contract or unexpired lease, shall File and serve any objection to such assumption by the same deadline and in the same manner established for filing objections to Confirmation, unless the assumption of such executory contract or unexpired lease is the subject of an amendment to the Plan Supplement in which case the deadline is the date that is the earlier of: (a) twenty (20) days after the date

of such amendment; or (b) the day that is five (5) days before the initial Confirmation Hearing.

### 3. Payments Related To Assumption

Any defaults under each executory contract and unexpired lease to be assumed under the Plan, shall be cured, pursuant to Bankruptcy Code Section 365(b)(1), by payment of the amount ("Cure Amount"), if any, and shall be paid on or as soon as practicable after the Effective Date by the Debtor or on such terms as may be agreed upon between the parties. In the case of a dispute with respect to such Cure Amount set forth in a timely Filed objection to the assumption or assignment, the Debtor shall pay such Cure Amount in Cash on or as soon as practicable after entry of a Final Order resolving the dispute, and approving the assumption.

### 4. Bar Date For Rejection Claims

Any Claim by any party to an executory contract or unexpired lease rejected by the Debtor hereunder shall be classified in Class 15, provided, however, that: (a) any Claim arising from rejection of an executory contract or unexpired lease which has not been barred by a prior order of the Bankruptcy Court, shall be forever barred and shall not be enforceable unless a proof of Claim is Filed within 30 days after the mailing of the Notice of Effective Date; and (b) nothing herein shall constitute a waiver of the any applicable claims bar date.

# VII.

## EFFECTIVENESS OF THE PLAN

### 1.    Conditions Precedent.

The Plan shall not become effective ("Effective Date") unless and until the following conditions shall have been satisfied, or waived by the Debtor in its sole and absolute discretion:

### 1.1    The Confirmation Order, in form and substance reasonably satisfactory to the Debtor shall be a Final Order.

### 2.    Notice Of Effective Date.

As soon as practicable after the Effective Date has occurred, the Debtor shall File with the Bankruptcy Court, and serve on the members of the various Classes, an informational notice specifying the Effective Date, as a matter of record.

# VIII.

## CRAMDOWN

The Debtor requests Confirmation under section 1129(b) of the Bankruptcy Code with respect to any impaired Class that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code. Debtor reserves the right to modify the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

# IX.

## RETENTION OF JURISDICTION AND MISCELLANEOUS MATTERS

### 1.      Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case and any of the proceedings related to the Chapter 11 Case pursuant to section 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purpose and intent of the Plan are carried out, provided, however, that the Bankruptcy Court shall not have jurisdiction with respect to Tax Claims that arise solely after the Effective Date.  Without limiting the generality of the foregoing, the Bankruptcy Court shall retain jurisdiction for the following purposes:

(a)      establish the priority or secured or unsecured status of, allow, disallow, determine, liquidate, classify, or estimate any Claim or Administrative Expense Claim;

(b)      grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

Case: 22-50314   Doc# 51-2   Filed: 06/06/22   Dkt # Entered: 06/06/22 08:48:18   Page 58
U.S. Bankruptcy Court - Hawaii #16-00994   Dkt # 135   Filed: 12/23/16   Page 35 of 63   of 136

(c)    resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims or Administrative Expenses arising therefrom;

(d)    ensure that Distributions to holders of Allowed Claims or Administrative Expense Claims are made pursuant to the provisions of the Plan, and to effectuate performance of the provisions of the Plan;

(e)    decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending before the Effective Date or that may be commenced thereafter;

(f)    except as otherwise provided in the Confirmation Order or in the Plan, enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, the Disclosure Statement, or the Confirmation Order, including, without limitation, any stay orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified or vacated;

76612
Case: 22-50314 Doc# 51-2 Filed 06/06/22 Dkt # 16 Filed 12/28/16 Page 36 of 68 Page 59 of 136

(g)     resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan, or the Confirmation Order, including the release and injunction provisions set forth in and contemplated by the Plan and the Confirmation Order or any Person's rights arising under or obligations incurred in connection with the Plan, or the Confirmation Order;

(h)     subject to the restrictions on modifications provided in any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement, or the Confirmation Order; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, or the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement, or  the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

(i)     issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any

Person with the consummation, implementation or enforcement of the Plan or, the Confirmation Order,

(j)     consider and act on the compromise and settlement of any Claim against, or Right of Action of the Debtor;

(k)     enter such orders as may be necessary or appropriate in connection with the recovery of the assets of the Debtor, wherever located;

(l)     determine such other matters as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(m)     enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings issued or entered in connection with the Chapter 11 Case, or the Plan;

(n)     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement, or the Confirmation Order, except as otherwise provided in the Plan;

(o)     determine any other matter not inconsistent with the Bankruptcy Code; and

(p)     enter an order concluding the Chapter 11 Case.

## 2. Headings

The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

## 3. Notices

All notices and requests in connection with the Plan shall be in writing and shall be hand delivered or sent by mail addressed to:

If to Debtor:      Hawaiian Riverbend LLC
           P.O. Box 3181
           Saratoga, California  95070

Copy to:       Wagner Choi & Verbrugge
           745 Fort Street, Suite 1900
           Honolulu, Hawaii  96813-3820
           Attn: Chuck C. Choi
           Facsimile: (808) 566-6900
           Phone: (808) 533-1877

## 4. Successors and Assigns

The rights, duties and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

## 5. Severability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will

have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to their terms.

### 6. No Waiver

Neither the failure to list a Claim in the Schedules filed by the Debtor, the failure of any Person to object to any Claim for purposes of voting, the failure of any Person to object to a Claim or Administrative Expense Claim prior to Confirmation or the Effective Date, the failure of any Person to assert a Right of Action prior to Confirmation or the Effective Date, the absence of a proof of Claim having been Filed with respect to a Claim, nor any action or inaction of any Person with respect to a Claim, Administrative Expense Claim, or Right of Action other than a legally effective express waiver or release shall be deemed a waiver or release of the right of the Debtor or its successors or representatives, before or after

solicitation of votes on the Plan or before or after Confirmation or the Effective Date to (a) object to or examine such Claim or Administrative Expense Claim, in whole or in part or (b) retain and either assign or exclusively assert, pursue, prosecute, utilize, otherwise act or otherwise enforce any Rights of Action.

### 7. Inconsistencies

In the event the terms or provisions of the Plan are inconsistent with the terms and provisions of the exhibits to the Plan or documents executed in connection with the Plan, the terms of such documents shall control; provided, however, in the event of a conflict between either the Plan or such documents or exhibits and the Confirmation Order, the Confirmation Order shall control.

### 8. Payment of Statutory Fees

All quarterly fees due and payable to the Office of the United States Trustee pursuant to section 1930(a)(6) of title 28 of the United States Code shall be duly paid in full as and when due, as required by section 1129(a)(12) of the Bankruptcy Code.

### 9. Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Hawaii (without reference to its conflict of law rules) shall govern the construction and implementation of the Plan and any agreements, documents, and instruments

Case: 22-50314 Doc# 51-2 Filed 06/06/22 Entered 06/06/22 08:48:48 Page 64
U.S. Bankruptcy Court Hawaii #16-00626 Dkt # 135 Filed 12/23/16 Page 45 of 64
of 136

executed in connection with the Plan, unless otherwise specifically provided in such agreements, documents, or instruments.

### 10. Withholding, Reporting, And Payment Of Taxes

In connection with the Plan and all instruments issued in connection therewith and distributions thereon, the Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Debtor shall report and pay taxes as may be required by applicable law. In addition, to the extent required by applicable law, reported distributions from such reserves shall include all interest and investment income, if any, attributable to the Cash or property being distributed net of taxes which are, or are estimated to be, due and payable thereon.

## X.

## EFFECT OF CONFIRMATION

### 1. Binding Effect of Confirmation

Confirmation will bind the Debtor, all holders of Equity Interests, Claims or Administrative Expense Claims and other parties in interest to the provisions of the Plan whether or not the Equity Interest, Claim or Administrative Expense Claim of such holder is impaired under the Plan and whether or not the holder of such Claim, Administrative Expense Claim or Equity Interest has accepted the Plan.

### 2. Good Faith

Confirmation of the Plan shall constitute a finding that: (i) this Plan has been proposed by the Debtor in good faith and in compliance with applicable provisions of the Bankruptcy Code; (ii) all Persons' solicitations of acceptances or rejections of this Plan and the offer, issuance, sale, or purchase of a security offered or sold under the Plan have been in good faith and in compliance with applicable provisions of the Bankruptcy Code.

### 3. No Limitations on Effect of Confirmation

Nothing contained in the Plan will limit the effect of Confirmation as described in section 1141 of the Bankruptcy Code.

### 4. Discharge of Claims, Administrative Expenses and Interests

Except as provided in the Plan or the Confirmation Order, the Debtor will be discharged from all Claims, Administrative Expense Claims or other debts that arose before the Confirmation Date and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a proof of Claim based on such debt is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (b) a Claim based on such debt is allowed pursuant to section 502 of the Bankruptcy Code or (c) the holder of a Claim or Administrative Expense Claim based on such debt has accepted the Plan. As of the Effective Date, except as provided in the Plan or the Confirmation Order, all Persons shall be

Case: 22-50314 Doc# 51-2 Filed: 06/06/22 Entered: 06/06/22 08:48:48 Page 66
U.S. Bankruptcy Court Hawaii #16-00248 Dkt # 136 Filed 12/28/16 Page 63 of 63 of 136

precluded from asserting against the Debtor, its respective successors or property, any other or further claims, debts, rights, causes of action, liabilities or equity interests based upon any act, omission, transaction or other activity of any nature that occurred prior to the Effective Date.

### 5.    Judicial Determination of Discharge

Except as provided in the Plan or in the Confirmation Order, all Persons shall be precluded from asserting against the Debtor any other or further Claims, Administrative Expense Claims, debts, rights, causes of action, liabilities, or equity interests based on any act, omission, transaction or other activity of any kind or nature that occurred before the Effective Date.  Except as provided in the Plan or in the Confirmation Order, the Confirmation Order will be a judicial determination of discharge of all such Claims, Administrative Expense Claims and other debts and liabilities against the Debtor, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharges shall void any judgment obtained against the Debtor, at any time, to the extent that such judgment relates to a discharged liability, Claim, or Administrative Expense Claim, effective upon completion of the payments provided in the Plan.  Notwithstanding the foregoing, federal and state governmental agencies shall not be subject to the foregoing injunction with respect to the exercise and enforcement of any of their respective regulatory or police rights and powers.

## 6. Injunctions

**6.1** Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that have held, currently hold or may hold a Claim or other debt or liability, or Equity Interest, that is satisfied or released, as applicable, will be permanently enjoined from taking any of the following actions on account of any such discharged or satisfied Claims, debts or liabilities: (a) commencing or continuing in any manner any action or other proceeding against the Debtor, the Estate, or their respective property, other than to enforce any right pursuant to the Plan to a distribution; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, the Estate, or their respective property, other than as permitted pursuant to (a) above; (c) creating, perfecting or enforcing any Lien or encumbrance against the Debtor, the Estate, or their respective property; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor or the Estate; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan, provided however, that nothing herein shall affect or otherwise impair the existing right of setoff by the United States of mutual pre-petition obligations. Notwithstanding the foregoing, federal and state governmental agencies shall not be subject to the foregoing injunction with respect

Case: 22-50314   Doc# 51-2   Filed: 06/06/22   Entered: 06/06/22 08:48:48   Page 68
U.S. Bankruptcy Court - Hawaii #16-00630 Dkt # 136 Filed 12/28/16 Page 85 of 63
of 136

to the exercise and enforcement of any of their respective regulatory or police rights and powers.

　　　　6.2 As of the Effective Date, all Persons that have held, currently hold or may hold any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities that are released pursuant to the Plan will be permanently enjoined from taking any of the following actions against any Person or its property on account of such released claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities, including, without limitation: (a) commencing or continuing in any manner any action or other proceeding; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (c) creating, perfecting or enforcing any Lien; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to any Person; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan. Notwithstanding the foregoing, federal and state governmental agencies shall not be subject to the foregoing injunction with respect to the exercise and enforcement of any of their respective regulatory or police rights and powers.

76612
50

Case: 22-50314  Doc# 51-2  Filed: 06/06/22  Entered: 06/06/22 08:48:48  Page 69 of 136
U.S. Bankruptcy Court Hawaii #16-00980 Dkt # 135 Filed 12/28/16 Page 86 of 68

# XI.

## MODIFICATION OR WITHDRAWAL OF PLAN

1.      The Debtor may seek to amend or modify the Plan at any time prior to its Confirmation in the manner provided by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise order, and the Debtor reserves the right to amend the terms of the Plan or waive any conditions to its Confirmation, effectiveness or consummation if the Debtor determines that such amendments or waivers are necessary or desirable to confirm, effectuate or consummate the Plan.

2.      After confirmation of the Plan, the Debtor may apply to the Bankruptcy Court, pursuant to section 1127 of the Bankruptcy Code, to modify the Plan.  After confirmation of the Plan, the Debtor may apply to remedy defects or omissions in the Plan or to reconcile inconsistencies in the Plan.

# XII.

## CONFIRMATION REQUEST

The Debtor requests that the Court confirm the Plan and that it do so, if applicable, pursuant to section 1129(b) of the Bankruptcy Code notwithstanding the rejection of the Plan by any impaired Class.

DATED: San Jose, California, October 6, 2016.

HAWAIIAN RIVERBEND LLC


/s/ Michael Miroyan
Michael Miroyan, Its Manager

Submitted by:

/s/ Chuck C. Choi
CHUCK C. CHOI
ALLISON A. ITO
Substitute Attorneys for Debtor and Debtor-in-Possession
HAWAIIAN RIVERBEND LLC

76612

52

Case: 22-50314   Doc# 51-2   Filed: 06/06/22   Entered: 06/06/22 08:48:48   Page 71
U.S. Bankruptcy Court - Hawaii   #16-00098   Dkt # 135   Filed: 12/28/16   Page 48 of 63
of 136

# EXHIBIT TWO

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

UNITED STA

DIST

| | |
|---|---|
| In re: | Case No. 16-00348 |
| HAWAIIAN RIVERBEND, LLC, | Chapter 11 |
| Debtor. | |

## **ORDER DISMISSING CASE**

An order to show cause why the court should not (1) direct the appointment of a chapter 11 trustee, (2) convert this case to one under chapter 7, (3) dismiss this case, or (4) grant other appropriate relief was issued on January 10, 2018 ("OSC").[1]

The United States Trustee filed a timely response on January 24, 2018, stating that appointment of a chapter 11 trustee is not authorized by 11 U.S.C. §1104(a) because such trustee can only be appointed prior to the confirmation of a plan and this court confirmed the Debtor's chapter 11 plan (the "Plan") on December 23, 2016.[2]

Secured creditor Cory TerEick filed a timely response on January 23, 2018, explaining that a dismissal with prejudice is his preferred option in order to expedite

---

[1] Dkt. 170.

[2] Dkt. 176. The United States Trustee filed a first response to the OSC on January 23, 2018, reporting that the Debtor is currently delinquent on quarterly fees. Dkt. 174. The United States Trustee received a payment of $325 from the Debtor for quarterly fees on January 25, 2018. Dkt. 184.

liquidation of his collateral, which is subject to a pending Third Circuit foreclosure case in Kona.[3]

Creditors Kenneth Y. Kai and Tae K. Kai, Trustees of the Kai Family 1998 Trust "("Kai creditors"), filed a timely response on January 24, 2018, urging the court to dismiss the petition because the Debtor has failed to comply with the Plan and continuation of the bankruptcy case will only serve to delay and prejudice the creditors.[4]

Michael Miroyan ("Mr. Miroyan"), an interested party, filed a response on January 24, 2018, requesting a hearing in this matter and claiming that more time is needed to comply with the Plan.[5] The response attaches declarations of unsecured creditors, stating that: (a) they oppose conversion to chapter 7; and (b) they request that the Debtor receive an additional year to sell or refinance the property.

For the following reasons, I will dismiss the case.

**<u>Request for Further Hearing</u>**

Mr. Miroyan's request for a hearing is denied. Section 1112(b)of the Bankruptcy Code provides that the court may dismiss or convert a chapter 11 case "after notice and a hearing," but section 102(1) authorizes the court to dispense with

---

[3] Dkt. 175.

[4] Dkt. 177.

[5] Dkt. 181.

2

an actual hearing if "appropriate in the particular circumstances."

No further hearing is necessary in this case. The court held a status conference, at which Mr. Miroyan spoke. The order to show cause gave Mr. Miroyan and all other parties in interest an opportunity to state their positions in writing. Mr. Miroyan has availed himself of that opportunity by filing extensive papers,[6] all of which I have carefully reviewed. A hearing is not necessary.[7]

Further, Mr. Miroyan sent an email to counsel for the Kai creditors prior to the status conference that was abusive, profane, and threatening.[8] While the email contains no explicit threats of violence, its tone and content are beyond inappropriate. Mr. Miroyan has forfeited whatever right he might have had to a hearing.

**<u>Cause</u>**

Cause exists to dismiss Debtor's bankruptcy case. Section 1112 of the Bankruptcy Code states:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case

---

[6] Dkt. 181, 183, 185, 188, 189, 190, 192, 192, and 194.

[7] Section 1112 provides that the court shall convert or dismiss a case "on request of a party in interest." Section 105(a) makes clear, however, that the court can act sua sponte where appropriate.

[8] Dkt. 193.

under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, <u>for cause</u> unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C.A. § 1112(b)(1) (emphasis added).

Subsection (b)(4) contains a nonexclusive list of factors that constitute "cause." The list includes, among others: gross mismanagement of the estate, failure to comply with an order of the court, inability to effectuate substantial consummation of a confirmed plan, and material default by the debtor with respect to a confirmed plan.

Cause exists to dismiss the case because the Debtor is admittedly in material default of its obligation under the Plan. Debtor failed to conduct a sale of the properties and later failed to submit them for auction. Debtor's counsel made it clear at the status conference on January 8, 2018 , that Debtor does not intend to comply with the Plan.

Additionally, Mr. Miroyan's outrageous email to counsel for Kai creditors and his other inappropriate statements in court filings[9] demonstrate that he should not be administering the estate as a fiduciary for the creditors and other parties in interest.

## <u>Appointment of a Chapter 11 Trustee</u>

Appointment of a chapter 11 trustee is not authorized here. Section 1004(a) of

---

[9] Dkt. 190.

4

the Bankruptcy Code provides that the court may appoint a chapter 11 trustee "at any time after the commencement of the case but before confirmation of a plan . . . ."

Debtor's Plan was confirmed on December 23, 2016, and therefore, the appointment of a chapter 11 trustee is not warranted.

**Dismissal or Conversion**

Dismissal of the case rather than conversion to one under chapter 7 is in the best interest of creditors and the estate.[10]

The largest secured creditors of the Debtor, Kai creditors and Cory TerEick, request dismissal of the bankruptcy case.[11] They have the largest stake in this bankruptcy case. The secured creditors' right to pursue a state court action against the Debtor has been delayed (their foreclosure cases have been stayed pending this bankruptcy case). The Debtor has had more than a year to comply with the Plan, but has chosen not to do so. The Debtor has made no substantial efforts to sell the properties in accordance with the Plan.

The interests of the general unsecured creditors are not better served by converting this case to one under chapter 7. Given the amount of the secured claims and the Debtor's failure to sell the properties, it is highly unlikely that the general

---

[10] When deciding between dismissal and conversion under 11 U.S.C. § 1112(b), the court must consider the interests of *all* of the creditors. *See In re Owens*, 552 F.3d 958, 961 (9th Cir. 2009).

[11] Dkt. 175; Dkt. 177.

5

unsecured creditors would receive any payments if the case was converted to one under chapter 7. The unsecured creditors apparently prefer to give the Debtor an additional year to sell the properties. But the confirmed Plan provides for only a one year sales period that has already expired and, because the Plan has apparently been "substantially consummated" within the meaning of section 1101(2), the Plan probably cannot be modified.

Therefore, the court will enter a separate judgment DISMISSING this bankruptcy proceeding .

**END OF ORDER**

EXHIBIT THREE

**LAW OFFICE OF WAYNE A. SILVER**
Wayne A. Silver (108135)
643 Bair Island Road,
Suite 403
Redwood City, CA 94063
Phone: (650) 282-5970
Fax:    (650) 282-5980
Email: ws@waynesilverlaw.com

*Attorney for KENNETH Y. KAI and*
*TAE K. KAI, Trustees of the Kai Family 1998 Trust*

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>MICHAEL HAROUTUN MIROYAN,<br><br>    Debtor. | Case No.: 18-52601-MEH<br>Chapter 13<br>RS No. WS110<br><br> Date:  January 17, 2019<br>Time:  10:00 a.m.<br>Court:  3020, Hon. M. Elaine Hammond |

## <u>MOTION FOR RELIEF FROM STAY</u>

This motion is brought by Kai Family 1998 Trust Dated October 5, 1998 ("Kai Trust"), for full and complete relief from the automatic stay under 11 U.S.C. §362(d)(1) [1], together with an *in rem* order under Code §362(d)(4) ("Motion"), to continue the judicial foreclosure of an undeveloped lot located in Hawaii identified in bankruptcy debtor Michael Haroutun Miroyan's ("Miroyan") bankruptcy schedule[2] A/B, Item 1.4 as: "Empty Land in HI, Lot: 3-6-8-002-053," referred to herein as "Parcel 53." Parcel 53 was previously owned by Hawaiian Riverbend, LLC ("HR LLC"), Miroyan's single member LLC and former Chapter 11 debtor, until Miroyan caused HR LLC to

---

[1] Further references to Title 11 of the U.S. Code are abbreviated as the "Code."
[2] Kai Trust requests the Court take judicial notice of the Miroyan's bankruptcy schedules in the above captioned Chapter 13 case under Rules 201(b) and 201(d) of the Federal Rules of Evidence, which are made applicable to this proceeding by Rule 9017 of Federal Rules of Bankruptcy Procedure.

fraudulently transfer Parcel 53 to himself for no consideration on or about August 9, 2018.  HR LLC is the obligor on long overdue notes secured by Parcel 53 in favor of the Kai Trust, all of which are in default.

## I.     Statement of Jurisdiction

This Court has jurisdiction over this matter under 28 U.S.C. §§157 and 1334, which is a core proceeding within the meaning of 28 U.S.C. §157(b)(2)(A), (G) and (O) and in which this Court may enter a final judgment. Venue is proper in this District pursuant to 28 U.S.C. §§1408 and 1409. The statutory predicates for the motion are Code §§362(d)(1) and (4), Fed.R.Bankr.Pro. 4001 and Bankruptcy Local Rule 4001-1.

## II.     Secured Loan Transactions

As set forth in the Declaration of Kenneth Y. Kai filed concurrently herewith (the "Kai Decl."), HR LLC executed a Promissory Note dated May 3, 2010 in the principal amount $540,000.00 in favor of the Kai Trust ("Note").  [Kai Decl., ¶4, Exhibit 1] The Note was secured by real property located in Waikoloa, Hawaii, identified by Tax Map Key No. (3) 6-8-002-021 (the "Mortgaged Property") pursuant to a Real Property Mortgage dated April 28, 2010 ("Mortgage"), executed by HR LLC in favor of the Kai Trust. [Kai Decl., ¶5, Exhibit 2]

In late 2012/2013, HR LLC completed its subdivision of the Mortgaged Property into 3 separate parcels: (a) an approximately 5.95 acre parcel identified with Tax Map Key No. (3) 6-8-002-021 ("Parcel 21"); (b) an approximately 10.75 acre parcel identified with Tax Map Key No. (3) 6-8-002-052 ("Parcel 52"), and (c) an approximately 14.622 acre parcel identified with Tax Map Key No. (3) 6-8-002-053 ("Parcel 53"). [Kai Decl., ¶6]

Kai Trust agreed to release two specific parcels of the Mortgaged Property known as Lots 9-A and 9-B. The remaining property secured by the Mortgage is identified as Tax Map Key No. (3) 6-8-002-053 (Lot 9-C), and hereinafter referred to as "Parcel 53."  [Kai Decl., ¶7, Exhibit 3] The Note was amended effective March 1, 2013 in connection with this transaction by increasing the principal amount to $809,504.00 and adding a balloon payment with a due date of December 1, 2013 "Amended Note"). [Kai Decl., ¶8, Exhibit 4]

HR LLC subsequently executed another Promissory Note dated August 7, 2013 in the

Page - 2

principal amount of $300,000.00 ("2013 Note"). [Kai Decl., ¶9, Exhibit 5] The 2013 Note was also secured by Parcel 53 pursuant to a Real Property Mortgage dated August 7, 2013 executed by HR LLC in favor of the Kai Trust. [Kai Decl., ¶10, Exhibit 6]

### III.    Defaults

No payments were ever made by HR LLC under the Note, Amended Note or 2013 Note. Specifically, HR LLC did not make the balloon payment that was due on December 1, 2013 under the Amended Note.  Nor did HR LLC ever cure the default after due notice was made by the Kai Trust, through counsel. [Kai Decl., ¶¶11 – 12]

As a result of HR LLC's failure to pay the amounts due and owing, the Kai Trust accelerated the entire balance due under the loan documents. As of July 1, 2016, $948,739.72 was due and owing by HR LLC to the Kai Trust, consisting of $840,000.00 in principal plus $108,739.72 in interest (5% from 12/1/2013 to 7/1/2016). The amount due continues to accrue per diem interest at $115.07.  [Kai Decl., ¶¶13 – 14] An additional $104,713.70 in interest has accrued in the 910 days between 7/1/2016 and 12/28/17, bringing the current unpaid balance to $1,053.453.42.

### IV.    Judicial Foreclosure Action and Chapter 11 Bankruptcy

On or about May 1, 2015 the Kai Trust filed Civil Action No. 15-1-0164K against HR LLC in the Circuit Court of the Third Circuit State of Hawaii ("Civil Action") seeking to foreclose on Parcel 53.  The Civil Action was stayed when HR LLC filed for Chapter 11 bankruptcy on or about April 4, 2016 in the U.S. Bankruptcy Court for the District of Hawaii, Case No. 16-00348 (the "Bankruptcy Case"). [Kai Decl., ¶¶15 – 16]

HR LLC confirmed a Second Amended Plan of Reorganization dated October 6, 2016 ("Plan") in the Bankruptcy Case. The Plan classified the Kai Trust Claims in Classes 1(a) and 1(b), and provided for the sale or auction of Parcel 53 on or before February 28, 2018. [Kai Decl., ¶¶16 – 17, Exhibit 7]

HR LLC failed to comply with the Plan and failed to take the necessary steps to sell Parcel 53. As a result the Bankruptcy Case was dismissed on or about February 2, 2018.  In dismissing the Bankruptcy Case, the Bankruptcy Court found:

> Cause exists to dismiss the case because the Debtor is admittedly in material default of its obligation under the Plan. Debtor failed to

conduct a sale of the properties and later failed to submit them for auction. Debtor's counsel made it clear at the status conference on January 8, 2018, that Debtor does not intend to comply with the Plan. Additionally, Mr. Miroyan's outrageous email to counsel for Kai creditors and his other inappropriate statements in court filings [fn. omitted] demonstrate that he should not be administering the estate as a fiduciary for the creditors and other parties in interest.

[Kai Decl., ¶¶18 – 19, Exhibit 8, p. 4]

On or about March 21, 2018 Kai Trust's motion for summary judgment and interlocutory decree of foreclosure was granted in the Civil Action. Andrew Kennedy was appointed as the foreclosure Commissioner. [Kai Decl., ¶20, Exhibit 9]

## V.     Fraudulent Transfer of Parcel 53

On or about August 9, 2018 Miroyan caused HR LLC to convey Parcel 53 from HR LLC to himself for no consideration. The Court is requested to take judicial notice of the Warranty Deed attached as Exhibit "A" hereto. This was done without notice to, or approval from, anyone affiliated with the Kai Trust. [Kai Decl., ¶21, Exhibit 10]

Miroyan filed this Chapter 13 bankruptcy on November 26, 2018, the same day as the scheduled foreclosure sale of Parcel 53, which prevented the foreclosure. [Kai Decl., ¶22, Exhibit 11]

## VI.    Law and Argument in Support of Complete Relief from Stay and *In Rem* Order

By fraudulently transferring Parcel 53 from HR LLC to himself for no consideration and then filing for Chapter 13 bankruptcy, Miroyan has engaged in bad faith conduct designed to hinder, delay and/or defraud the Kai Trust. Kai Trust is therefore entitled to relief from the automatic stay under both Code §362(d)(1) for cause, and an *in rem* order under §362(d)(4).

### (A)     Miroyan's Bad Faith is Cause to Lift the Stay Under Code §362(d)(1)

The debtor's lack of good faith in filing a bankruptcy petition has often been used as cause for removing the automatic stay. See, e.g., *In re Kemble*, 776 F.2d 802, 807 (9th Cir. 1985) (debtor's dilatory behavior a proper consideration in lifting stay); *Matter of Little Creek Development Co.*, 779 F.2d 1068, 1071 (5th Cir. 1986) (lack of good faith constitutes "cause" for lifting stay). If it is obvious that a debtor is attempting unreasonably to deter and harass creditors in their bona fide efforts to realize upon their securities, good faith does not exist. *In re Thirtieth Place, Inc.*, 30 Bankr.

503, 505 (Bankr. App. 9th Cir. 1983) (quoting *In re Loeb Apartments, Inc.*, 89 F.2d 461, 463 (7th Cir. 1937)).

Miroyan's bad faith is obvious here. HR LLC's failed Chapter 11 Plan and Bankruptcy Court's findings that Miroyan had no intention of carrying out the Plan by selling or auctioning Parcel 53, HR LLC's failure to make any payments to the Kai Trust on the Note, Amended Note, or 2013 Note. [Kai Decl., ¶23], HR LLC's fraudulent transfer of Parcel 53 to Miroyan followed by the filing of this Chapter 13 to invoke the automatic stay and prevent the foreclosure sale scheduled the same day, add up to the requisite bad faith supporting cause under Code §362(d)(1). Filing a bankruptcy case for the sole purpose of invoking the automatic stay and disrupting state court litigation, without intending to use the special powers of the bankruptcy court to resolve or restructure the debtor's financial affairs, constitutes "bad faith." *In re Silberkraus*, 253 B.R. 890, 905 (Bankr. C.D. Cal. 2000) (citing cases in support).

**(B)     Kai Trust is Entitled to an *In Rem* Order Under Code §362(d)(4)**

Code § 362(d)(4) provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay. . .

(4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—

(A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or

(B)  multiple bankruptcy filings affecting such real property.

If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property  filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing.

Motion for Relief from Stay

A creditor seeking relief from the stay in a bankruptcy case pursuant to Code § 362(d)(4) must prove that (1) the debtor engaged in a scheme, (2) to delay, hinder or defraud the creditor, and (3) which involved either the transfer of property without the creditor's consent or court approval or multiple filings. If proven, the bankruptcy court may enter an order authorizing the creditor relief from the stay that is "binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court . . . ." *Alakozai v. Citizens Equity First Credit Union (In re Alakozai)*, 499 B.R. 698, 702-03 (BAP 9th Cir. 2013)

The evidence before this Court establishes each of the required elements justifying *in rem* relief under Code § 362(d)(4). Miroyan caused Parcel 53 to be transferred from HR LLC to himself for no consideration without Kai Trust's consent or court approval. Miroyan waited until the day of the scheduled foreclosure sale in the Civil Action, and then filed this Chapter 13 bankruptcy case the same day to prevent it. This scheme not only defrauded the Kai Trust by transferring Parcel 53 out of HR LLC for no consideration, it also hindered and delayed the Kai Trust from pursuing the judicial foreclosure of Parcel 53 in the Civil Action because of the automatic stay. Miroyan's scheme has thus far successfully prevented the Kai Trust from foreclosing on Parcel 53 for 3-1/2 years,[3] without HR LLC having to make a single payment under the Note, Amended Note, or 2013 Note.

Given Miroyan's admitted intention not to sell or auction Parcel 53 in contravention of the HR LLC Chapter 11 Plan, and subsequent fraudulent transfer of Parcel 53 from HR LLC to himself for no consideration followed by this Chapter 13 bankruptcy, it is clear that without *in rem* relief under Code § 362(d)(4), Miroyan will continue his pattern of misusing the bankruptcy courts to prevent the Kai Trust from foreclosing on the Property.

**VII.    Request for Relief**

Kai Trust therefore prays this Court for:

1.    An order granting this Motion and providing full and complete relief from the stay under Code §362(d)(1) to proceed under applicable non-bankruptcy law to enforce all rights and remedies to foreclose upon and obtain possession of Parcel 53, including but not limited to amending the complaint in the Civil Action to  include Miroyan as an additional defendant, and prosecution of

---

[3] The Civil Action was filed on or about May 14, 2015. [Kai Decl., ¶15]

Case 18-52004   Doc# 251-2   Filed 12/06/22   Entered 12/06/22 09:48:18   Page 85
of 136

the Civil Action to final judgment.

2. An order granting this Motion and providing full and complete relief from the stay under Code §362(d)(4), and that such order be effective *in rem* to be binding and effective in any bankruptcy case commenced by or against any bankruptcy debtor who claims any interest in Parcel 53 for a period of 180 days from the date of the hearing on this Motion, without further notice, or upon recording of a copy of this Court's order or giving appropriate notice of its entry in compliance with applicable non-bankruptcy law.

3. The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

4. Such other and further relief as the Court finds fair and equitable.

Dated: December 28, 2018

*/s/ Wayne A. Silver*
Wayne A. Silver, attorney for *KENNETH Y. KAI and TAE K. KAI, Trustees of the Kai Family 1998 Trust*

# EXHIBIT A

[Warranty Deed Transferring Parcel 53 to Miroyan]

STATE OF HAWAII
BUREAU OF CONVEYANCES
RECORDED

**August 09, 2018 3:29 PM**

**Doc No(s) A-67950847**

/s/ LESLIE T. KOBATA
REGISTRAR

Conveyance Tax: $0.00

1    2/3    CGG
B-33205881

LAND COURT

**AFTER RECORDDATION, RETURN BY:**    MAIL (   )          PICKUP (   )

Michael Miroyan
P.O. Box 3181
Saratoga California 95070

---

S:\CLERICAL\LJN\PW\DSA FORMS MASTERS\Warranty deed (rev 6-11) .wpd

TMK No. **(3) 6-8-002-053**                    Total No. of Pages: ___
Subdivision File No.

### WARRANTY DEED

KNOW ALL MEN BY THESE PRESENTS:

This Deed, made on **August 08, 2018**, by **Hawaiian Riverbend, LLC, a Hawaii limited liability company,** whose address is **P.O. Box 3181 Saratoga California 95070**, with full power to sell, convey, transfer, mortgage, lease, or otherwise deal with real property, hereinafter called the "Grantor", and **Michael Miroyan, a single man**, whose address is **P.O. Box 3181 Saratoga California 95070** hereinafter called the "Grantee".

### W I T N E S S E T H :

For TEN DOLLARS ($10.00) and other good and valuable consideration paid to the Grantor by the Grantee, the receipt of which is herby acknowledged, the Grantor does hereby grant, bargain, sell and convey unto the Grantee, in fee simple, forever, the property more particularly described in **EXHIBIT "A"**, which is attached to and expressly made a part hereof.

And the revisions, remainders, rents, issues and profits thereof and all of the estate, right, title and interest of the Grantor, both at law and in equity, therein and thereto;

TO HAVE AND TO HOLD the same, together with all buildings, improvements, tenements, rights, easements, hereditaments, privileges and appurtenances thereto belonging or appertaining, or held and enjoyed in connection therewith unto the Grantee according to the tenancy hereinabove set forth, absolutely and in fee simple, forever.

AND the Grantor herby covenants with the Grantee that the Grantor is lawfully seized in fee simple of the described real and personal property and that the Grantor has good right to convey the same as aforesaid; that the property in free and clear of all encumbrances, except as

may be described in **EXHIBIT "A"**; and the Grantor will WARRANT AND DEFEND the same unto Grantee, forever, against the lawful claims and demands of all persons.

It is understood and agreed that the term "property" shall be deemed to mean and include the property specifically described in **EXHIBIT "A"**, all buildings and improvements thereon (including any personal property described in **EXHIBIT "A"** ) and all rights, easements, privileges and appurtenances in connection therewith, that the terms "Grantor" and "Grantee", as and when used herein, or any pronouns used in place thereof, shall mean and include the masculine and/or feminine, the singular or plural number, individuals, firms or corporations, that the rights and obligations of the Grantor and Grantee shall be binding upon ant inure to the benefit of their respective estates, heirs, personal representatives, successors in trust and assigns and that where there is more than one Grantor or Grantee, any covenants of the respective party shall be and for all purposes deemed to be joint and several.

**IN WITNESS WHEREOF**, the undersigned executed these presents and of the day and year first above written.

_____

**Michael Miroyan, Sole Member of
Hawaiian Riverbend, LLC.**

"Grantor"

_____

**Michael Miroyan**

"Grantee"

STATE OF HAWAII        )
                               ) SS.
CITY AND COUNTY OF HONOLULU   )

On this _8th_ day of _August_, 2018, before me personally appeared ___Michael Kirogan___, to me personally known, who, being by me duly sworn or affirmed, did say that such person executed the foregoing instrument as the free act and deed of such person, and if applicable in the capacity shown, having been duly authorized to execute such instrument in such capacity.

Signature: _____
Name: ___Sharon Julian___
Notary Public, State of Hawaii

My commission expires: ___02/05/2020___

[*Official Seal/Stamp*]

---

**NOTARY CERTIFICATION**

Document Description: ___Warranty Deed___

☑ Doc. Date: __08/08/2018__   or ☐ Undated
No. of Pages: __7__

_____   __08/09/2018__
Signature of Notary Public   Date of Notarization

__Sharon Julian__
Printed Name of Notary Public   [*official Seal/Stamp*]

# EXHIBT "A"

## Legal Description

**On Feb 13 2013 the HI county Council approved the this Lot into 3 newly created parcels: TMK # (3)-6-8-002-021 was reduced to 5.95 acres; TMK # (3)-6-8-002-052 created 10.75 acres; TMK # (3)-6-8-002-053 created 14.622 acres.**

  All of that certain parcel of land situate at Waikoloa, District of South Kohala, Island and  County of Hawaii, State of Hawaii, being LOT 9 of the "WAIKOLOA DEVELOPMENT", as shown on File Plan Number 1172, filed in the Bureau of Conveyances of the State of Hawaii, and containing an area of 14.622 acres, more or less.

BEING THE PREMISES ACQUIRED BY DEED WITH COVENANTS AND RESERVATION OF EASEMENTS AND OTHER RIGHTS

GRANTOR: **Waikoloa Mauka, LLC, a Delaware limited liability company**
GRANTEE : **Hawaiian Riverbend, a Hawaii limited liability company**
DATED : **November 12, 2009**

RECORDED : November 23, 2009 as Document No. 2009-179060
1.  Real Property Taxes, if any, that may be due and owing.
  Tax Key: (3) 6-8-002-053   Area Assessed: 14.622 acres
  Tax Classification: AGRICULTURAL

2.  Any and all matters not shown in the Indices described in Schedule A.

3.  Mineral and water rights of any nature.

4.  DESIGNATION OF EASEMENT "E-W-1" (50 feet wide)
  PURPOSE : electrical, telephone and water line
  SHOWN  :  on File Plan No. 1172

5.  GRANT to WAIKOLOA WATER CO., INC., dated December 20, 1978, recorded in Liber 13374 at Page 441, as amended by instrument dated February 4, 1981, recorded in Liber 15498 at Page 103; granting an easement over said Easement "E-W-1".

6.  DESIGNATION OF EASEMENT "E-4" (75 feet wide)
  PURPOSE : electrical and telephone
  SHOWN  : on File Plan No. 1172

7.  GRANT TO  : HAWAII ELECTRIC LIGHT COMPANY, INC.
  DATED  : April 27, 1976
  RECORDED : Liber 11411 Page 135
  GRANTING : an easement for utility purposes over Easement "6" described theren

8.     GRANT TO     :     WAIKOLOA WATER CO., INC. doing business as
WEST HAWAII WATER COMPANY and WAIKOLOA RESORT
UTILITIES, INC. doing business as WEST HAWAII UTILITY COMPANY
DATED     :     February 19, 1998
RECORDED  :     Document No. 98-028921
GRANTING  :     an easement for utility purposes over Easement "W-2"
described therein

9.     GRANT TO     :     WAIKOLOA RESORT UTILITIES, INC. doing
business as WEST HAWAII UTILITY COMPANY
DATED     :     February 19, 1998
RECORDED  :     Document No. 98-028918
GRANTING  :     an easement over only that portion of said Easement "E-
W-1" affecting Lot 9 of File Plan No. 1172

10.     GRANT TO     :     VERIZON HAWAII INC. now known as
HAWAIIAN TELCOM, INC.
DATED     :     ----- (acknowledged April 22, 2003 and May 23, 2003)
RECORDED  :     Document No. 2003-139270
GRANTING  :     an easement for utility purposes over Easement "1"
described therein

11.     No vehicular access and planting screen, as shown on Subdivision map 11-
001060, approved November 29, 2012.

12.     DESIGNATION OF EASEMENT "AE-1"
PURPOSE  :     access
SHOWN     :     on Subdivision map 11-001060, approved November 29,
2012

13.     The terms and provisions contained in the following:
(A)     DEED WITH COVENANTS AND RESERVATION OF
EASEMENTS AND OTHER RIGHTS
DATED     :     September 20, 2005
RECORDED  :     Document No. 2005-188909
Certain water rights reserved in said Deed have been assigned pursuant to
that certain WATER RIGHTS QUITCLAIM dated September 20, 2005,
recorded as Document No. 2005-188913, by and between WAIKOLOA
LAND & CATTLE CO., "Grantor", and WAIKOLOA WATER CO., INC.,
and WAIKOLOA RESORT UTILITIES, INC., "Grantee".

(B)     GRANT OF RIGHT TO DESIGNATE AND GRANT EASEMENTS
DATED     :     September 20, 2005
RECORDED  :     Document No. 2005-188911
PARTIES  :     WAIKOLOA MAUKA, LLC, "Owner", and
WAIKOLOA LAND & CATTLE CO., "WDC"
Said Grant was amended by instrument dated November 29, 2006, recorded
as Document No. 2006-220312.

14.     The terms and provisions contained in the following:
INSTRUMENT :   DECLARATION OF RESTRICTIVE COVENANTS

DATED    :    December 29, 2008
RECORDED  :    Document No. <u>2008-193975</u>

15. The terms and provisions contained in the following:
INSTRUMENT : DISCLOSURE AGREEMENT
DATED    :    December 29, 2008
RECORDED  :    Document No. <u>2008-193976</u>

PARTIES  :    WAIKOLOA MAUKA, LLC, a Delaware limited liability company, "WML", WQJ2008 INVESTMENT, LLC, a Washington limited liability company, "WQJ2008", UKUMEHAME QUARRY COMPANY LIMITED PARTNERSHIP, a Hawaii limited partnership, "Ukumehame", and collectively with WQJ2008, "Buyer"

16. Historic ceremonial and burial sites and similar matters which an archaeological study and archaeological inspection of the land would disclose.

17. REAL PROPERTY MORTGAGE
MORTGAGOR :    HAWAIIAN RIVERBEND, LLC, a Hawaii limited liability company
MORTGAGEE :    KENNETH Y. KAI and TAE K. KAI, Trustees, of the Kai Family 1998 Trust dated October 5, 1998
DATED    :    April 28, 2010
RECORDED  :    Document No. <u>2010-062606</u>
AMOUNT   :    $540,000.00-covers the land herein besides other lands
ABOVE MORTGAGE AMENDED BY INSTRUMENT
DATED    :    August 8, 2013
RECORDED  :    Document No. A-<u>50700518</u>
RE    :    to increase Loan Amount to $809,504.00

18. The terms and provisions contained in the following:
INSTRUMENT : JOINT VENTURE AGREEMENT
DATED    :    April 29, 2010
RECORDED  :    Document No. <u>2010-062607</u>
PARTIES  :    WAIKALOA MAUKA, LC, a Delaware limited liability company ("WM") and HAWAIIAN RIVERBEND, LLC, a Hawaii limited liability company, ("HR")

19. GRANT TO  :    WAIKOLOA VILLAGE ASSOCIATION, a Hawaii nonprofit corporation
DATED    :    August 5, 2013
RECORDED  :    Document No. A-<u>50090859</u>
GRANTING  :    a nonexclusive right and easement over, under and across the Easement Area being 60 feet wide for utility purposes

20.    REAL PROPERTY MORTGAGE
       MORTGAGOR  :   HAWAIIAN RIVERBEND, LLC, a Hawaii limited
                      liability company
       MORTGAGEE  :   KENNETH Y. KAI and TAE K. KAI, Trustees of the
                      Kai Family 1998 Trust dated October 5, 1998
       DATED      :   August 7, 2013
       RECORDED   :   Document No. A-50700519
       AMOUNT     :   $300,000.00

21.  NOTICE OF PENDENCY OF ACTION
       PLAINTIFF  :   KENNETH Y. KAI and TAE K. KAI, Trustees of the
                      Kai Family 1998 Trust
       DEFENDANT  :   HAWAIIAN RIVERBEND, LLC; et al.
       DATED      :   June 3, 2015
       FILED      :   Circuit Court of the Third Circuit, State of Hawaii, Case
                      No. 15-1-0164K, on June 3, 2015
       RECORDED   :   Document No. A-56341008 on June 5, 2015
       RE         :   foreclosure of Mortgage

22.    Any unrecorded leases and matters arising from or affecting the same. 0

23.    Discrepancies, conflicts in boundary lines, shortage in area, encroachments or
       any other matters which a correct survey or archaeological study would
       disclose.

24.    Hawaiian Riverbend, LLC has not yet submitted proper information to the
       Department of Commerce and Consumer Affairs of the State of Hawaii
       (Business Registration) for Good Standing status.

EXHIBIT FOUR

**LAW OFFICE OF WAYNE A. SILVER**
Wayne A. Silver (108135)
643 Bair Island Road,
Suite 403
Redwood City, CA 94063
Phone: (650) 282-5970
Fax:    (650) 282-5980
Email: ws@waynesilverlaw.com

*Attorney for KENNETH Y. KAI and*
*TAE K. KAI, Trustees of the Kai Family 1998 Trust*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>MICHAEL HAROUTUN MIROYAN,<br><br>     Debtor. | Case No.: 18-52601-MEH<br>Chapter 13<br><br>RS No. WS110<br><br> Date:  March 1, 2019<br>Time:  9:30 a.m.<br>Court:  3020, Hon. M. Elaine Hammond |

## SUPPLEMENTAL BRIEF OF THE KAI FAMILY TRUST IN SUPPORT OF MOTION FOR RELIEF FROM STAY

Pursuant to the Court's request after the hearing on January 31, 2019, the Kai Family 1998 Trust Dated October 5, 1998 ("Kai Trust"), submits this Supplemental Brief in support of their motion for full and complete relief from the automatic stay under 11 U.S.C. §362(d)(1),[1] together with an *in rem* order under Code §362(d)(4) ("Motion").

The Motion seeks relief to continue the judicial foreclosure of an undeveloped lot located in Hawaii identified in bankruptcy debtor Michael Haroutun Miroyan's ("Miroyan") bankruptcy schedule[2] A/B, Item 1.4 as: "Empty Land in HI, Lot: 3-6-8-002-053," referred to herein as "Parcel

---

[1] Further references to Title 11 of the U.S. Code are abbreviated as the "Code."

[2] Kai Trust requests the Court take judicial notice of the Miroyan's bankruptcy schedules and Plan in the above captioned Chapter 13 case under Rules 201(b) and 201(d) of the Federal Rules of Evidence, which are made applicable to this proceeding by Rule 9017 of Federal Rules of Bankruptcy Procedure.

Supplemental Brief of the Kai Family Trust In Support of Motion for Relief from Stay

1
2
3
4
5

53." Parcel 53 was previously owned by Hawaiian Riverbend, LLC ("HR LLC"), Miroyan's single member LLC and former Chapter 11 debtor, until Miroyan caused HR LLC to fraudulently transfer Parcel 53 to himself for no consideration on or about August 9, 2018 (See Exhibit "A" to Motion"). HR LLC (not Miroyan) is the obligor on long overdue notes secured by Parcel 53 in favor of the Kai Trust, all of which are in default.

The Motion requested the following relief:[3]

    1.    Full and complete relief from the stay under Code §362(d)(1) to proceed under applicable non-bankruptcy law to enforce all rights and remedies to foreclose upon and obtain possession of Parcel 53, including but not limited to amending the complaint in the Civil Action[4] to include Miroyan as an additional defendant, and prosecution of the Civil Action to final judgment.

    2.    An order granting this Motion and providing full and complete relief from the stay under Code §362(d)(4), and that such order be effective *in rem* to be binding and effective in any bankruptcy case commenced by or against any bankruptcy debtor who claims any interest in Parcel 53 for a period of 180 days from the date of the hearing on this Motion, without further notice, or upon recording of a copy of this Court's order or giving appropriate notice of its entry in compliance with applicable non-bankruptcy law.

    3.    Waiver of the 14-day stay prescribed by FRBP 4001(a)(3).

    4.    Such other and further relief as the Court found fair and equitable.

Although the Motion requested relief to continue prosecution of the Civil Action to final judgment, the Court questioned the status of the foreclosure in the Civil Action given the transfer of Parcel 53 prior to the November 26, 2018 auction, which occurred a few hours after this Chapter 13 bankruptcy case was filed.[5]

---

[3] See Motion for Relief from Stay filed on December 29, 2019, Docket No. 24, pp. 6:23 – 7:9.

[4] Civil Action No. 15-1-0164K against HR LLC pending in the Circuit Court of the Third Circuit State of Hawaii seeking to foreclose on Parcel 53, filed on or about May 1, 2015 ("Civil Action").

[5] Miroyan's bankruptcy filing did not stay the Civil Action against HR LLC, because Miroyan wasn't a party to the Civil Action. See, *In In re McCormick*, 381 B.R. 594 (Bankr. S.D.N.Y. 2008); *In re Sun-Ming Sheu*, 2009 Bankr. LEXIS 1703 (Bankr. E.D.N.Y. 2009); *In re Penn*, 2010 Bankr. LEXIS 1546, at *4-5 (Bankr. N.D. Ga. 2010) ("Unless extended by the court in an "unusual situation," the protections afforded by section 362(a)(1) are '"only available to the debtor, not third party defendants or co-defendants."' *Kreisler v. Goldberg*, 478 F.3d 209, 213 (4th Cir. 2007) (quoting *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.1986)). A separate legal entity

Supplemental Brief of the Kai Family Trust In Support of Motion for Relief from Stay

**I.  Hawaii Mortgage Law Is Based On the Lien Theory of Mortgages, Therefore HR LLC Retained Legal and Equitable Title to Parcel 53 Notwithstanding the Interlocutory Decree of Foreclosure and Appointment of the Commissioner In the Civil Action**

Hawaii mortgage law is based on the lien theory of mortgages. See *FHLMC v. Transamerica Ins. Co.*, 89 Hawaiʻi 157, 164, 969 P.2d 1275, 1282 (Haw. 1998); see also *Adair v. Kona Corp.*, 51 Haw. 104, 110, 452 P.2d 449, 453 (Haw. 1969). Under the lien theory of mortgages, "the mortgagee is regarded as owning a security interest only and both legal and equitable title remain in the mortgagor until foreclosure." Restatement (Third) of Property § 4.1(a) at 278 (1999). *Hawaiʻi Natʻl Bank v. Cook*, 99 Hawaiʻi 334, 342-43, 55 P.3d 827, 835-36 (Haw. App. 2000), revʻd on other grounds, 100 Hawaiʻi 2, 58 P.3d 60 (Haw. 2002).

On default, the mortgagee has only a possessory interest, and ownership of the property remains subject to the mortgagor's equity of redemption.  In order to terminate the mortgagor's equity of redemption, the mortgagee must bring an action to foreclose the mortgage, obtain a writ of execution for sale of the mortgaged property, and sell the property through foreclosure. *Fed. Home Loan Mortg. Corp. v. Transamerica Ins. Co.*, 89 Hawaiʻi 157, 164, 969 P.2d 1275, 1282 (Haw.1998)

Under Hawaii law, it therefore appears HR LLC retained legal and equitable title to Parcel 53, despite the entry of the interlocutory decree of foreclosure and appointment of the Commissioner on March 21, 2018 in the Civil Action. (See Declaration of Kenneth Y. Kai filed concurrently herewith (the "Kai Decl."), Exhibit 9). The effect of this appointment did no more than grant the Commissioner a possessory interest in Parcel 53, because "the commissioner takes possession of the mortgaged property and preserves the property for the benefit of the person or entity subsequently entitled to it." *Hawaiʻi Natʻl Bank v. Cook*, Id., at 347. The legal and equitable title remained with HR LLC until final resolution of the Civil Action, which means the transfer of Parcel 53 from HR LLC to Miroyan, despite the fact is was fraudulent, rendered the November 26, 2018 auction a nullity.

**II.  The Warranty Deed from HR LLC to Miroyan Was a Fraudulent Transfer**

---

that is established to hold property is considered a separate legal entity for that purpose and, should that legal entity desire bankruptcy protection, it must file its own petition."

Supplemental Brief of the Kai Family Trust In Support of Motion for Relief from Stay

Although HR LLC retained legal and equitable title to Parcel 53, the Warranty Deed conveyed by HR LLC to Miroyan is void as to the Kai Trust, because it was a fraudulent conveyance intended to defraud HR LLC's creditors by hindering or delaying the foreclosure proceedings in the Civil Action.  As explained by the Hawaii Supreme Court in *Kanamu v. Parke*,

> A fraudulent conveyance is no conveyance as against the interest intended to be defrauded. It is impossible that these deeds can be permitted to stand as a security, if they are to be adjudged bad ab initio.

> . . . [A] deed by which the parties convey with the intention to defraud is void as against creditors. . . . The terms "void" and "voidable" are often used without precision. If a deed is absolutely void, it cannot be the source of a title: if voidable only, as between the parties, it may be. The deed . . . if fraudulent, was void between the parties, **but voidable only**, as to subsequent purchasers, or creditors, dependent upon the proof of fraud. 6 Haw. 91, 92-94 (Haw. 1872) (citation omitted) (emphasis added).

Hawaii's Uniform Fraudulent Transfer Act, HRS § 651C-4(a)(1), provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud any creditor of the debtor.

To challenge the validity of the transfer of Parcel 53, which is a question of fact, the Kai Trust will have to join Miroyan as an indispensable party to the Civil Action:

> "[W]here a creditor alleges a fraudulent transfer of property from a judgment debtor to a transferee who retains title to the subject property or who claims an interest in the property or its proceeds, the transferee is a necessary party to any action seeking to set aside the transfer. Such an action for relief against a transfer alleged to be fraudulent should be brought pursuant to Hawaii Revised Statutes (HRS) ch. 651C (1985), see supra n.2, and should expressly name the alleged fraudulent transferees as defendants. Our holding is consistent with established Hawaii law regarding the naming of parties in property disputes. Cf. *Rossiter v. Rossiter*, 4 Haw. App. 333, 337, 666 P.2d 617, 620 (1983) (record owner of property was necessary and indispensable party to action affecting her interest in property, and family court had no jurisdiction to adjudicate questions affecting title to property where record owner not named as party). Fundamental principles of due process require that transferees who claim an interest in real property or its proceeds have a full and fair opportunity to contest claims of

Supplemental Brief of the Kai Family Trust In Support of Motion for Relief from Stay

fraudulent transfer." *Tanaka v. Nagata*, 76 Hawai'i 32, 36-37, 868 P.2d 450, 454-55 (Haw. 1994).

Under Hawaii law, the transfer of Parcel 53 from HR LLC to Miroyan is void as to the Kai Trust, but merely voidable as to other creditors. In order to deliver clear and insurable title through foreclosure, the Kai Trust has therefore determined Miroyan must be named as a party to the Civil Action, and the auction conducted again. The Kai Trust has not determined whether or not the fraudulent transfer of Parcel 53 also needs to be avoided, however requests that relief should it become necessary.

**III.    The *Curtis Factors* Weigh Heavily In Favor of Granting the Motion and Allowing the Civil Action to Proceed to Final Judgment against Both HR LLC and Miroyan**

Courts have identified various factors relevant to determining whether the stay should be lifted to allow a creditor to continue pending litigation in a non-bankruptcy forum. The now familiar "twelve factor test" originated in *In re Curtis*, 40 B.R. 795, 799–800 (Bankr.D.Utah 1984)("*Curtis Factors*") has been adopted by most courts in the Ninth Circuit. (See, *Newberry v. City of San Bernardino* (*In re City of San Bernardino*), 558 B.R. 321, 332 (C.D. Cal. 2016); *In re Plumberex Specialty Products, Inc*., 311 B.R. 551, 559 (Bankr. C.D. Cal. 2004)).

The Second Circuit first applied the *Curtis Factors* in *In re Sonnax Indus*., 907 F.2d 1280, 1285 (2d Cir.1990), which has become a leading case at the circuit level. As noted in *Sonnax*, not all of the twelve *Curtis Factors* are relevant in every case. *Id*. at 1286; see *Mazzeo*, 167 F.3d at 143. Nor is a court required to give each of the *Curtis Factors* equal weight in making its determination. *Burger Boys, Inc. v. S. St. Seaport Ltd. Pa. (In re Burger Boys, Inc.)*, 183 B.R. 682, 688 (S.D.N.Y. 1994); *In re N.Y. Med. Group, P.C.*, 265 B.R. 408, 413 (Bankr.S.D.N.Y. 2001).

As discussed below, the *Curtis Factors* as applied to this Motion strongly favor granting the Kai Trust complete relief from stay to add Miroyan as a defendant in the Civil Action, seek avoidance of the fraudulent transfer, and pursue the Civil Action to final judgment.

**1.    Whether the relief will result in a partial or complete resolution of the issues.**

Relief from stay will result in a complete resolution of the Kai Trust's rights to foreclose on Parcel 53. It will permit the Kai Trust to add Miroyan as a defendant in the Civil Action, and, if necessary, seek avoidance of the fraudulent transfer of Parcel 53 from HR LLC to

Page - 5

Miroyan, thereby consolidating all of the necessary parties and claims in the Civil Action. And to the extent HR LLC has alleged claims against the Kai Trust regarding the execution of the secured promissory notes and mortgages,[6] those claims can and should be addressed in the Civil Action, because HR LLC is not a party in this Bankruptcy Case. Relief from stay will allow a complete resolution of the Kai Trust's claim against Parcel 53 in the Civil Action.

>    **2.    The lack of any connection with or interference with the bankruptcy case.**

A bankruptcy court must be cognizant of the entire bankruptcy case and its progress, and adjudicate stay relief issues from this perspective. *Santa Clara Cnty. Fair Ass'n v. Sanders (In re Santa Clara Cnty. Fair Ass'n)*, 180 B.R. 564, 567 (9th Cir. BAP 1995). In that context, Miroyan admitted in open Court[7] he engineered and participated in the fraudulent transfer of Parcel 53 from HR LLC to himself. Miroyan's Chapter 13 bankruptcy case was filed in bad faith, and is eventually going to be dismissed or converted. (See for example, First Amended Trustee's Objection to Confirmation filed on 2/5/2019, Docket No. 54, and the Kai Trust's Objection to Plan filed on 12/21/2018, Docket No. 28). And since the Action by Written Consent states Miroyan "assumed all of the obligations of the Company [HR LLC]," there is no question he is not eligible to be a debtor under Chapter 13, because his debts far exceed the allowed limits of Code §109(e).[8] The Court will also note Miroyan failed to disclose his assumed obligations in either his Chapter 13 Plan (dated 12/6/18), or Bankruptcy Schedules (filed 12/10/18, Docket No. 13, pp.15 – 19), both listing only $1,444.00 in unsecured claims.

The Kai Trust does not believe the requested relief has or will have any connection or interference with Miroyan's bankruptcy case, because Miroyan's bankruptcy case was filed in bad faith and is going to be dismissed or converted. Moreover, it will ultimately be determined Parcel 53

---

[6] The Kai Trust contends any such alleged claims "Counterclaims" have either been adjudicated in the Civil Action, or waived and extinguished in the HR LLC Chapter 11 bankruptcy case. (See Kai Trust's Motion in Limine and Supplemental Request for Judicial Notice, filed on 1/29/2019, Docket Nos. 47 and 48, respectively.)

[7] Miroyan admitted he transferred Parcel 53 from HR LLC to himself. (See, Action by Written Consent filed on 1/31/2019, Docket No. 51, and Exhibit "A" to the Motion)

[8] See Kai Decl., Exhibit 7, Order Confirming Second Amended Plan of Reorganization dated October 6, 2016 and attached Plan, Kai Decl. Exhibit P. 119 ($359,000 in Unsecured Claims). And the Kai Trust filed a secured Proof of Claim on 2/4/19 (Claim No. 10) in the amount of $1,439,688.

Page - 6

was fraudulently transferred to Miroyan, and therefore will no longer be property of the bankruptcy estate.

**3. Whether the foreign proceeding involves the debtor as a fiduciary.**

The Civil Action does not involve Miroyan as a fiduciary.

**4. Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases.**

The claims in the Civil Action are strictly a matter of Hawaiian law. The causes of action do not involve unsettled issues, nor do they require a specialized tribunal. The Hawaii court has general jurisdiction to decide all of the state law causes of action in the Civil Action. The Hawaii court has the expertise to hear and decide issues arising under Hawaiian law. The optimal court to decide these state law issues is the Hawaii court, which has dealt with the Civil Action for over 4 – 1/2 years.[9]

**5. Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation.**

The Kai Trust is not aware of insurance coverage for any of its claims in the Civil Action.

**6. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question.**

The Civil Action is currently against HR LLC, the obligor on all of the Secured Promissory Notes and Mortgages on Parcel 53 (See Kai Decl., Exhibits 1, 2, 4, 5 and 6). To the extent HR LLC is a necessary party, this Court cannot resolve these issues unless HR LLC is somehow joined.

**7. Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties.**

The Kai Trust does not believe resolving these matters in the Civil Action would prejudice other creditors or interested parties.

**8. Whether the judgment claim arising from the foreign action is subject to**

---

[9] The Civil Action was filed on or about May, 1, 2015 (Kai Decl., ¶15).

Supplemental Brief of the Kai Family Trust In Support of Motion for Relief from Stay

equitable subordination under Section 510(c).

The Kai Trust does not believe a judgment in the Civil Action is subject to equitable subordination under §510(c).

**9.** **Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f).**

A judgment in the Civil Action would not result in an avoidable judicial lien.

**10.** **The interests of judicial economy and the expeditious and economical determination of litigation for the parties.**

This factor sharply favors granting The Kai Trust's Motion. The Civil Action progressed to the point of appointment of a Commissioner to conduct the auction of Parcel 53 in Hawaii, where Parcel 53 is located. HR LLC is not a party to this action, but ostensibly owns all of the alleged Counterclaims Miroyan now seeks to assert against the Kai Trust. Deciding these issues in this Court could lead to inconsistent results and multiple appeals. The Motion should be granted to continue the Civil Action.

**11.** **Whether the foreign proceedings have progressed to the point where the parties are prepared for trial.**

This factor also sharply favors granting the Kai Trust's motion. The Hawaii court has already heard and determined the Kai Trust's Renewed Motion for Summary Judgment and for Interlocutory Decree of Foreclosure in the Civil Action (Kai Decl., Exhibit 9). A Commissioner has been appointed in the Civil Action, acting as a neutral party and an arm of the court. *Hoge v. Kane II*, 4 Haw. App. 533, 539, 670 P.2d 36, 40 (1983). The Commissioner has already gone to great lengths to market Parcel 53. (See Declaration of Andrew M. Kennedy filed on 1/26/19, Docket No. 40, and supplemental Errata Sheet filed on 1/17/19, Docket No. 44).

**12.** **The impact of the stay on the parties and the "balance of hurt."**

Miroyan claims he was forced to transfer Parcel 53 from HR LLC to himself because HR LLC was prevented from appearing without an attorney in the Civil Action. (See Action by Consent, filed on 1/31/2019, Docket No. 51) By granting the Motion and allowing the Kai Trust to join Miroyan as a defendant in the Civil Action, Miroyan will now be permitted to

Supplemental Brief of the Kai Family Trust In Support of Motion for Relief from Stay

1  appear and defend himself in the Civil Action without the need to retain counsel.

2       The stay is prejudicial to the Kai Trust, and continues Miroyan's free ride. No payments were

3  ever made by HR LLC under the Note, Amended Note or 2013 Note, and Miroyan never offered to

4  make adequate protection payments either in the HR LLC Bankruptcy Case[10] or this Chapter 13 case.

5  Specifically, HR LLC did not make the balloon payment that was due on December 1, 2013 under

6  the Amended Note.  Nor did HR LLC ever cure the default after due notice was made by the Kai

7  Trust, through counsel. [Kai Decl., ¶¶11 – 12]

8       Instead, HR LLC (through Miroyan), filed the HR LLC Bankruptcy that stayed the Civil

9  Action. HR LLC was then able to buy more time with the empty promise Parcel 53 would be sold on

10  or before February 28, 2018 through the confirmed Second Amended Plan of Reorganization dated

11  October 6, 2016 ("Plan"). [Kai Decl., ¶¶16 – 17, Exhibit 7] But as the Bankruptcy Court found in the

12  Order dismissing the HR LLC Bankruptcy, HR LLC (and Miroyan) not only failed to comply with

13  the Plan, there was no intention to sell Parcel 53.  [Kai Decl., ¶¶18 – 19, Exhibit 8, p. 4] Miroyan

14  should not be rewarded with the protection of the automatic stay in this bad faith Chapter 13 case

15  under these circumstances, and the Court should grant the Motion.

16       Dated: February 7, 2019

17                    */s/ Wayne A. Silver*

18                    Wayne A. Silver, attorney for *KENNETH Y. KAI and TAE K. KAI, Trustees of the Kai Family 1998 Trust*

---

27  [10] HR LLC (through Miroyan) filed for Chapter 11 bankruptcy on or about April 4, 2016 in the U.S.
28  Bankruptcy Court for the District of Hawaii, Case No. 16-00348 (the "HR LLC Bankruptcy"). [Kai Decl., ¶¶15 – 16]

Page - 9

Supplemental Brief of the Kai Family Trust In Support of Motion for Relief from Stay

## CERTIFICATE OF SERVICE BY CM/ECF AND REGULAR MAIL

I, Wayne A. Silver, the undersigned, hereby declare:

I am the attorney for KENNETH Y. KAI and TAE K. KAI, Trustees of the Kai Family 1998 Trust, with offices at 643 Bair Island Road, Suite 403, Redwood City, CA 94063. On February 8, 2019, I caused to be served true and correct copies of the SUPPLEMENTAL BRIEF OF THE KAI FAMILY TRUST IN SUPPORT OF MOTION FOR RELIEF FROM STAY, by means of this Court's electronic transmission to the Notice of Electronic Filing through the Court's transmission facilities, to the parties and/or counsel who are registered CM/ECF users set forth on the ECF/CMS Mailing List obtained from this Court on this date, as follows:

| Name | Email Address |
|------|---------------|
| Devin Derham-Burk | ctdocs@ch13sj.com |
| Sean Ferry | bkyecf@rasflaw.com, sferry@ecf.courtdrive.com |
| Office of the U.S. Trustee / SJ | USTPRegion17.SJ.ECF@usdoj.gov |
| Wayne A. Silver | w_silver@sbcglobal.net, ws@waynesilverlaw.com |

In addition on this date, I served a true and correct copy of the foregoing document on Debtor MICHAEL HAROUTUN MIROYAN, and all creditors requesting notice by mail, by placing true and correct copies thereof enclosed in sealed envelopes, with first-class postage thereon fully prepaid, addressed to:

Michael Haroutun Miroyan
PO Box 3181
Saratoga, CA 95070-1181

Synchrony Bank
c/o PRA Receivables Management, LLC
P.O. Box 41021
Norfolk, VA 23541

and depositing said envelopes for mailing with the U.S. Postal Service at Redwood City, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 8, 2019 at Redwood City, California.

/s/ *Wayne A. Silver*
Wayne A. Silver

Supplemental Brief of the Kai Family Trust In Support of Motion for Relief from Stay

EXHIBIT FIVE



1 | LAW OFFICE OF WAYNE A. SILVE[R] **CHANGES MADE BY COURT**

2 | Wayne A. Silver (108135)
643 Bair Island Road,

The following constitutes the order of the Court.
Signed: March 15, 2019

3 | Suite 403
Redwood City, CA 94063

4 | Phone: (650) 282-5970

_M. Elaine Hammond_

5 | Fax:   (650) 282-5980
Email: ws@waynesilverlaw.com

**M. Elaine Hammond**
**U.S. Bankruptcy Judge**

6 | *Attorney for KENNETH Y. KAI and*

Modifications by court. MEH

7 | *TAE K. KAI, Trustees of the Kai Family 1998 Trust*

8 | ### UNITED STATES BANKRUPTCY COURT

9 | ### NORTHERN DISTRICT OF CALIFORNIA

10 | ### SAN JOSE DIVISION

11 |

12 | In re: | Case No.: 18-52601-MEH

Chapter 13

13 | MICHAEL HAROUTUN MIROYAN, | RS No. WS110

14 |    Debtor. | Date: March 1, 2019

15 | Time: 10:00 a.m.
Court: 3020, Hon. M. Elaine Hammond

16 |

17 | ### ORDER GRANTING MOTION FOR RELIEF FROM STAY AND
### AWARDING IN REM RELIEF UNDER 11 U.S.C. §362(d)(4)

18 |    The motion of the Kai Family 1998 Trust Dated October 5, 1998 ("Kai Trust"), for full and

19 | complete relief from the bankruptcy automatic stay under 11 U.S.C. §362(d)(1), together with an *in*

20 | *rem* order under 11 U.S.C. §362(d)(4) ("Motion"), to continue the judicial foreclosure of an

21 | undeveloped lot located in Hawaii identified in bankruptcy debtor Michael Haroutun Miroyan's

22 | ("Michael Miroyan") bankruptcy schedule A/B, Item 1.4 as: "Empty Land in HI, Lot: 3-6-8-002-

23 | 053" and described in the Warranty Deed dated August 9, 2018 attached as Exhibit "A" to the

24 | Motion for Relief from Stay filed on December 29, 2018 (Docket No. 24) (referred to herein as

25 | "Parcel 53"), came on for continued hearing on March 1, 2019 before the Hon. M. Elaine Hammond,

26 | U.S. Bankruptcy Court Judge. Debtor Michael Miroyan appeared in *pro per*. Attorney Wayne A.

27 | Silver appeared on behalf of the Kai Trust.

28 |    The Court having read and reviewed the pleadings, declarations and requests for judicial

notice, having heard the arguments of those appearing, and having stated its findings and conclusions on the record under Federal Rule of Bankruptcy Procedure 7052, with good cause appearing, hereby ORDERS:

1.  The Kai Trust's Motion is GRANTED.

2.  The Court having analyzed the twelve factor test originated in *In re Curtis*, 40 B.R. 795, 799–800 (Bankr.D.Utah 1984), and having found those factors weigh heavily in favor of the Kai Trust, ~~and having found Debtor Michael Miroyan engaged in bad faith~~, grants the Kai Trust full and complete relief from the bankruptcy automatic stay for cause under 11 U.S.C. §362(d)(1) to pursue all rights and remedies to foreclose upon and if necessary obtain possession of Parcel 53, as follows:

    (a)  Continue the prosecution of Civil Action No. 15-1-0164K against Hawaiian Riverbend, LLC in the Circuit Court of the Third Circuit State of Hawaii ("Civil Action") to final judgment;

    (b)  Add debtor Michael Miroyan as a defendant in the Civil Action, amend the complaint in the Civil Action as necessary, and pursue the Civil Action against debtor Michael Miroyan to final judgment;

    (c)  Bring a claim against debtor Michael Miroyan in the Civil Action for avoidance and cancellation of the Warranty Deed dated August 9, 2018 attached as Exhibit "A" to the Motion for Relief from Stay filed on December 29, 2018 (Docket No. 24) that transferred Parcel 53 from Hawaiian Riverbend, LLC to himself; and,

    (d)  Execute on any judgment or interlocutory order in the Civil Action with respect to the foreclosure of Parcel 53 against Hawaiian Riverbend, LLC, debtor Michael Miroyan, and any subsequent transferee of Parcel 53, without further order of this Court.

3.  The Court having found Michael Miroyan <u>transferred</u> ~~engaged in bad faith by transferring~~ Parcel 53 from Hawaiian Riverbend, LLC to himself ~~for no consideration and then~~ <u>without consent of the secured creditor or court approval prior to</u> filing for Chapter 13 bankruptcy, and that such conduct was designed to hinder, delay and possibly defraud the Kai Trust, Kai Trust shall have *in rem* relief under 11 U.S.C. §362(d)(4) such that, if recorded in compliance with applicable State laws governing notices of interests or liens in real property, this Order shall be

binding in any other case under Title 11 purporting to affect Parcel 53 by any person or entity filed not later than 2 years after the date of the entry of this Order by this Court, except that a debtor in a subsequent case under Title 11 may move for relief from this Order based upon changed circumstances or for good cause shown, after notice and a hearing.

4. Michael Miroyan's Request for Judicial Notice filed on February 28, 2019 (Docket No. 62) is DENIED.

5. Michael Miroyan's motions filed on February 27, 2019 (Docket No. 61): (1) to continue the hearing on the Motion; (2) to prohibit a grant of stay relief ~~extend the bankruptcy automatic stay~~ for twelve (12) months; and (3) authorize Parcel 53 to be listed for sale with John Miller of Sotheby's Real Estate, are DENIED.

6. The Kai Trust's objections to the unsworn Declaration of Michael Miroyan and attachments thereto filed on February 22, 2019 (Docket No. 60) are SUSTAINED.

7. ~~The 14-day stay prescribed by FRBP 4001(a)(3) is waived.~~

***END OF ORDER***

1

## Court Service List

2

3 Michael Haroutun Miroyan
PO Box 3181
Saratoga, CA 95070-1181

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT SIX

1   DEVIN DERHAM-BURK #104353
    CHAPTER 13 STANDING TRUSTEE
2   P O Box 50013
    San Jose, CA 95150-0013
3
    Telephone: (408) 354-4413
4   Facsimile:  (408) 354-5513
5   Trustee for Debtor(s)

6

7

8                    UNITED STATES BANKRUPTCY COURT
                NORTHERN DISTRICT OF CALIFORNIA - DIVISION 5
9

10  In re:                              )
                                        )
11  Michael Haroutun Miroyan            )   Chapter 13
                                        )   Case No. 22-50339SLJ
12                                      )
                                        )
13                                      )   TRUSTEE'S OBJECTION TO
                                        )   CONFIRMATION WITH CERTIFICATE OF
                                        )   SERVICE
14                                      )
                                        )   341 Meeting Date: June 6, 2022 @ 10:30AM
15                                      )   Pre-Hearing Conference Date: June 23, 2022
                                        )   Pre-Hearing Conference Time: 9:55AM
16                                      )   Place: Telephonic or Video Only
                                        )   Judge:  Stephen L. Johnson
17                 Debtor(s)            )
    _____
18

19  Devin Derham-Burk, Trustee in the above matter, objects to the Confirmation of this Plan for the

20  following reasons:

21

22      1.  The Trustee questions whether the Chapter 13 plan was filed in good faith pursuant to 11

23          U.S.C. §1325 (a)(3).  The Debtor filed a Chapter 13 case (No. 18-52601MEH) on

24          November 26, 2018 which is still active.  The Trustee avers that property of the estate

25          cannot be subject to administration separately under two concurrent cases.  The Trustee

26          requests that the Debtor dismiss one of the Chapter 13 cases.  *NOTE:  The Court found*

27          *that the above referenced case was in violation of 11 U.S.C. §109(e) and required the*

28

Case: 22-50339   Doc# 23-2   Filed: 06/02/22   Entered: 06/02/22 16:40:18   Page 1 of 2
                                    of 136

*Debtor to convert the matter to a Chapter 11 or the case would be dismissed. The Trustee questions why the Debtor has filed another Chapter 13 with the same debts.*

2. The plan is in violation of 11 U.S.C. §1325(a)(6). The Debtor has failed to make his first plan payment. The Trustee is unable to recommend the case for confirmation until such time as the Debtor becomes current with his monthly plan payments.

3. The plan is in violation of 11 U.S.C. §1325(a)(5). The Debtor has listed creditor HSBC on Schedule D; however, said creditor has been omitted from the plan. The Trustee requests Debtor file an Amended Plan to provide for the secured claim of HSBC.

4. The Trustee is unable to determine whether the plan complies with 11 U.S.C. §109(e) or 11 U.S.C. §1325(a)(6). The Debtor has failed to provide a numeric dollar amount for the amount of the claims owed to secured creditor HSBC on Schedule D and Matthew C. Shannon, Esq. on Schedule E/F. Without knowing the amount of the claims, the Trustee cannot determine whether the Debtor is above or below the allowed secured and unsecured debt limits, nor can she accurately determine the term in order to verify that the plan is feasible.

5. The Trustee is unable to administer the plan. The Debtor failed to provide the monthly administrative expense under Section 3.06 of the plan.

6. Debtor's counsel has failed to check *any* box in Section 3.05 of the plan to indicate how he intends to seek approval of fees. The Trustee requests that the plan be amended to accurately show how debtor's counsel intends to seek attorney's fees so that plan feasibility pursuant to 11 U.S.C. § 1325 (a)(6) can be determined.

Case: 22-50339    Doc# 23-2 Filed: 06/20/22 Entered: 06/20/22 20:40:18 Page 2 of 16
of 136

7. The Trustee is unable to administer the plan. The Debtor has failed to provide the collateral descriptions, monthly contract installments and the person/people making the payments under Section 3.10 of the plan for the secured obligations owed to Gang Chen and Kai Family Trust.

8. The plan is in violation of 11 U.S.C. §1325(a)(6). The Debtor has failed to list the payments being made directly to secured creditors Gang Chen and Kai Family Trust on Schedule J.

9. The Trustee is unable to determine whether the plan meets the feasibility test in 11 U.S.C. §1325(a)(6) because the plan payments substantially increase during the pendency of the case. The Trustee requests that the debtor file a declaration, signed under penalty of perjury, which explains how the increased plan payments will be funded.

10. In order to assist the Trustee in determining whether the disposable income test in 11 U.S.C. §1325(b)(1)(B) and/or the feasibility test in 11 U.S.C. §1325(a)(6) is met, the Trustee requests that the Debtor provide her with a copy of each federal and state income tax return and W-2 form required under applicable law with respect to each tax year of the Debtor's ending while the case is pending confirmation. The tax return shall be provided to her at the same time it is filed with the taxing authority.

11. The Debtor failed to provide copies of income tax returns prior to the 11 U.S.C. §341 meeting of creditors. *See separate objection point.* So that the Trustee can verify that the copies that the Debtor will provide are true and correct copies of the returns that were provided to the taxing agencies, the Trustee requests that the returns provided to the Trustee be attached to a declaration signed by the Debtor stating under penalty of perjury

Case: 22-50339   Doc# 23-2 Filed: 06/06/2022 Entered: 06/06/2022 03:40:18 Page 114 of 136

that the returns being provided are true and correct copies of the returns that the Debtor submitted to the taxing authorities.

12. The Debtor has failed to comply with 11 U.S.C. §521(e)(2)(A)(i) and (B), in that he has not provided the Trustee with a copy of his 2021 federal and state income tax return and W-2 form. Until the Debtor provides the requested information, the Trustee is unable to perform her duties under 11 U.S.C. §1302(b)(1) (incorporating 11 U.S.C. §704(a)(4)) and is unable to recommend confirmation.

In addition, the Trustee is in receipt of a proof of claim filed by the Internal Revenue Service which states that the Debtor has not filed a tax return for the following tax years: 2016, 2017, 2018, 2019 and 2020. The Trustee is unable to recommend the case for confirmation until such time as the Debtor can provide proof that all delinquent tax returns have been filed.

13. The Trustee requests a copy of the 2021 corporate tax return for the corporation known as Hawaiian Riverbend LLC.

14. The Trustee requests a balance sheet for the corporation known as Hawaiian Riverbend LLC as of March 31, 2022.

15. The Trustee requests copies of profit and loss statements for the corporation known as Hawaiian Riverbend LLC for the following months: November 2021, December 2021, January 2022, February 2022, March 2022 and April 2022.

16. The Trustee is unable to determine if the plan meets the liquidation test in 11 U.S.C. §1325(a)(4) and requests that the Debtor provide her with a copy of whatever evidence

the Debtor used to determine the $6,000,000.00 value of the corporation known as Hawaiian Riverbend LLC/real property associated with the corporation (14.66 acres of commercial zoned land) listed on Schedule A/B.

17. The Trustee is unable to determine if the plan meets the liquidation test in 11 U.S.C. §1325(a)(4) and requests that the Debtor provide her with a copy of whatever evidence the Debtor used to determine the $1,000,000.00 value of the real property located at 62-2280 Kanehoa Street, Kamuela, HI, 96743, listed on Schedule A/B.

18. The Trustee is unable to determine if the plan meets the liquidation test in 11 U.S.C. §1325(a)(4) and requests that the Debtor provide her with a copy of whatever evidence the Debtor used to determine the $1,750,000.00 value of the real property located at "Empty Lot in Hawaii Lot: 3-6-8-002-021", listed on Schedule A/B.

Dated: June 2, 2022

/S/ Devin Derham-Burk

_____

Chapter 13 Trustee

# CERTIFICATE OF SERVICE BY MAIL

I declare that I am over the age of 18 years, not a party to the within case; my business address is 105 Cooper Court, Los Gatos, California 95032. I served a copy of the within Trustee's Objection to Confirmation by placing same in an envelope in the U.S. Mail at Los Gatos, California on June 2, 2022.

Said envelopes were addressed as follows:

| | |
|---|---|
| Michael Miroyan<br>P O Box 3181<br>Saratoga, CA 95070 | Law Offices of Michael Jay Berger<br>9454 Wilshire Blvd 6th Floor<br>Beverly Hills, CA 90212 |

/S/ Lesley Pace
Office of Devin Derham-Burk, Trustee

EXHIBIT SEVEN

1  Michael Miroyan
2  P.O. Box 3181
3  Saratoga, CA. 95070-1181
   Tel: (408) 913-3123
4  E-mail: mac8881@me.com
5  Plantiff in propia persona

FILED E-FILING

JUN 21 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

ei4
Paid

ADR

C 19 03626

6
7              United States District Court
8      Northern District of California - San Jose
9

10  Michael Miroyan, Individually,      CASE No:
11  and as Manager and owner of
12  100% of the membership interests   Complaint in Law & Equity
    of Hawaiian Riverbend, LLC and     for Damages, Declatory
13  on behalf of the General Public     and Injunctive Relief
14  Acting as a Private Attorney General, For:
                                        1) Violation and Depriv-
15                                      ation of Civil and
16            Plantiff                  Constitutional Rights
17            vs.                       (Bivens Action)
    The Kai Kenneth Kai,
18  Robert D.S. Kim,                    2) Violation of Elder Adult
    Kenneth Kai, Matthew Shannon        Abuse California Law
19  Wayne Silver, Michael Carroll, Quang Khang 3) Violation of Calif. & Hawaii
20  Hang, David Lucas, Michael          Constitutional Law
    Schulter, Andrew Kennedy,           4) Denial of Access to
21  Paul Stella Jr., and Title Guarantee the Courts
22  and Trust Title Co., and Does 1-100 5) Deprivation of due
23  inclusive.                          Process Rights
24            Defendants                6) Conspiracy to Deprive
25                                      Civil Rights
    7.) Tortuous Interference w/ bona fide business 7) Denial of Equal prot-
26                                      ection under the law
    7.5) Breach of Contract; Breach of Judiciary 8) Fraud. Conspiracy to
27  duty                                commit Fraud; Tort claims
    9) for violation of Rights; 10) Declatory Relief in stay of Proces/TRO/Preslim &
28  Permanent Injunction; 12) request for Counsel   [Jury Trial Requested]

1  Plantiff Michael Miroyan, INDIVIDUALLY AND on
2  behalf of the General Public, Acting AS A Private Attorney
3  General Alleges:

4  Plantiff Michael Miroyan is AN INDIVIDUAL, 67 years
5  of Age AND currently resides in Santa Clara County, CA
6  where he has Lived since 1957. He was raised in Sara-
7  toga, CA. As the first of 3 boys raised by Bernita AND
8  Vartkes Miroyan, A Calif. Licensed Attorney for over 30 yrs.
9  Michael did well in school, was A likeable fellow AND was
10 elected Student body President of the 1200 students At
11 Saratoga High School 1969-1970. He also Achieved the
12 RANK of Eagle Scout was President of the Key Club,
13 varsity letters in Soccer, Tennis, Wrestling AND
14 went to college At Univ. of Calif @ Santa Barbara for 1yr
15 and then transferred to Stanford University for his
16 undergraduate education in 1971, Majoring in Political
17 Science. Michael Miroyan MADE some good choices
18 AND some poor choices AND then in 1998 at the Age of 46
19 AND after being a REALTOR ASSOCIATE off; on for 24yrs
20 he started his CAREER AS A REAl estate developer.
   (See Exhibit 1 Resume of MM)
21        Between 1998-2007 when The Real estate
22 market took A violent turn for the worse ... The
23 worst recession in 40 yrs ... in These 9 years, Michael
24 Miroyan completed 11 (eleven) subdivisions, 421 residential
25 units AND over $20 million dollars in constructions Loans AND
26 jobs for the community - All BASED ON AND because of
27 his guts, his SAAvy, his initiative, persistence AND
28 skills in Real estate. Quite AN Accomplishment by A MAN

CIVIL RIGHTS COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF

2

who began at age 46 and finished at age 53. Michael
Miroyan has always concentrated on providing a
significant public benefit and has earned all his
properties and income.

In July 2005, Miroyan landed his
biggest acquisition of his life when he bought
13,767 acres from Waikoloa Cattle Co. & Waikoloa
Development Co for $60 million dollars. Michael
Miroyan handled all the negotiations w/ the Seller
himself and at the end of the day he was the
first and only one on the contract and overnight
that purchase made Michael Miroyan and his
Ukranian partners the 5th largest property owner
on the state of Hawaii.

In Sept. 2005, MAI Appraiser Hallstrom
appraised the 13,767 acres conservatively at $164 million
$104 million dollars more than what we paid for the
property and Michael Miroyans skills at land
acquisition and his business acumen were in plain
sight for all to see. He had made his partners
and himself $104 million in Sept. 05 on a $60 million purchase.

Miroyan then sold the Waikoloa Village
properties in 2006 on behalf of the partnership
and he raised $252 million dollars in offers for the
800 acres in the village ... one offer of $108 million
from Pacific Century Group is attached here (Ex. 'B')

FOR ANYONE to portray MICHAEL MIROYAN other than AN ASTUTE, SAAVY AND HONORABLE BUSINESSMAN, IS AN ABSOLUTE LIE. None of the people ENVOLVED in this case — NO ONE — has done what Miroyan has done. They have not brought $60 million cash to the Big Island; Nor received $100 million dollar offers — none of them have MIROYAN's land acquisition skills nor his vision or his guts and all they can do is make or take money off of his creations. Miroyan is a river to his associates and even his enemies — greedy, pathetic enemies make money off his efforts!

"When you drink from the well, remember the man who built it!" Chinese proverb

This case is about greed and the extent to which people will go to get their hands on money, lots of money, Michael Miroyan's money — his LAND — that he earned and that which they conspire to steal.

Miroyan had to sue his business partners in 2008 because they weren't honoring their agreements. In 2009, Miroyan settled and received 31.3 acres in Waikoloa Village as the majority of his settlement, TMK # 6-8-02-21. the property went into his wholly owned Hawaiian Riverbend, LLC formed by his California attorney name in NOV. 2009.

Miroyan needed $800,000 to pay his ex partners as part of the settlement & invited the KAI's, TAE & Kenneth to participate with the hope & belief Miroyan could pay back some

Case: 22-50314   Doc# 31-2   Filed: 06/06/22   Entered: 06/06/22 16:16:18   Page 122 of 136

$400 in personal unsecured notes that Miroyan owed the KAI's and because of the drastic market change in 2007, was heretofore unable to do.

A deal was struck! Miroyan gave the KAI's 50% membership interests w/ his now 50% of HR, LLC AND he gave them the 1st lien position of Lender also. KAI's put up $360,000 and Miroyan gave them a $540,000 mortgage 50% return ($180,000) all due in 3 yrs. MAy 2013. As part of the contractual agreement, a membership purchase agreement was prepared and duly signed along w/ the operating agreement, etc.

Miroyan was to be Manager w/a $3500/mo salary. He & planning consultant, Sidney Fuka, were to change the zoning to commercial on 14.66 AC and subdivide the 81.3 into 3 parcels. the KAI's were to pay bills when asked by the MGR for the accounting salaries property taxes MGR's issuing of a sub contractors etc upon the "capital call" Escrow closed in May 2010. the KAI's learned of this transaction thru Michael Miroyan only and they thanked him by stabbing him in the back and little did he know because they lied so good.

By the Spring of 2012 the KAI's had surreptiously hired attorneys Michael Cande and Matthew Shannon to assist them in the stealing of the commercial property about to be rezoned

Case: 22-50314   Doc# 51-2   Filed: 06/08/23   Entered: 06/08/23   Page: 123 of 136

"No Good Deed goes Unpunished." the adage
finds particular relevance here as the greedy
Kai's breached their fiduciary duty to Miroyan
their fellow member of the LLC w/a clear agreed
upon goal in sight by hiring lawyers w/out
disclosing it to Miroyan and then the four of
them conspiring to steal the property which
was set to go to the Planning Commission for
approval in NOV. 2012

          Observe the tortuous interference
by the Kai's and their hidden snake attorneys
as the Kai's quit all funding in July 2012
and go into a flagrant breach of the MPA.
this breach of contract is designed to sour
and greatly slow down the project. They will
kill it slowly. Miroyan has little savings
and w/out his salary will soon be financially
strapped as he went all in on the project to
be able to pay back Kai's rather than getting
more money from this settlement w/ his ex-
partners. Never in his wildest dreams could he
conceive the Kai's would backstab him when he
is paying back unsecured notes that most others
would have walked away from.

          Miroyan issues cap calls in July
and in Sept. '12 but the Kai's dont fund. they want
to be "tender only because Miroyan later
found out - they couldn't foreclose on themselves,
so

they had to come out of the LLC and to this end
w/ lies and fraud and breaches and obfuscated
trickery they hoodwinked Miroyan to becoming
lender only and Miroyan raising their mortgage
by $650,000 without the Kai's putting up $0¢!!
        There is no money trail for the
increase in mortgage. This is lender fraud
and conspiracy to defraud and interference w/
Miroyan's business advantage and these lawyers
are coaching and breaking the law from Spring
2012 until Jan. 2015 when they finally surface.
        Quang Hung Hang is a Calif. notary
who the Kai's and/or their attorneys paid to
fraudulently notarize Miroyan's signature on
the $900,000 note he signed when he believed
on Aug 7, 2013 that they were finally in
agreement. Quang Hung's forgery to the notari-
zation of Miroyan's signature is fraud; it's
illegal and renders the amended mortgage and
note as an illegal instrument and it is therefore
void. With the purchase of Quang's loyalties to the
fraud scheme there are now 5 co conspirators.
        Miroyan didn't realize any of
this at the time — he knew nothing. When he
signed on Aug 7, 2013 he specifically did not
notarize because the payback date had not
been agreed upon, the 2ND mortgage he did
notarize and sign because it was due on 3yrs
w/ 2 subordination clauses in it. But the $900K
he did not notarize.  (SEE E.)

CIVIL RIGHTS COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF
7

2) The main cause of action in this lawsuit is two-pronged: it is against the Kai Family Trust and the 2 trustees Ken and Tae for fraud, for breach of contract, of fiduciary duty, for interference of mine/one fide business practices, for taking advantage of my business advantage, for not releasing the mortgages which caused me irreparable damage, and to close the lawsuit which Miroyan went to trial on where he lost 88 acres and a 1.5m college and the second prong is against the Hon Robert DS Kim for 1983 Civil Rights violations 42 USC 1983 civil rights violations.

3) Defendant Tae Kai and defendant Ken Kai are both living here in Santa Clara County and have done so for the last 30 years just like Plantiff Miroyan. All deals were discussed and agreed upon in Santa Clara County. All contracts were signed in Santa Clara County. All monies changed hand in Santa Clara County and all parties live in Santa Clara County including the notary Queang Hung Hang.

4) Therefore Venue is proper in Santa Clara County.
5) At all times Matthew Shannon and Michael Carroll worked together for the Kai's since 2012 and both work in Honolulu and their conduct is violative of their oaths to the Hawaii & US Constitution. Both have joined the conspiracy to defraud Miroyan and both have committed overt acts in furtherance of their dirty goal, the theft of an elderly mans land, which is elder abuse

6.) Both Dr. Ken and Tae Kai as well as both of their miscreant attorneys Shannon and Carroll are being sued in their individual capacity also for all of them knowingly and willingly breaking the law and more all for their love of someone else's money.

7.) Notary Quang has yet to perjure himself but Hiroyan is sure he will and for his forgery of the notarization of Hiroyan's signature he should pay dearly for the Note, amended mortgage would not have been recorded without it or it

8.) Title Guarantee and Trust is complicit in this fraud because one of their employees took over Hiroyan's escrow and gave it to the Kai's side and put the amended mortgage in their oversight pouch all without Hiroyans consent or knowledge and while his back was turned embroiled in the lawsuit over his ranch, the amended mortgage was signed on Aug 7, 2013. It was recorded NOV. 18, 2013 .... it was recorded 101 days after Hiroyan signed!! Why? Why wait so long? Because that's when HIROYAN was embroiled in trial! Sneaky, sneaky and dirty - are the Kai's and their greaseball attorneys. The amended mortgage is void - its an illegal instrument.

8.) Yet Judge Robert Kim has done everything he

CIVIL RIGHTS COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF
-9-

Can to prevent Miroyan from even having access to the Courts, let alone a fair Day in court. The litany of allegations against Robert Kim, whom Miroyan is suing in his individual as well as official capacity cannot all be delineated here but will be in the first amended complaint. But here are a few of the stand outs by this Judge who under the color of law and authority denies Miroyan even the most miniscule of due process rights nor equal protection under the bill of rights. Robert Kim's tail free speech - the Judge Kim obliterates it!! And does not allow Miroyan access to petition the Court for his grievances. Judge Kim has joined the conspiracy to defraud Miroyan of the property he earned and he must now be removed due to this lawsuit against him -

9) Defendant Robert PS Kim has purposely denied Miroyan access to the Court. Defendant Kim knows that Miroyan has been "BlackListed" which is tantamount to being a "leper" and as such I have been banished; ex-communicated and no one will touch me or my case. This coupled w/ Miroyans financial woes makes it impossible to hire an attorney and yet that is exactly what Defendant Kim demands!! It so much

1  easier to win when the opposing side has no
2  voice! These are bedrock constitutional
3  violations of the basic and cherished rights all
4  Americans enjoy. It's what makes our country
5  great and Defendant Kim will have none
6  of it.
7  10) Who has blacklisted Miroyan... that scary
8  word from the witch hunt McCarthy hearings
9  70 years ago from the 1950's. Even then McCarthy
10  stood up and said it was he who was doing the
11  inquiring re: Russian spies. But here it is but
12  a shadow - no one is talking to Miroyan but
13  Miroyan believes he knows who is doing
14  it - this banishment and exile because it
15  has to be the one or the group that covets the
16  14 ac. of Comm that is the subject of ~~case #~~
17  Case # 15-0164 K. KAI vs. HR DEC (Miroyan)
18  the KAI's are trying to steal 14 acres of CN20
19  Comm, owning worth $6 million for the $1 million
20  they are owed supposedly and that is their
21  goal. The KAI's are in NO danger of losing
22  their secured 1st mortgage plus interest but
23  they want more... bring on the forgery by the
24  notary - observe his date where he lies
25  and says MIROYAN appeared before him on
26  Aug. 10, 2013! Miroyan was negotiating w/the
27  KAI's for 90 days after that until NOV 2013 not
28

CIVIL RIGHTS COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

1 knowing the fbi's had fraudulently had
2 his signature notarized and had no intent
3 of making a deal w/ Miroyan — they waited
4 and waited and strung Miroyan out and then
5 bam! Let the guillotine fall when Miroyan
6 was pre occupied w/ his trial.
7 11) Note # The amended mortgage for $900,000
8 filed via TG & Tr. overnite pouch on Nov 18,'13
9 was all due and payable $900,000 all
10 due in eleven days on Dec 1, 2013. Now do
11 really expect anyone to believe Miroyan
12 recorded and agreed to $900,000 payoff in 11
13 days?? These are the obstacles when you cheat
14 and lie and swindle... there's always
15 glitches (see Ex. "D" re: First amendment of Promissory Note)
16 12) Miroyan has filed a police report w/ SJ Police
17 Fraud Dept re: Notary Q. Hung Hong and
18 also w/ the Secretary of States office. (See Ex. "D")
Police Report
19 13) Judge and Defendant Robert Kim allowed HR's attorney
20 Paul Sulla Jr. to withdraw in April 2013 at a hearing
21 Miroyan knew nothing about. Kim likes to told
22 Court w/o Miroyan (the true owner) being there
23 or even being aware of the crooked shenanigans.
24 Defendant Kim allowed Sulla to withdraw knowing
25 the LLC would have no voice, less than 60 days
26 before the Court confirmation hearing on companion
27 case Teranick v. HR, LLC #14-0429K and the result
28 was of course devastating. Miroyan lost a $1.9m

a $1.9 million dollar 11 acre parcel for $120,000 and got not a dime out of it.

14) Defendant Kim should not let the LLC get defenseless like this and the order he signed drawn up by Sulla says its in compliance w/ Rule 25. Thats false. Its a lie. Rule 25 calls for the LLC's Manager Miroyan to have signed the order also saying he is ok with it. See Ex. E order.

Miroyan never knew it was going on because Sulla was working against his own client HK & Miroyan and Defendant Kim was leading the lopsided street mugging of Miroyan and his hard earned assets.

15) Faced w/ this thievery in broad daylight and the ignoring of a $15 million sale across the street from Miroyan's HK property was outrageous because you can't ignore the facts. But they did and Defendant Kim adopted the fraudulent BPO of crooked real estate Broker Doug Lucas for $240,000 and ignored the fact of the April 2017 sale of $6.5 million which showed a huge disparity on the theft of Miroyan's land.

16) Andrew Kennedy & Michael Schlueter are crooked Commissioners on on the scam.

17) Wayne Silver has lied several times in federal BK court while advancing the crooked agenda of Kei, Shannon, Carol, Hang, et al.

14.) Preserve the right to amend this complaint as the evidence unfolds or as I care to amend.

Respectfully Submitted,

6/21/19 San Jose, Ca.

M. KESROYAN

CIVIL RIGHTS COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF

EXHIBIT EIGHT

1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7    MICHAEL MIROYAN,                    Case No.  3:19-cv-03626-WHO

         Plaintiff,
8
                                         **ORDER DISMISSING CASE**
9         v.
                                         Re: Dkt. No. 27
10   TAE KAI, et al.,

11       Defendants.

12

13       On September 11, 2019, I dismissed pro se plaintiff Michael Miroyan's complaint for lack

14   of federal subject matter jurisdiction.[1]  Dkt. No. 22.  Miroyan pleaded federal claims against Judge

15   Robert D.S. Kim of the Third Circuit in Hawaii, but there was no evidence in the docket that

16   Judge Kim had been served, Miroyan had alleged no facts to support the claims, and the claims

17   seemed to be barred.  The remaining claims were based in state law, and in the clear absence of

18   diversity jurisdiction,[2] I lacked jurisdiction over them.  In that Order, I gave Miroyan until October

19   2, 2019 to file a first amended complaint.  On October 1, Miroyan requested additional time to

20   amend; I granted his request in part and gave him until October 16 to file an amended complaint.[3]

21   *See* Dkt. Nos. 23, 24.

22       On October 15, 2019, Miroyan filed several documents.  *See* Dkt. Nos. 27, 28, 29.  One is

23   titled, "Motion to extend time due to change of circumstances for an additional 14 days to have

24

25   [1] Miroyan failed to appear at the hearing that day.

26   [2] The complaint pleads that both Miroyan and some defendants live in California.  *See* Dkt. No. 1
     at 2, 8.

27   [3] He also appeared, unscheduled, at my Case Management Conference calendar that day; I advised
     him that I had granted him a two-week extension along with permission to file electronically.  Dkt.
28   No. 26.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Plaintiff file the first amended complaint, w/ the order attached." Dkt. No. 27. Miroyan wrote that

2    he needed more time to draft the complaint detailing a complicated dispute that has been going on

3    for years. He complained that Judge Kim should have stepped down from the Hawaii case and

4    that he signed a secret order without informing Miroyan. According to Miroyan, "outrageous

5    crimes" have been committed against him in state court in Hawaii, and "this Court or the Ninth

6    Circuit must delay [Judge Kim] because the guy has to withstand scrutiny and he cannot." *Id.* at 3.

7    Miroyan also attached a foreclosure judgment in Hawaii case along with an email he sent to an

8    address associated with the Hawaii state courts.[4] Dkt. No. 28.

9          I will dismiss Miroyan's case with prejudice for four reasons. First, I already denied the

10   request that Miroyan made in his most recent filings; in his earlier request, he also asked for a

11   November 1 deadline to file an amended complaint, and I ordered that he do so by October 16.

12   Despite his contention that there was a "change of circumstances," Miroyan has presented no

13   reasons why I should reconsider that decision.

14         Second, I am not persuaded by Miroyan's assertion that he needs more time to lay out the

15   complicated facts of his case. Miroyan is the plaintiff. Even in his original complaint, filed on

16   June 21, 2019, he wrote, "The litany of allegations against Robert Kim, whom Miroyan is suing in

17   his individual as well as official capacity, cannot all be delineated here but will be in the first

18   amended complaint." Dkt. No. 1 at 10. Accordingly, Miroyan has been aware from the beginning

19   that his claims against Judge Kim would require more factual support, and he has had more than

20   four months to develop a complaint that properly lays out those allegations.

21         Third, as of the date of this Order—later than that of his requested extension—Miroyan has

22   not filed an amended complaint.

23         Finally, and most importantly, Miroyan's filings—most notably the judgment from the

24   Hawaii case—make it abundantly clear that he is seeking federal court intervention into decisions

25   made by a state court judge in a state court case. *See* Dkt. No. 27 at 3 ("This Court or the Ninth

26

27   _____

28   [4] Miroyan also included a notice to the Clerk where he writes that he has "dropped" his urgent
     request for two more weeks to file an amended complaint. Dkt. No. 29. Based on the other
     filings, Miroyan meant that he dropped *off* the documents at the Clerk's Office.

2

1   Circuit must delay [Judge Kim] because the guy has to withstand scrutiny and he cannot.").  The

2   *Rooker-Feldman* doctrine bars such actions.  *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th

3   Cir. 2004) (noting that the *Rooker-Feldman* doctrine bars federal district courts "from exercising

4   subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment");

5   *Henrichs v. Valley View Dev.*, 474 F.3d 609, 616 (9th Cir. 2007) (holding that *Rooker-Feldman*

6   barred a claim that "would require the district court to determine that the state court's decision was

7   wrong and thus void").  In addition, in none of his filings does Miroyan allege any facts showing

8   that Judge Kim either took nonjudicial actions or took judicial actions "in the complete absence of

9   all jurisdiction" in order to overcome the judicial immunity bar.  *See Mireles v. Waco*, 502 U.S. 9,

10  11-12 (1991).

11      By failing to amend his complaint in the nearly two months since my Order, Miroyan has

12  failed to prosecute his case as required by Federal Rule of Civil Procedure 41(b).  His filings,

13  which fail to provide a basis for federal jurisdiction, instead show that his claims against Judge

14  Kim are barred.  For all of these reasons, this case is DISMISSED WITH PREJUDICE.

15      **IT IS SO ORDERED.**

16  Dated: November 5, 2019

17

18  

19  William H. Orrick
    United States District Judge

20

21

22

23

24

25

26

27

28