CERTIFIED BANKRUPTCY LAW
SPECIALIST –CALIFORNIA STATE BAR
BOARD OF LEGAL SPECIALIZATION

**LAW OFFICE OF**
**WAYNE A. SILVER**

643 BAIR ISLAND ROAD, SUITE 403
REDWOOD CITY, CA 94063
TELEPHONE: (650) 282-5970
FACSIMILE: (650) 282-5980
EMAIL: ws@waynesilverlaw.com

June 17, 2022

Hon. Steven L. Johnson
U.S. Bankruptcy Judge
United States Courthouse
280 S. First Street
Room 3035-3099
San Jose, CA 95113

      Re:    Hawaiian Riverbend, LLC, Case No.: 22-50314-SLJ

Dear Judge Johnson:

Attached please find the recent Ninth Circuit decision in *Allana Baroni v. David Seror*, No. 21-55076 (9th Cir. 2022) ("*Baroni*"), which I believe will help guide the Court in deciding the Kenneth Y. Kai and Tae K. Kai, Trustees of the Kai Family 1998 Trust ("Kai") pending motion to convert or dismiss with refiling bar ("Motion"), set for hearing on June 21, 2022, at 2:00 p.m.

Yours truly,

*Wayne A. Silver*

Cc:    Hawaiian Riverbend, LLC via
        Email to: mac8881@me.com

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN RE ALLANA BARONI,<br>*Debtor*, | No. 21-55076 |
| ALLANA BARONI,<br>*Appellant*, | D.C. No.<br>2:20-cv-04338-MWF |
| v. | OPINION |
| DAVID SEROR, Chapter 7 Trustee,<br>*Appellee.* | |

| | |
|---|---|
| IN RE ALLANA BARONI,<br>*Debtor*, | No. 21-55150 |
| ALLANA BARONI,<br>*Appellant*, | D.C. No.<br>2:19-cv-07548-MWF |
| v. | |
| DAVID SEROR, Chapter 7 Trustee;<br>BANK OF NEW YORK MELLON;<br>WELLS FARGO BANK, N.A., as<br>Trustee for Structured Adjustable<br>Rate Mortgage Loan Trust Mortgage | |

Pass-Through    Certificates,    Series
2005-17,

*Appellees*,

v.

NATIONSTAR MORTGAGE LLC,
*Movant.*

Appeal from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Argued and Submitted December 7, 2021
Pasadena, California

Filed June 8, 2022

Before:  Paul J. Kelly, Jr.,* Milan D. Smith, Jr., and
Danielle J. Forrest, Circuit Judges.

Opinion by Judge Forrest

---

* The Honorable Paul J. Kelly, Jr., United States Circuit Judge for
the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

# SUMMARY**

## Bankruptcy

The panel affirmed the bankruptcy court's orders converting Allana Baroni's bankruptcy case from Chapter 11 to Chapter 7 and ordering Baroni to turn over undistributed assets in her possession to the Chapter 7 bankruptcy estate.

The panel held that the bankruptcy court properly exercised its discretion in converting the case to Chapter 7 for cause under 11 U.S.C. § 1112(b)(1). The panel held that the party seeking relief under § 1112(b)(1) has the initial burden of persuasion to establish that cause exists for granting such relief. The panel held that failing to make required payments can be a material default of a Chapter 11 plan, even if the debtor has made payments for an extended period before the default or taken other significant steps to perform the plan. The panel concluded that the bankruptcy court did not err in finding that Baroni's default in paying Bank of New York Mellon's secured claim was cause for conversion because both the amount and duration of this default were significant. In addition, conversion to Chapter 7 was in the best interests of the creditors and the bankruptcy estate, and Baroni's ability to immediately cure her default was not an unusual circumstance indicating that the creditors' and the estate's interests were best served by not granting relief under § 1112(b)(1).

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel further held that the bankruptcy court did not err in requiring Baroni to turn over the rent and sale proceeds from her rental properties to the Chapter 7 trustee. Upon the confirmation of a Chapter 11 plan, the property of the bankruptcy estate vests in the debtor under 11 U.S.C. § 1141. In determining whether assets revest in the Chapter 7 estate upon conversion, courts consider whether there is an explicit plan provision regarding the distribution of future proceeds of an asset to creditors and whether the plan retains broad powers in the bankruptcy court to oversee implementation of the plan. The panel concluded that under Baroni's Chapter 11 plan, she did not receive the rental properties free and clear of all claims and interest of creditors at confirmation, but rather the income from the rental properties remained subject to the plan because the premise of the plan was to pay creditors with the ongoing income stream from those properties. The panel concluded that to hold that the unadministered rent and sale proceeds did not revest in the bankruptcy estate upon conversion to Chapter 7 would frustrate the intent of the plan and would be contrary to many of its provisions.

**COUNSEL**

M. Jonathan Hayes (argued) and Matthew D. Resnik, Resnik Hayes Moradi LLP, Encino, California, for Appellant.

Jessica L. Bagdanov (argued), Steven T. Gubner, and Susan K. Seflin, Brutzkus Gubner, Woodland Hills, California, for Appellee David Seror.

Jan T. Chilton (argued), Severson & Werson APC, San Francisco, California, for Appellee Wells Fargo Bank.

D. Kyle Deak (argued) and Justin D. Balser, Troutman Pepper Hamilton Sanders LLP, Irvine, California; Preston K. Ascherin, Akerman LLP, Los Angeles, California; for Appellee Bank of New York Mellon.

---

**OPINION**

FORREST, Circuit Judge:

Appellant Allana Baroni defaulted under her Chapter 11 bankruptcy plan by refusing to pay Appellee Bank of New York Mellon[1] (Bank of NYM) after she lost her adversary proceeding challenging the bank's secured claim. This was not the first time that Baroni had refused to pay a secured creditor as required under her plan. As a result, the bankruptcy court granted Bank of NYM's motion to convert the bankruptcy case from Chapter 11 to Chapter 7 and

---

[1] Bank of NYM's full name of record is "The Bank of New York Mellon f/k/a The Bank of New York, as Successor Trustee to JP Morgan Chase Bank, N.A., as Trustee for the Holders of SAMI II Trust 2006-AR6, Mortgage Pass Through Certificates, Series 2006-AR6."

ordered Baroni to turn over undistributed assets in her possession to the Chapter 7 bankruptcy estate. Baroni challenged these two decisions in separate appeals. We have jurisdiction under 28 U.S.C. § 158(d), and we affirm both orders.

# I.  BACKGROUND

## A. Baroni files for bankruptcy

Baroni filed for bankruptcy after defaulting on several mortgage loans that she received to purchase rental properties. She initially filed under Chapter 13, but her case was converted to Chapter 11. Bank of NYM and Wells Fargo,[2] which is not a party in these appeals, filed several proofs of claim asserting secured claims based on the deeds of trust that Baroni signed. Baroni disputed these secured claims asserting that Bank of NYM and Wells Fargo were not authorized to enforce her loan obligations for various reasons. Consequently, she proposed a Chapter 11 plan (Plan) that would allow her to continue renting the properties and to make her loan payments into separate Reserve Accounts while she pursued adversary proceedings against Bank of NYM and Wells Fargo. Under the terms of her Plan, if her challenges failed and these creditors' secured claims were allowed, she was required to transfer the funds held in the relevant Reserve Account "within 10 business days of entry of an order identifying the allowed claim holder" and to make all future loan payments directly to the lender. But if a lender's claim was disallowed, the relevant reserve funds would revert to Baroni. The bankruptcy court confirmed

---

[2] Wells Fargo's full name is "Wells Fargo Bank, N.A. As Trustee For Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2005-17."

Baroni's proposed Chapter 11 Plan over objection from creditors.

## B. Baroni challenges Bank of NYM's secured claim

Baroni began making her installment payments into the Reserve Accounts and initiated adversary proceedings against Bank of NYM and Wells Fargo challenging their secured claims. Three years later, Baroni lost her challenge against Wells Fargo. That is when the trouble that led to this litigation started. Despite the Plan requirement that she transfer to Wells Fargo the funds in the Reserve Account associated with its loan and start making her loan payments directly to Wells Fargo, she refused. In response, Wells Fargo moved to convert Baroni's bankruptcy case to Chapter 7 so that a trustee would be appointed to preserve and administer the estate and ensure ongoing payments were made. After several hearings, Baroni ultimately paid Wells Fargo as required, and the bankruptcy court denied Wells Fargo's conversion motion as moot.

A year later, Baroni also lost her adversary proceeding against Bank of NYM when the bankruptcy court determined that Bank of NYM was the holder of Baroni's promissory note and was authorized to enforce her loan contract. Once again, Baroni refused to transfer the reserve funds to Bank of NYM or to start making loan payments directly to the bank.

As justification for her refusal to comply with the Plan, Baroni stated that she and her husband had each received a 1099-C from the Internal Revenue Service (IRS) indicating that a company named Specialized Loan Services had written off $305,977.12 of the subject loan balance. Baroni contends that because both her and her husband received a 1099-C, her loan was reduced by a total of $611,954.24 and

that Bank of NYM had not properly calculated her remaining balance. She demanded that Bank of NYM explain the impact of the write-off before she would transfer the Reserve Account funds. After making multiple requests for Baroni to provide a copy of the 1099-Cs, Bank of NYM explained that only $305,977.12 was written off the loan balance after part of the balance was rendered unsecured under the bankruptcy Plan, and the bank continued to insist that Baroni transfer the Reserve Account funds. Baroni did not accept this explanation and refused to make payment until the 1099-C issue was "resolved."

## C. Bank of NYM moves to convert to Chapter 7

After a few months of back and forth without resolution, Bank of NYM filed its own conversion motion asking for Baroni's case to be converted to Chapter 7. This motion was filed approximately six months after the Plan required Baroni to transfer the reserve funds to Bank of NYM. The bankruptcy court held a hearing and granted this motion, concluding that Baroni had materially defaulted under the Plan by refusing to transfer the reserve funds to Bank of NYM and by not making her ongoing loan payments directly to the bank.

Baroni moved for reconsideration arguing that she could cure her default immediately. She also argued for the first time that Bank of NYM failed to give proper notice of its conversion motion to all creditors. The bankruptcy court denied her motion for reconsideration. Baroni appealed to the district court, which affirmed the bankruptcy court.

### D. Baroni refuses to turn over assets to the bankruptcy estate

After Baroni's case was converted to Chapter 7, the Chapter 7 Trustee requested that Baroni transfer all Reserve Account funds to the bankruptcy estate. The Trustee also requested turnover of the sale proceeds from the rental property for which Wells Fargo had submitted a secured claim and the rental proceeds from the rental property for which Bank of NYM submitted a secured claim. Baroni transferred the Reserve Account funds (while also protesting that the funds were not part of the Chapter 7 estate) but refused to transfer the rental and sale proceeds, arguing that they were not part of the bankruptcy estate because these assets revested in her when her Chapter 11 Plan was confirmed. The Trustee filed a motion for turnover of these assets.

The bankruptcy court determined that neither the Plan nor the Bankruptcy Code addressed what would happen to the assets of the Chapter 11 estate upon conversion to Chapter 7 after plan confirmation. Therefore, the bankruptcy court held that the Local Bankruptcy Rules for the Central District of California applied by default, which provided that unadministered assets revert to the bankruptcy estate upon conversion unless the plan provides otherwise.

The bankruptcy court also rejected Baroni's argument that the sale and rental proceeds were not property of the bankruptcy estate under our caselaw. Specifically, the bankruptcy court held that *Pioneer Liquidating Corp. v. United States Trustee (In re Consol. Pioneer Mortg. Entities)*, 264 F.3d 803 (9th Cir. 2001), established that unadministered property of a confirmed Chapter 11 plan revests in the Chapter 7 estate upon conversion if (1) the "plan provides for the distribution of future proceeds of an

asset to creditors" and (2) "the bankruptcy court retains broad powers to supervise the implementation of the plan." The bankruptcy court found that the Plan contemplated Baroni would pay future rent proceeds to her creditors and required the bankruptcy court to oversee implementation of its provisions. Consequently, it held that the assets passed into the Chapter 7 estate upon conversion.

On appeal, the district court disagreed with the bankruptcy court's analysis of *Pioneer* but affirmed its decision requiring Baroni to turn over the subject assets to the Chapter 7 estate under Local Rule 3020-1.

## II.  DISCUSSION

"We independently review the bankruptcy court's decision and do not give deference to the district court's determinations." *Saxman v. Educ. Credit Mgmt. Corp. (In re Saxman)*, 325 F.3d 1168, 1172 (9th Cir. 2003) (citation omitted). We review the bankruptcy court's conclusions of law de novo, and its findings of fact for clear error. *Nichols v. Birdsell*, 491 F.3d 987, 989 (9th Cir. 2007).

As previously stated, Baroni filed two separate appeals. One challenging the bankruptcy court's order converting her Chapter 11 case into Chapter 7 for materially defaulting on the confirmed Chapter 11 plan (conversion appeal). And one challenging the bankruptcy court's order requiring that she turn over assets in her possession to the Chapter 7 Trustee so that they become part of the bankruptcy estate (turnover appeal). As these issues relate to each other, we address them together, analyzing the conversion order first and then the turnover order.

## A.  Chapter 7 Conversion

"The decision to convert [a] case to Chapter 7 is within the bankruptcy court's discretion." *Pioneer*, 264 F.3d at 806. We will reverse the bankruptcy court only if its decision was "based on an erroneous conclusion of law or when the record contains no evidence on which [the bankruptcy court] rationally could have based [its] decision." *Id.* at 806–07 (first alteration in original) (quoting *Benedor Corp. v. Conejo Enters., Inc. (In re Conejo Enters., Inc.)*, 96 F.3d 346, 351 (9th Cir. 1996)).

The standard for converting a Chapter 11 case to Chapter 7 is set out in 11 U.S.C. § 1112. This statute provides that the bankruptcy court "shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause." 11 U.S.C. § 1112(b)(1). However, even if cause is established, Section 1112(b)(2) prohibits a bankruptcy court from granting relief under Section 1112(b)(1) if the bankruptcy "court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, *and* the debtor or any other party in interest establishes [one of two enumerated circumstances]." *Id.* § 1112(b)(2) (emphasis added). Thus, depending on the arguments advanced by the parties, there are three primary inquiries: (1) whether cause exists for granting relief under Section 1112(b)(1); (2) whether granting relief is in the creditors' and the estate's best interests; and (3) if so, which form of relief best serves the creditors' and the estate's interests. We address each in turn.

## 1.  Cause

We first address where the burden for establishing cause lies. Although the Ninth Circuit Bankruptcy Appellate Panel (BAP) has addressed this issue, *Sullivan v. Harnisch (In re Sullivan)*, 522 B.R. 604, 614 (B.A.P. 9th Cir. 2014) ("The movant bears the burden of establishing by a preponderance of the evidence that cause exists."), we have not. The parties here do not dispute that Bank of NYM, as the party seeking conversion, has the burden of establishing cause for granting conversion. And there is significant authority supporting this view. *See, e.g.*, *Loop Corp. v. U.S. Tr.*, 379 F.3d 511, 517–18 (8th Cir. 2004); *In re Woodbrook Assocs.*, 19 F.3d 312, 317 (7th Cir. 1994); *In re Sullivan*, 522 B.R. at 614; *In re Rosenblum*, 609 B.R. 854, 863 (Bankr. D. Nev. 2019); 7 ALAN J. RESNICK & HENRY J. SOMMER, *Collier on Bankruptcy* ¶ 1112.04[4] (16th ed. 2012) [hereinafter *Collier on Bankruptcy*]. We take this opportunity to likewise establish that the party seeking relief under Section 1112(b)(1) has the initial burden of persuasion to establish that cause exists for granting such relief. Establishing cause is not definitive, of course, because the statute makes clear that even where cause is established, the bankruptcy court must still consider the best interests of creditors and the estate. 11 U.S.C. § 1112(b). It is also well established that bankruptcy courts have broad discretion in deciding whether to grant relief under Section 1112(b)(1), even where cause is established. *Pioneer*, 264 F.3d at 806–07.

We now turn to whether cause was shown in this case. "Cause" is a defined term, and it includes a "material default by the debtor with respect to a confirmed plan." 11 U.S.C. § 1112(b)(4)(N). The statute does not further define what constitutes a "material default," and we have not previously construed this term in the context of Section 1112(b). The

Sixth Circuit has held that "[a] failure to make a payment required under the plan is a material default and is cause for dismissal." *AMC Mortg. Co. v. Tenn. Dep't of Rev. (In re AMC Mortg. Co., Inc.)*, 213 F.3d 917, 921 (6th Cir. 2000); *see also Collier on Bankruptcy* ¶ 1112.04[6][n] ("Although the Code does not define the term material, the failure to make payments when due under the plan can constitute a material default.").

Bankruptcy courts in the Ninth Circuit have followed this rule. *See, e.g.*, *Kenny G Enters., LLC v. Casey (In re Kenny G Enters., LLC)*, No. BAP CC-13-1527, 2014 WL 4100429, at *13–14 (B.A.P. 9th Cir. Aug. 20, 2014) (unpublished) (holding that a "failure to pay creditors pursuant to the Plan certainly was" a material default constituting cause for conversion); *Warren v. Young (In re Warren)*, No. BAP EC-14-1390, 2015 WL 3407244, at *5 (B.A.P. 9th Cir. May 28, 2015) (unpublished) (holding that "failure to make any payments to several unsecured creditors for more than four years in contravention of the Plan amounted to a material default and constituted cause to convert or dismiss the bankruptcy case"); *In re Red Door Lounge, Inc.*, 559 B.R. 728, 733 (Bankr. D. Mont. 2016) (failure to make monthly loan payments and pay property taxes was material default); *cf. Pryor v. U.S. Tr. (In re Pryor)*, No. 15-BK-19998, 2016 WL 6835372, at *8–9 (B.A.P. 9th Cir. Nov. 18, 2016) (unpublished) (failure to make required quarterly fee payments to trustee was "cause for dismissal or conversion"). We agree with this view in principle.

One of the primary purposes of Chapter 11 is to allow a debtor facing financial hardships to continue business operations so that it "may be restructured to enable it to operate successfully in the future" because the business may

be "more valuable" as a going concern than if it were liquidated. *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 203 (1983). This purpose is reflected in Baroni's confirmed Plan that sought to restructure the debt underlying her troubled rental properties. And given the substantial effect that a confirmed Chapter 11 plan may have on creditors, an individual debtor generally may not receive a discharge under Chapter 11—even after a plan is confirmed—until the debtor has made all creditor payments contemplated in the confirmed Chapter 11 plan. 11 U.S.C. § 1141(d)(5)(A). Ensuring that payments to creditors are made is essential to effectuating the reorganization plan and accomplishing Chapter 11's policy objectives. Thus, we agree that failing to make required plan payments can be a material default of the plan, even if the debtor has made payments for an extended period before the default or taken other significant steps to perform the plan. *See Greenfield Drive Storage Park v. Cal. Para-Professional Servs., Inc. (In re Greenfield Drive Storage Park)*, 207 B.R. 913, 916–17 (B.A.P. 9th Cir. 1997) (finding material default where debtor ceased making plan payments after doing so for several years and rejecting debtor's argument that "there could be no material default because there was a 'substantial consummation' under the plan"); *see also Warren*, 2015 WL 3407244, at *3, *5 (finding material default where debtors paid some but not all creditors and rejecting debtors' argument that they had "substantially complied with the payment terms of the Plan"); *Collier on Bankruptcy* ¶ 1112.04[6][n] ("[A] default may occur long after the plan becomes effective and long after substantial consummation.").

However, that does not mean that *every* missed payment is a material default. There can be situations, for example, where the defaulted payment or the period of default is so minimal in context that it cannot fairly be characterized as a

*material* default. As a general matter, "material" means something that is "significant" or "essential." BLACK'S LAW DICTIONARY (11th ed. 2019). Furthermore, a Chapter 11 plan is "construed basically as a contract." *Hillis Motors, Inc. v. Haw. Auto. Dealers' Ass'n*, 997 F.2d 581, 588 (9th Cir. 1993). And under general contract principles, whether a breach is material depends on the "extent" of the deprivation from the benefit reasonably expected. Restatement (Second) of Contracts § 241 (Am. L. Inst. 1981). Therefore, factors relevant to determining whether missed payments are a material default of the plan include the number of missed payments, the number of aggrieved creditors, and how long the default occurred.

Here, Baroni's Plan required that if Bank of NYM's secured claim was allowed, she transfer the funds that she paid into the Reserve Account to Bank of NYM. The Plan also required that she start making her outstanding loan payments directly to Bank of NYM. As the bankruptcy court found, Baroni's payment obligations to Bank of NYM were triggered under the Plan, at the latest, when Baroni exhausted her appellate remedies in her adversary proceeding. This means that when the bankruptcy court granted conversion, Baroni had been in default under the Plan for at least six months with a past due amount of "at least $200,000, if not more." This balance did not represent a single payment; it included *five years*' worth of installment payments paid into the Reserve Account, of which Bank of NYM had yet to see a dollar.

Baroni does not dispute that she failed to pay Bank of NYM as required under the Plan, but she argues that her failures were not "material" because she had "otherwise fully executed and performed [the] Plan" by making payments to other creditors and making payments into the

Reserve Accounts while her adversary proceeding was
pending. The bankruptcy court rejected this argument, and
so do we. Even though Baroni properly performed other
obligations imposed by the Plan, she defaulted on her
obligations related to Bank of NYM's secured claim. And
both the amount and the length of time of this default were
significant. Therefore, we conclude that the bankruptcy
court did not err in finding cause for conversion in this case.

## 2.  Best Interests of the Creditors and the Estate

Before the bankruptcy court can grant conversion, it
must consider whether this relief, as opposed to some other
remedy, is in best interests of the creditors and the estate.
11 U.S.C. § 1112(b)(1). And when raised, it must also
consider whether there are unusual circumstances that
indicate that the creditors' and the estate's interests are best
served by not granting relief under Section 1112(b) and
allowing the Chapter 11 proceeding to continue. *Id.*
§ 1112(b)(2). In analyzing these issues, the bankruptcy court
"must consider the interests of *all* of the creditors." *Shulkin
Hutton, Inc., P.S. v. Treiger (In re Owens)*, 552 F.3d 958,
961 (9th Cir. 2009) (citation omitted). Baroni has argued that
there are unusual circumstances counseling against
awarding Section 1112(b) relief. Therefore, we address that
question first and then we address whether the form of relief
the bankruptcy court granted was within its discretion.

### a.  Is any relief warranted?

The bankruptcy court may not grant relief if it "finds and
specifically identifies unusual circumstances" establishing
that granting Section 1112(b) relief "is not in the best
interests of the creditors and the estate" and that the debtor's
conduct triggering the request for relief was reasonably
justified and curable within a reasonable time. 11 U.S.C.

§ 1112(b)(2). The BAP has reasoned that the term "unusual circumstance" "contemplates conditions that are not common in chapter 11 cases." *Mahmood v. Khatib (In re Mahmood)*, No. 15-BK-25281, 2017 WL 1032569, at *8 (B.A.P. 9th Cir. Mar. 17, 2017) (unpublished) (quoting *In re Prod. Int'l Co.*, 395 B.R. 101, 109 (Bankr. D. Ariz. 2008)); *see also Collier on Bankruptcy* ¶ 1112.05[2] ("[T]he word 'unusual' contemplates facts that are not common to chapter 11 cases generally."). Accordingly, courts have held that difficulty making plan payments, disputes regarding the validity and amounts of claims, and other similar issues are not "unusual circumstances." *E.g.*, *In re Mahmood*, 2017 WL 1032569, at *8 ("[D]isputes over liens and their respective priority are not 'unusual circumstances.'"); *Green v. Howard Fam. Tr. (In re Green)*, No. BR 14-15981-ABL, 2016 WL 6699311, at *10–11 (B.A.P. 9th Cir. Nov. 9, 2016) (unpublished) (concluding existence of default judgment and "pending dischargeability actions or claim objections" are not unusual circumstances); *In re Wallace*, No. 09-20496-TLM, 2010 WL 378351, at *7 (Bankr. D. Idaho Jan. 26, 2010) (unreported) (a "contentious dispute over a creditor's claim is not an unusual circumstance in a chapter 11 case"); *see also In re Fisher*, No. 07-61338-11, 2008 WL 1775123, at *5 (Bankr. D. Mont. Apr. 15, 2008) (unreported) (unusual circumstances are those that "demonstrate that the purposes of [C]hapter 11 would be better served by maintaining the case as a chapter 11 proceeding").

Conversely, courts have found that unusual circumstances counseling against granting relief exist where continuing the case in Chapter 11 will likely yield a higher recovery for creditors without the usual risks of failure associated with a Chapter 11 plan. *See, e.g.*, *In re Orbit Petroleum, Inc.*, 395 B.R. 145, 149 (Bankr. D.N.M. 2008) (continuing in Chapter 11 would leave "[c]reditors and the

estate . . . far better off" than dismissal or conversion because the proposed plan provided for a significant capital infusion that would pay all creditors in full as of the effective date of the plan); *In re Costa Bonita Beach Resort Inc.*, 479 B.R. 14, 43 (Bankr. D.P.R. 2012) (unusual circumstances existed where Chapter 11 plan was more protective of unsecured creditors than other options); *In re Melendez Concrete Inc.*, 11-09-12334 JA, 2009 WL 2997920, at *7 (Bankr. D.N.M. Sept. 15, 2009) (unpublished) (finding unusual circumstances where debtor's assets were three times more valuable than its secured debt and various circumstances, including an economic recission, established that creditors were likely to recover more in Chapter 11 than liquidation).

We agree that circumstances inherently present in bankruptcy, such as disputes regarding the validity and amount of a creditor's claim, are not "unusual" for purposes of Section 1112(b)(2). To meet this standard, there must be something beyond the inherent financial pressures and adversarial differences involved in a bankruptcy case to establish that the purposes of Chapter 11 or the creditors' interests are better served by continuing under that chapter.

Baroni argues that the bankruptcy court should not have converted her case to Chapter 7 because her ability to immediately cure her default by paying the bank the Reserve Account funds was an unusual circumstance given the confusion caused by the two 1099-Cs that she and her husband received. Baroni misunderstands the law. The statute makes clear that the ability to cure a default is not itself an unusual circumstance because unusual circumstances and the ability to cure are two separate aspects of what must be shown to establish that no Section 1112(b)

relief should be granted even though cause for granting such relief was established. 11 U.S.C. § 1112(b)(2).

Moreover, Baroni's arguments as to why allowing her to immediately cure her default demonstrate only why granting relief was not in *her* best interests. But the ultimate question is the best interests of the *creditors and the estate*. *Id.*; *see Khan v. Rund (In re Khan)*, No. BAP CC-11-1542-HPAD, 2012 WL 2043074, at *8 (B.A.P. 9th Cir. June 6, 2012) (unpublished). She does not explain why allowing her to transfer the reserve funds, as she should have done long before, was in the best interests of the creditors or the estate, particularly where she had an ongoing payment obligation and a track record of not making payments voluntarily.

We note further that even if the asserted IRS form confusion was a unique circumstance, Baroni's reliance on this as justification for not paying Bank of NYM as required under the Plan is just a continuation of her challenge to the bank's secured claim, which she had already litigated unsuccessfully. And as the bankruptcy court noted, Baroni failed to raise her 1099-C argument until after she lost her adversary proceeding against Bank of NYM.

For these reasons, we conclude that the bankruptcy court did not abuse its discretion in concluding that Section 1112(b)(2)'s unusual-circumstances exception to granting relief does not apply.

### b. Does conversion best serve the creditors and the estate?

Baroni also argues that the bankruptcy court did not adequately consider which remedy—dismissal or conversion—was warranted. We are unpersuaded. The bankruptcy court considered the effect of the administration

fees that would be incurred under Chapter 7 and determined that they did not substantially detract from the estate. As for creditor interests, Bank of NYM and Wells Fargo specifically explained to the bankruptcy court during both the conversion hearing and the subsequent reconsideration hearing why they preferred to "take [their] chances with [a Chapter 7 trustee]" given the difficulties Baroni had created as a debtor-in-possession.[3] And while a court must consider the best interests of all creditors, *In re Owens*, 552 F.3d at 960–61, the bankruptcy court had no basis to find that any creditor received less in Chapter 7 than in Chapter 11.

First, no creditor objected to Bank of NYM's motion for conversion.[4] *See Renewable Energy, Inc. v. U.S. Tr. (In re Renewable Energy, Inc.)*, No. BAP WW–15–1089–KuJuTa, 2016 WL 7188656, at *5 (B.A.P. 9th Cir. Dec. 9, 2016) (unpublished) (finding no error in bankruptcy court decision to choose conversion over dismissal when no creditor objected). And second, the bankruptcy court determined that conversion would bring a quicker resolution because

---

[3] Baroni argues, and Bank of NYM admits, that conversion may not have been in the best interest of creditors if the assets and sale and rental proceeds at issue in the turnover order did not revest in the Chapter 7 estate, which is the issue raised in the second appeal. As we hold the assets did revest in the estate, we do not address this point.

[4] Baroni argues that Bank of NYM failed to give proper notice of its conversion motion to post-petition, post-confirmation creditors. However, she did not raise this argument until her motion for reconsideration, and as a result the bankruptcy court deemed the issue waived. Even overlooking that Baroni did not directly appeal the bankruptcy court's order on reconsideration, a court "'does not abuse its discretion when it disregards legal arguments made for the first time' on a motion to alter or amend a judgment." *United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009) (quoting *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001)).

dismissal would require the creditors to freshly pursue their claims against Baroni who had "been litigating now for six years," longer than the five years contemplated in the Plan itself.[5] *See In re Red Door Lounge*, 559 B.R. at 737. Again, the record establishes that the bankruptcy court conducted the proper analysis in assessing which remedy to select, and we find no abuse of discretion in its decision to convert Baroni's case to Chapter 7.

For all these reasons, we affirm the bankruptcy court's order granting Bank of NYM's motion to convert Baroni's bankruptcy from Chapter 11 to Chapter 7.

## B.  Asset Turnover

In Baroni's second appeal, she challenges the bankruptcy court's order requiring her to turn over the rent and sale proceeds from her rental properties to the Chapter 7 Trustee. Whether property is included in a bankruptcy estate is a question of law subject to de novo review. *Klein v. Anderson (In re Anderson)*, 988 F.3d 1210, 1213 (9th Cir. 2021) (per curiam). We also review issues of statutory interpretation de novo. *Connell v. Lima Corp.*, 988 F.3d 1089, 1097 (9th Cir. 2021).

We start with the bedrock principle that filing a bankruptcy petition creates a bankruptcy estate consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Under Chapter 11, "the confirmation of a plan vests all of the property of the estate in the debtor" and "the property dealt with by the plan is free and clear of all claims and

_____

[5] Indeed, Baroni had filed another adversary proceeding raising the 1099-C issues.

interests of creditors." *Id.* § 1141(b), (c); *see Hillis Motors*, 997 F.2d at 587. Baroni argues that when her Plan was confirmed, this vesting provision vested all property of the Chapter 11 estate in her, leaving the Chapter 11 estate terminated or empty. Consequently, when the bankruptcy court converted the case to Chapter 7, six years after the Plan was confirmed, the Chapter 7 estate had no assets.

The Bankruptcy Code is silent as to what constitutes the bankruptcy estate when a Chapter 11 case is converted to Chapter 7 after plan confirmation. Relying on our caselaw and the Central District of California's local bankruptcy rules, the bankruptcy court concluded that the undistributed rental property proceeds reverted to the bankruptcy estate upon conversion to Chapter 7. Because we conclude that our caselaw answers this question, we do not address the Central District's local bankruptcy rule.

Given Congress's silence, courts have varied in their approach to what happens with the bankruptcy estate upon conversion from Chapter 11 to Chapter 7. *See, e.g.*, *Hagan v. Hughes (In re Hughes)*, 279 B.R. 826, 829–30 (Bankr. S.D. Ill. 2002) (listing differing approaches); *In re Sundale, Ltd.*, 471 B.R. 300, 305–06 (Bankr. S.D. Fla. 2012) (same). We have addressed this issue and have emphasized that the vesting provisions in 11 U.S.C. § 1141 are "explicitly subject to the provisions of the plan." *Pioneer*, 264 F.3d at 807 (quoting *Hillis Motors*, 997 F.2d at 587). We have also made clear that the plan does not need to explicitly state that assets revest in a converted Chapter 7 estate for this to happen. *Pioneer*, 264 F.3d at 807.

Although not a conversion case, our decision in *Hillis Motors* is instructive. There, we analyzed whether estate property in a Chapter 11 case remained subject to the automatic stay after confirmation in the context of

determining whether a stay violation had occurred. *Hillis Motors*, 997 F.2d at 586–89. We concluded that there was a post-confirmation estate, the assets at issue were part of the estate, and the assets were subject to the stay due to several "atypical" provisions in the plan. *Id.* at 589–90. For example, the plan required payment of post-confirmation profits into the estate for later distribution; it protected the estate from post-confirmation claims through a post-confirmation stay; it contemplated that any debt discharge would occur in the future; and it required that the debtor's business be "conducted under court supervision via the trustee until all . . . creditors were paid," depriving the debtor of the freedom "to deal with its property and the world as it would have been [able to] if it had not been subject to the jurisdiction of the bankruptcy court." *Id.* at 587–90. Together, these provisions indicated that "[a]lthough there was a confirmed plan, the reorganization process continued post-confirmation." *Id.* at 589. Thus the "language, purposes, and context" of the plan caused the property to remain part of the estate and thus protected by the stay, post-confirmation because the property "did not revest in the debtor at confirmation." *Id.* at 590.

Subsequent cases addressing conversion have relied on *Hillis Motors*. In *Pioneer*, several beneficiaries of a confirmed Chapter 11 plan complained that a liquidation corporation, formed under the plan to take "possession of and liquidate[] property of a debtor for distribution to creditors," was producing insufficient proceeds and refusing to provide financial information. 264 F.3d at 804–08. The bankruptcy court converted the case to Chapter 7 and held, despite plan confirmation, that the unadministered assets had revested in the Chapter 7 estate. *Id.* at 806. The BAP affirmed.

On appeal to this court, the debtor argued that "the Chapter 11 estate vanished upon confirmation," and thus "no estate existed to be converted to Chapter 7 for administration by a Chapter 7 trustee." *Id.* at 807. We rejected this argument, holding that "[u]nder these circumstances" the "language and purpose of the [plan] demonstrate[d] that assets that vested in [the liquidation corporation] upon confirmation revested in the estate when the bankruptcy court converted the case to Chapter 7." *Id.* at 807–08. Citing *Hillis Motors*, we reasoned that although the plan did not expressly contemplate the effect of conversion, it "(1) contain[ed] explicit provisions regarding the distribution of liquidation proceeds to the [creditors], the plan's primary beneficiaries, and (2) g[ave] the bankruptcy court broad powers to oversee implementation of the plan." *Id.* at 807. Thus, the "assets held by [the liquidation corporation] for the benefit of the [plan beneficiaries] bec[a]me assets of the estate upon conversion to Chapter 7." *Id.* at 808.

Based on this authority, the BAP has applied the so-called "two prongs" of *Pioneer* in determining whether assets revest in the Chapter 7 estate upon conversion: (1) whether there is "an explicit provision regarding the distribution of future proceeds of an asset to creditors," and (2) whether the plan retains "broad powers in the bankruptcy court to oversee implementation of the plan." *Captain Blythers, Inc. v. Thompson (In re Captain Blythers, Inc.)*, 311 B.R. 530, 535–36 (B.A.P. 9th Cir. 2004); *see United States v. Villalobos (In re Villalobos)*, No. BAP NV-13-1179, 2014 WL 930495, at *8–9 (B.A.P. 9th Cir. Mar. 10, 2014) (unpublished). *Pioneer* does not create "prongs," or separate elements that are necessary to a finding that assets revest in a Chapter 7 estate. This analysis derives from *Hillis Motors*, which found myriad plan provisions indicated that

"the reorganization process continued post-confirmation" and thus the property "did not revest in the debtor at confirmation." *Hillis Motors*, 997 F.2d at 589–90.

The central question is whether the Plan's "language, purposes, and context" changed the effect of the general vesting provisions in 11 U.S.C. § 1141 after conversion to Chapter 7. *Id.* at 590. This was the question presented in *Pioneer*, where we considered the "prongs" as just two "circumstances" in determining the plan's purpose and requirements. 264 F.3d at 808. *Pioneer* did not limit courts to considering only these two "circumstances" when deciding whether assets revest in a Chapter 7 estate after conversion. *See id.* Thus, we clarify that a bankruptcy court should undertake a holistic analysis of the plan to determine whether its provisions deviate from the default vesting rule in 11 U.S.C. § 1141(b).[6] *Hillis Motors*, 997 F.2d at 590; *Pioneer*, 264 F.3d at 808.

Turning to the language, purposes, and context of Baroni's Plan, it has no express provision dealing with post-confirmation conversion and states that confirmation of the Plan "vests all property of the estate in the Debtor" and that Baroni "will retain all assets." Indeed, Baroni points out that, under the terms of the Plan, she was able to rent out the properties as she saw fit. But that is only one piece of the analysis.

The Plan also provides that Baroni's rental properties were subject to disputed proofs of claim which, at plan

---

[6] Indeed, as the BAP has reasoned, the second so-called "prong" may not add much to the analysis anyway, as the bankruptcy court's ongoing jurisdiction is likely satisfied in most Chapter 11 cases. *In re Captain Blythers*, 311 B.R. at 535.

confirmation, remained unresolved and required resolution by the bankruptcy court before any type of distribution could happen. The Plan required Baroni to make regular installment payments into Reserve Accounts which would revert to her creditors if her challenges to their claims were unsuccessful. Furthermore, a significant portion of the future Plan payments came from the "monthly rental income [Baroni] receive[s] from the rental properties," which was a "source[] of money earmarked to pay creditors." The "Future Financial Outlook" section of the Plan has several paragraphs discussing the properties and how they were intended to assist in paying for the Plan, and the Plan describes each property in detail including how much rent each was generating. Taken together, these provisions do not establish that Baroni received the properties "free and clear of all claims and interest of creditors" at confirmation, as would be the case under the general vesting provisions in 11 U.S.C. § 1141. Instead, the income from the properties remained subject to the Plan because the premise of the Plan was to pay creditors with the ongoing income stream from the rental properties. This was how the Plan accomplished the Chapter 11 reorganization.

Baroni disputes this reading of the Plan and asserts that the Plan gave her creditors the right to foreclose on their liens against the rental properties when she defaulted on her Plan payments, which she argues indicates that the Plan did not contemplate future distributions. This argument is not persuasive. The Plan prohibited Baroni's creditors from enforcing their "pre-petition claims against the Debtor or the Debtor's property until the date the Debtor receives a discharge." This means that the Plan required Baroni's creditors to return to bankruptcy court to seek relief from the stay before taking any enforcement action against Baroni. That the Plan provided ongoing stay benefits indicates that

the assets did not revest in Baroni at plan confirmation because those assets were still subject to litigation; otherwise, she would not need ongoing stay protection. *See Hillis Motors*, 997 F.2d at 589–90 (holding because the debtor remained protected by the automatic stay during administration of the plan, her assets remained in the estate). To hold that the unadministered rent and sale proceeds did not revest in the bankruptcy estate upon conversion to Chapter 7 would frustrate the intent of the Plan and is contrary to many of its provisions.

## III.  CONCLUSION

We find no error in the bankruptcy court's order at issue in *Baroni v. Seror*, No. 21-55150, which concluded that Baroni's failure to comply with the payment terms set out in her Plan was a material default and that conversion of her case from Chapter 11 to Chapter 7 was warranted. Likewise, we find no error in the bankruptcy court's turnover order at issue in *Baroni v. Seror*, No. 21-55076, which required Baroni to turn over the undistributed proceeds from the sale and rental of the rental properties to the Chapter 7 Trustee.[7]

**AFFIRMED.**

---

[7] The stay pending appeal entered in this case is lifted.