

The following constitutes the order of the Court.
Signed: October 7, 2022

_____
**Stephen L. Johnson
U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>**HAWAIIAN RIVERBEND, LLC**,<br><br>Debtor. | Case No. 22-50314 SLJ<br>Chapter 11<br><br>Date: June 7, 2022<br>Time: 2:00 p.m.<br>Ctrm: Remote |

### ORDER DENYING APPLICATION TO EMPLOY
### GENERAL BANKRUPTCY COUNSEL

The Law Offices of Michael Jay Berger ("Berger") filed an Application for Order Authorizing Debtor to Employ General Bankruptcy Counsel ("Application"). Creditors Kenneth Y. Kai and Tae K. Kai, Trustees of the Kai Family 1998 Trust ("Kai") and the United States Trustee ("UST") objected to the Application. The Application came on for hearing at the above-referenced date and time. Appearances were noted on the record. After hearing arguments from the parties, I took the matter under submission.

ORDER DENYING APPLICATION TO EMPLOY GENERAL BANKRUPTCY COUNSEL
1/14

## I. BACKGROUND

Debtor, represented by Berger, filed this chapter 11 case on April 14, 2022.[1] The Rule 2016(b) Statement shows a pre-petition retainer of $20,000, of which $10,000 was paid by Michael Miroyan ("Miroyan"), who is Debtor's managing member and sole owner, and $10,000 was paid by an individual named Harold Barker ("Barker"). Berger stated in his declaration that neither are creditors of Debtor and both made these payments as gift contributions to Debtor. ECF 26.

Approximately a week after filing this case, on April 22, 2022, Miroyan, also represented by Berger, filed his own chapter 13 case.[2] The Rule 2016(b) Statement shows that Miroyan paid a prepetition retainer of $1,952 to Berger.

Berger filed this Application on May 10, 2022, the same day he filed motions to withdraw as attorney in this case and in Miroyan's chapter 13 case. ECF 24 & 28. In the Application, Berger stated that he was retained by Debtor on April 13, 2022, and disclosed that he also represents Miroyan in his individual chapter 13 case. Berger stated in his declaration that he does not represent any interest adverse to the Debtor or the estate. Berger reiterated in his declaration that the funds paid to him from Barker arose from Barker's gift of those funds to Debtor. He also indicated that Miroyan signed the retainer agreement but refused to sign the Application.

Kai objected to the Application, asserting that the employment would not benefit the estate because Berger sought to withdraw as counsel at the same time. Kai also contended Berger is not disinterested and points to Berger's concurrent representation of Debtor's principal Miroyan as proof of that contention.

---

[1] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[2] Although Berger filed the case on April 22, 2022, he signed the petition on April 14, 2022.

ORDER DENYING APPLICATION TO EMPLOY GENERAL BANKRUPTCY COUNSEL
2/14

1  The UST also objected to the Application on the grounds that: (1) the Application did not refer to any Bankruptcy Code provisions or legal authority for employment; (2) Debtor did not sign the Application; (3) the Application failed to disclose the relationship between Debtor, Berger, Miroyan, and Barker; and (4) Berger had a potential conflict of interest as a result of his concurrent representation of Debtor and Debtor's principal in their respective bankruptcy cases.

Berger filed replies to both UST's and Kai's objections. He argued that he performed substantive legal services before seeking withdrawal and Miroyan's refusal to sign the Application does not preclude approval of the employment. He also claimed that Debtor and Miroyan are not materially adverse parties. Finally, Berger notes that Barker has no authority to act on behalf of Debtor.

At the hearing, Berger stated that Barker is Miroyan's roommate and friend. He also said that the funds Barker advanced for the retainer were actually a loan to Miroyan (so, not a gift).

I granted Berger's motion to withdraw as counsel at the hearing on June 7, 2022, and an order was entered on June 8, 2022.[3]

## II. LEGAL STANDARD

Section 327(a) imposes a two-prong test for the employment of professionals by a debtor-in-possession or trustee.[4] The professional (1) must not hold or represent any interest adverse to the estate, and (2) must be a "disinterested person."

In relevant part, the Code defines a "disinterested person" as one that "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or

---

[3] I also granted Berger's motion to withdraw as counsel in Miroyan's chapter 13 case in an order entered on June 10, 2022.

[4] Section 327(a) refers to trustees, but § 1107(a) grants a debtor in possession all the rights of a trustee, subject to exceptions not relevant here.

ORDER DENYING APPLICATION TO EMPLOY GENERAL BANKRUPTCY COUNSEL
3/14

interest in, the debtor, or *for any other reason*." 11 U.S.C. § 101(14)(C) (emphasis added). The last phrase "appears broad enough to include anyone who in the slightest degree might have some interest or relationship that would color the independent and impartial attitude required by the Code." 3 Collier on Bankruptcy ¶ 327.04 (16th 2022).

Although "adverse interest" is not defined in the Code, "[a] generally accepted definition of 'adverse interest' is the (1) possession or assertion of an economic interest that would tend to lessen the value of the bankruptcy estate; or (2) possession or assertion of an economic interest that would create either an actual or potential dispute in which the estate is a rival claimant; or (3) possession of a predisposition under circumstances that create a bias against the estate." *In re AFI Holding, Inc.*, 530 F.3d 832, 845 (9th Cir. 2008).

To represent an adverse interest means to serve as an attorney for a party who holds an adverse interest. *In re Tevis*, 347 B.R. 679, 688 (B.A.P. 9th Cir. 2006). Whether an attorney "holds interests adverse to the estate, is disinterested or otherwise is impaired by conflict of interest (actual or potential) is necessarily case– and fact-specific." *In re Dick Cepek, Inc.*, 329 B.R. 730, 740 (B.A.P. 9th Cir. 2006).

### III. DISCUSSION

#### A. Lack of Debtor's Signature Does Not Render the Application Defective

Bankruptcy Rule 2014(a) provides that an order approving the employment of professionals under § 327 "shall be made only on application of the trustee or committee." The BAP has refused to award compensation to counsel where among other things, such counsel's employment application was signed by counsel and not the debtor. *In re Triple Star Welding, Inc.*, 324 B.R. 778, 792 (B.A.P. 9th Cir. 2005), *abrogated on other grounds by In re AFI Holding, Inc.*, 530 F.3d 832, 846–47 (9th Cir. 2008). "The practical consequence" of this failure was that, because debtor did not sign the application, it had "not disclosed its own knowledge about [counsel's] connections to" the debtor, creditors, other parties in interest, etc. *Triple Star Welding*, 324 B.R. at 792 (citation omitted).

ORDER DENYING APPLICATION TO EMPLOY GENERAL BANKRUPTCY COUNSEL
4/14

That said, "[s]ection 327 does not, by its terms, limit standing of a professional to seek employment. The trustee or debtor in possession is usually the party who files an application to employ a professional pursuant to Rule 2014. However, the professional should be able to apply for court approved employment where it has been hired by the trustee or debtor in possession, and was assured that court approval would be sought. When the trustee or debtor in possession fails to seek court approval and the professional has performed services which benefit the estate based on the assurance that court approval would be sought, the professional should have standing to seek nunc pro tunc approval of employment." *In re Mehdipour*, 202 B.R. 474, 479 (B.A.P. 9th Cir. 1996). I read *Mehdipour* to say that, where the only reason an employment application is not signed by the debtor is such debtor hired counsel, then later refused to apply for counsel's employment in the bankruptcy court, counsel should not be deprived of compensation for beneficial services they rendered to the estate in good faith and in reliance on the debtor's representations. *See Id.* (Stating its ruling "would protect the debtor or trustee from receiving a windfall from the good faith efforts of a professional hired by the trustee or debtor in possession who rendered beneficial services to the estate.").

Debtor's principal Miroyan signed a retainer agreement for Berger to represent Debtor in this case. Application, Exhibit 3. And Berger represented that he performed services which benefitted the estate. Under these circumstances, Berger should be able to apply for court approval of his employment.

UST's reliance on BLR 5005-2(a) is inapposite. That rule provides that a document electronically filed with the court shall bear the typed name of the person purporting to have signed the document and shall be deemed to be signed by that person when the document identifies the person as a signatory. The Application does not include the typed name of Miroyan and does not represent, expressly or implicitly, that Miroyan signed the Application. In fact, the Application clearly states that Miroyan refused to sign it. This does not implicate BLR 5005-2(a).

ORDER DENYING APPLICATION TO EMPLOY GENERAL BANKRUPTCY COUNSEL
5/14

B. <u>Berger Seeks Employment for Past Services, Not Future Services</u>

Kai argued that I should deny the Application because Berger's services will not benefit the estate as he simultaneously filed a motion to withdraw as counsel. But as Berger's reply made clear, he has performed services for the estate from the petition date to June 8, 2022, when I entered an order approving his withdrawal, and he intends to ask for compensation for these services. The record shows that Berger filed schedules and amended schedules, Statement of Financial Affairs, and status conference statements, among others. In other words, Berger is requesting authorization to be employed for services he has already performed prior to the withdrawal, not for future services.[5]

C. <u>Berger Failed to Adequately Disclose the Source of the Retainer</u>

Section 329(a) requires any attorney representing a debtor to file with the court a statement of compensation paid or agreed to be paid for services rendered or to be rendered in connection with the case and the source of such compensation. 11 U.S.C. § 329(a); Fed. R. Bankr. P. 2016(b). Bankruptcy Rule 2014(a) requires the applicant to disclose all of his connections with the debtor, creditors, and other party in interest, etc. Failure to disclose the fee arrangement and the applicant's connections with the source(s) of the compensation is sufficient to deny employment. *See In re Film Ventures Int'l, Inc.*, 75 B.R. 250, 252 (B.A.P. 9th Cir. 1987).

"The disclosure rules are applied literally, even if the results are sometimes harsh. Negligent or inadvertent omissions do not vitiate the failure to disclose." *In re Park-Helena Corp.*, 63 F.3d 877, 881 (9th Cir. 1995). "[F]ailure to comply with the disclosure rules is a

---

[5] Pursuant to Bankruptcy Rule 6003, unless relief is necessary to avoid immediate and irreparable harm, I cannot approve an employment application within 21 days of the petition date. But in nearly every chapter 11 case, some services must necessarily be performed during these initial 21 days. A debtor's attorney has to meet with his clients, file or amend schedules and other required documents, notify creditors and handle their inquiries, prepare for the initial debtor interview and respond to the UST's request for documents, just to name a few.

ORDER DENYING APPLICATION TO EMPLOY GENERAL BANKRUPTCY COUNSEL

6/14

sanctionable violation, even if proper disclosure would have shown that the attorney had not actually violated any Bankruptcy Code provision or any Bankruptcy Rule." *Id.,* at 880.

It is a fact that Berger disclosed his prepetition retainer. But he failed to disclose accurately the source of those funds. Berger's papers say Barker is not a creditor of Debtor and he has no authority to make decisions on behalf of Debtor. *See* Application, p. 16:2-3; Reply to United States Trustee's Objection to Application, p. 10:17-19. In spite of his apparently tenuous relationship with Debtor, Berger says Barker has an interest "to save the debtor's real property from foreclosure and to sell it for the highest price possible." Reply to United States Trustee's Objection to Application, p. 11:20-22.

Here's what's missing from that disclosure. First, that Barker advanced the funds as part of a loan to Miroyan. Second, that Miroyan and Barker are roommates and friends. These later disclosures are not supported by evidence, though.[6] If they are accurate, a point that I cannot find at this stage, the statements go a long way to describing why Barker, who has no control or interest in Debtor, would agree to advance a $10,000 retainer.[7] They also indicate that he expects to be repaid as the money was lent to Miroyan. That fact is impossible to reconcile with the Application.

"The burden is on the person to be employed to come forward and make full, candid, and complete disclosure." *In re B.E.S. Concrete Prod., Inc.*, 93 B.R. 228, 237 (Bankr. E.D. Cal. 1988). Berger's failure to do so is sufficient to deny the Application.

---

[6] Berger disclosed at the hearing that he found out the day before the hearing the funds paid to him from Barker are actually a loan to Miroyan, not a gift to Debtor as stated in the Application and Disclosure of Compensation. Assuming Berger was not aware of this fact when he filed those pleadings, he still has an obligation to file a supplemental Disclosure of Compensation, which he has not done. *See* Fed. R. Bankr. P. 2016(b).

[7] The fact that Barker is not a creditor of Debtor and does not have decision-making authority does not necessarily mean he has no connection to Debtor.

ORDER DENYING APPLICATION TO EMPLOY GENERAL BANKRUPTCY COUNSEL
7/14

D. <u>Berger's Representation of Miroyan in his Chapter 13 Case Precludes Approval of the Application</u>

Berger argues that his simultaneous representation of Miroyan in the chapter 13 case and here is not per se disqualifying. He is right that no categorical bar exists, but disqualification can arise depending on the circumstances. "Simultaneous representation of a debtor corporation and the controlling shareholders, although not a disqualifying conflict per se, becomes a basis to disqualify counsel when adverse interests either exist or are likely to develop." *In re Plaza Hotel Corp.*, 111 B.R. 882, 890 (Bankr. E.D. Cal. 1990). The problem for an attorney who represents both a corporation and the individuals who control it is that there is a persistent risk that those in control will instruct counsel in ways that favor their interests at the expense of the corporation's interests. "At best, counsel is in a delicate posture when representing both a close corporation and its controlling shareholders." *Id.*

Because of the potentially fraught nature of dual representations, lawyers must be searching in their inquiries about the facts. "It is the duty of counsel for the debtor in possession to survey the landscape in search of property of the estate, defenses to claims, preferential transfers, fraudulent conveyances and other causes of action that may yield a recovery to the estate. The jaundiced eye and scowling mien that counsel for the debtor is required to cast upon everyone in sight will likely not fall upon the party with whom he has a potential conflict: Any potential conflict of interest represents a potential to overlook an asset or defense of the estate. Thus a potential conflict of interest, while it may be otherwise ethically proper, is not normally permitted under section 327." *In re McKinney Ranch Assocs.*, 62 B.R. 249, 254 (Bankr. C.D. Cal. 1986); *see also In re Interwest Bus. Equip., Inc.*, 23 F.3d 311, 316-17 (10th Cir. 1994)(citing and quoting *re McKinney Ranch Assocs.* with approval).

It is not hard to see why Berger's concurrent representation of Debtor and Miroyan is impossible. First, purely as a matter of disclosure, the Application is wrong. In Debtor's Statement of Financial Affairs (and Berger's declaration in support of the Application), Berger stated that on April 14, 2022, Miroyan paid $10,000. And this sum is supposed to

ORDER DENYING APPLICATION TO EMPLOY GENERAL BANKRUPTCY COUNSEL
8/14

have been gifted to Debtor by Miroyan. The trouble is, the $10,000 gift was not disclosed in Miroyan's Statement of Financial Affairs item 13, which requires a debtor to list any gifts over $600 given within two years prior to the petition date. In other words, Berger, as Miroyan's attorney, neglected to include the $10,000 that Miroyan gifted to Debtor to pay Berger, as Debtor's attorney. Also troubling is the actual source of that $10,000. Miroyan's Schedule A/B, which was prepared and filed by Berger, shows that he has no cash and no bank accounts.[8]

The circumstances and aftermath of Debtor's previous chapter 11 case give rise to additional conflicts. The record shows that Debtor filed a previous chapter 11 case (Case No. 16-00348, the "Hawaii Case") in the District of Hawaii.[9] Berger was aware of the Hawaii Case because it was disclosed in the Debtor's petition in this case. The Hawaii Case bankruptcy schedules show ownership of three pieces of real property, known as Parcel 21, Parcel 52, and Parcel 53. A chapter 11 plan of reorganization was confirmed in the Hawaii Case that called for the sale of all three parcels by November 30, 2017. If that failed, they were to be auctioned. Debtor did not sell the real property and did not auction them. As a result, the court dismissed the case on February 2, 2018, on the ground of material default under the confirmed plan.

Miroyan filed an individual chapter 13 case (Case No. 18-52601) on November 26, 2018 ("2018 Case"). Berger was aware of this case, too, as Miroyan disclosed it in his voluntary petition. In Miroyan's chapter 13 case, he listed Parcel 21, Parcel 52, and Parcel 53 on Schedule A/B as being owned by him, and not by Hawaiian Riverbend, LLC, as stated in the schedules and confirmed plan in the Hawaii Case.

---

[8] Berger filed a Rights and Responsibilities Agreement in Miroyan's case which provides that he agrees to prepare and review the bankruptcy petition, plan, statements, schedules, and other required documents.

[9] I take judicial notice of the record in Case No. 16-00348 filed by Debtor in the District of Hawaii and in Miroyan's previous chapter 13 case, Case No. 18-52601, filed in this district. *See* Fed. R. Evid. 201(b)(2), (c)(1), & (d).

ORDER DENYING APPLICATION TO EMPLOY GENERAL BANKRUPTCY COUNSEL
9/14

Kai holds a secured claim against Parcel 53 and moved for relief from stay to continue with foreclosure efforts in the 2018 Case. He alleged that on August 9, 2018, Miroyan transferred Parcel 53 from Debtor to himself without any consideration, an allegation that was supported by a copy of the warranty deed attached to the motion papers. He claimed that Miroyan filed the 2018 Case on the same day as the foreclosure sale of Parcel 53. Judge Hammond, who was assigned the 2018 Case, granted the motion for relief from stay at the hearing on March 1, 2019. Similarly, Creditor Gang Chen, who claims a lien on Parcel 21, filed a motion for relief from stay to continue with foreclosure proceedings. Like Kai, Gang Chen contended that on August 9, 2018, Miroyan transferred Parcel 21 from Debtor to himself without any consideration. The 2018 Case was dismissed before Chen's motion for relief from stay was heard.

The likely impropriety of these transfers was not unknown. On September 26 2019, the Hawaii state court ordered the Clerk of the Court to reconvey Parcel 53 from Miroyan to Debtor by quitclaim deed, finding that "the Warranty Deed … is a fraudulent conveyance and is void as a matter of law." Order Granting Plaintiffs' Motion to Compel Transfer of Subject Foreclosure Property, filed on September 27, 2019, Civil No. 15-1-0164K, Hawaii Third Circuit Court, attached as Exhibit 1 to Declaration of Matthew C. Shannon in support of Kai's Motion to Convert Case to Chapter 7, or in the Alternative, for Dismissal with Refiling Bar ("Motion to Convert").

When a law firm represents a debtor's estate and an entity that may face liability for a fraudulent conveyance, the firm has an actual conflict of interest. *See In re Freedom Solar Ctr., Inc.*, 776 F.2d 14, 17 (1st Cir. 1985) (Generally representation of both a debtor and its sole shareholder may not involve adverse interests but "when the sole shareholder may be the recipient of preferential transfers, adverse interests do result."); *In re Adam Furniture Indus., Inc.*, 158 B.R. 291, 300 (Bankr. S.D. Ga. 1993). But even characterizing the conflict as merely potential does not help Berger because adverse interest includes "possession or assertion of

ORDER DENYING APPLICATION TO EMPLOY GENERAL BANKRUPTCY COUNSEL
10/14

an economic interest that would create either an actual *or potential* dispute in which the estate is a rival claimant." *In re AFI Holding, Inc.*, 530 F.3d at 845.

Berger's contention that he does not hold or represent a party with an adverse interesting cannot be squared with the facts. At a bare minimum, Debtor here is likely to have a claim against Miroyan for the transfers of Parcel 21 and Parcel 53 for no consideration. These transfers were accomplished after the chapter 11 plan was confirmed in the Hawaii Case and after that case was dismissed. It cannot be contested that a live dispute exists as to whether Debtor or Miroyan is the owner of that real property.

The facts of the transfers were known or should have been known to Berger, who was clearly aware of Debtor's and Miroyan's previous bankruptcy cases. Contrary to Berger's argument, it is not UST's or Kai's burden to come up with affirmative evidence showing that he is not disinterested or that he represents adverse interests, but instead it is Berger's burden to establish that he meets the requirements of § 327(a). *See In re Capitol Metals Co., Inc.*, 228 B.R. 724, 727 (B.A.P. 9th Cir. 1998) ("The applicant bears the burden of proving that the standards for appointment have been met.").

Berger argued that any potential conflicts would be resolved upon his withdrawal from the case, but this argument ignores the fact that Berger was representing an adverse interest from the moment he filed this case and during the time for which he sought employment. *See In re NIR W. Coast, Inc.*, 638 B.R. 441, 447 (Bankr. E.D. Cal. 2022) ("An actual conflict of interest is the representation of an adverse interest."). On this point, *In re Greystone on Payette, LLC,* 410 B.R. 900 (Bankr. D. Idaho 2009), is instructive. In that case, counsel filed emergency chapter 11 petitions for debtor Greystone on Payette, LLC, and another entity Greystone Village, LLC. He represented in the employment application that he was disinterested and did not hold or represent any interest adverse to the interests of the estate. However, it was revealed at the meeting of creditors that prior to the petitions being filed, debtor loaned $1,000,000 to Greystone Village, which remained outstanding. As a result, the United States Trustee objected to the application, at which point debtor

ORDER DENYING APPLICATION TO EMPLOY GENERAL BANKRUPTCY COUNSEL
11/14

substituted in another counsel. In attempting to receive compensation for services performed prior to the substitution, counsel argued that as far as he knew, he was qualified to be employed at the time the application was filed and it was the result of subsequent events that disqualified him. The court held that "Counsel's lack of knowledge of his conflict of interest is not determinative in weighing his eligibility to serve as Debtor's chapter 11 attorney." *Id.,* at 903. The court explained, "[p]rior to bankruptcy, Debtor loaned a substantial sum to Greystone Village, LLC, a debt that remained unpaid on the bankruptcy filing date. Counsel was representing both Debtor and Greystone Village, LLC, when he applied to be employed as Debtor's counsel. In other words, when Debtor filed for bankruptcy relief and Counsel applied to be its bankruptcy attorney, Counsel was representing 'an interest adverse to [Debtor's] estate' and therefore not eligible to serve as an estate professional under § 327(a)." *Id.,* at 903-04.

The transfers of Parcel 21 and Parcel 53 from Debtor to Miroyan occurred prepetition. According to the schedules filed in both cases, Parcel 21 remains in Miroyan's bankruptcy estate. In representing both Debtor and Miroyan when he filed this case, Berger was representing an interest adverse to Debtor's estate during the period for which he sought employment. Coupled with fact that Miroyan partially paid Berger's retainer without disclosing it in his individual case, I have no difficulty concluding that Berger is disqualified under § 327(a) to be employed as Debtor's counsel.

E.  Section 105(a) is Inapplicable

As an alternative, Berger argued that the Application should be granted under § 105(a). The Supreme Court explained why this argument is a non-starter: "It is hornbook law that § 105(a) does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code. Section 105(a) confers authority to 'carry out' the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits . . . We have long held that whatever equitable powers remain in the bankruptcy

ORDER DENYING APPLICATION TO EMPLOY GENERAL BANKRUPTCY COUNSEL
12/14

courts must and can only be exercised within the confines of the Bankruptcy Code." *Law v. Siegel*, 571 U.S. 415, 421 (2014) (internal quotation marks and citations omitted).

The employment of a professional by the bankruptcy estate is governed by § 327(a). Berger does not qualify for employment under § 327(a). Section 105(a) does not give me the authority to override the specific requirements of that statute.

## IV. CONCLUSION

For the reasons of lack of disclosure and representation of an adverse interest to the estate during his limited time representing Debtor in this case while concurrently representing Miroyan, the Application is DENIED.

IT IS SO ORDERED.

**\*\*\* END OF ORDER \*\*\***

**COURT SERVICE LIST**

[ECF recipients]